UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

John Doe.

               Plaintiff,

      v.

Baila Sebrow

               Defendant.

Case No. 2:21-cv-20706

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT BAILA SEBROW'S COUNTERCLAIMS

Daniel Szalkiewicz, Esq.
Daniel Szalkiewicz & Associates, PC
23 West 73rd Street, Suite 102
New York, NY 10023
(212) 706-1007
daniel@lawdss.com
*Attorneys for Plaintiff*

1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT & FACTUAL BACKGROUND................................................ 5

   A.  Defendant has Admitted, in Writing, that her Rape Accusations are False....................... 5

   B.  Defendant Does Not Legitimately Believe She is Married to Plaintiff but Claims to for
Harassment Purposes ...................................................................................................... 6

ARGUMENT

POINT I LEGAL STANDARD.................................................................................................. 10

POINT II REGARDLESS OF WHETHER THIS COURT APPLIES NEW YORK, NEW
JERSEY, OR FEDERAL DEFAMATION LAWS, DISMISSAL OF DEFENDANT'S
DEFAMATION COUNTERCLAIM IS WARRANTED DUE TO HER FAILURE TO
INCLUDE ANYTHING RESEMBLING PARTICULARITY IN HER PLEADINGS ............. 11

   A.  Dismissal is Warranted Pursuant to New York Law ....................................... 12

   B.  Dismissal is Warranted Pursuant to New Jersey Law ..................................... 13

   C.  Dismissal is Warranted Pursuant to Federal Law ........................................... 14

POINT III DISMISSAL OF DEFENDANT'S DEFAMATION CLAIM IS  WARRANTED
DUE TO HER FAILURE TO STATE A CAUSE OF  ACTION UPON WHICH RELIEF CAN
BE GRANTED ......................................................................................................................... 16

POINT IV DISMISSAL OF DEFENDANT'S DEFAMATION CLAIM IS WARRANTED DUE
TO LITIGATION PRIVILEGE................................................................................................ 17

POINT V DISMISSAL OF DEFENDANT'S FRAUDULENT MISREPRESENTATION
CLAIM IS WARRANTED BECAUSE IT IS DEVOID OF MERIT ......................................... 19

   A.  The Counterclaim is Not Pleaded with Any Sort of Particularity .................................... 19

   B.  The Counterclaim Fails to Set Forth a Cause of Action for Fraud ................................... 20

POINT VI DISMISSAL OF DEFENDANT'S ABUSE OF PROCESS CLAIM IS
WARRANTED BECAUSE IT FAILS TO STATE A CAUSE OF ACTION UPON WHICH
RELIEF CAN BE GRANTED ................................................................................................ 21

   A.  Dismissal is Appropriate Because Defendant Has Not Stated a Cause of Action for Abuse
of Process..................................................................................................................... 21

   B.  Dismissal is Appropriate Because the Claim is Ongoing and thus not Ripe for
Adjudication................................................................................................................. 24

## **TABLE OF AUTHORITIES**

**Cases**

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)..................................................................... 10

Biro v. Condé Nast, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012)........................................ 13, 14

Brady v Gaudelli, 137 AD3d 951, 952 (2d Dept 2016 ................................................... 19

Brown v. Reed, 167 N.Y.S.2d 41, 42 (Sup. Ct. 1957).................................................... 13

Celle v. Filipino Reporter Enters., 209 F.3d 163, 175 (2d Cir. 2000) ..................................... 11, 17

Epifani v Johnson, 65 AD3d 224, 233 (2d Dept 2009) .................................................. 13

Fenning v. S.G. Holding Corp., N.J.Super. 110, 117, 135 2d 346 (App.Div.1957)..................... 17

Frederico v Home Depot, 507 F3d 188, 200 (3d Cir 2007)............................................... 20

Gen. Refractories, 337 F.3d at 304 .......................................................................... 22, 23

Giordano v Claudio, 714 F Supp 2d 508, 533 [ED Pa 2010] ................................................ 21, 24

Grasso v Mathew, 164 AD2d 476, 479 (3d Dept 1991) .................................................. 18

Hawkins v. Harris, 141 N.J. 207, 216 [1995] ............................................................... 18

Kotok Bldg. v. Charvine Co., 183 N.J. Super. 101, 105 (Super. Ct. 1981)........................... 15, 16

Langella v Mahopac Cent. Sch. Dist., 2022 US Dist LEXIS 2156, at *31 (SDNY Jan. 5, 2022, No. 18-cv-10023 (NSR)................................................................................ 13

Mangan v. Corp. Synergies Grp., Inc., 834 F. Supp. 2d 199, 204 (D.N.J. 2011)........................ 14

Marable v. W. Pottsgrove Twp., 176 F. App'x 275, 281 (3d Cir. 2006) ................................ 21, 22

Morrissey v WTVR, LLC, 432 F Supp 3d 617, 623 (ED Va 2020)............................................. 10

Novartis Pharm. Corp. v. Bausch & Lomb, Inc., Civil Action No. 07-5945 (JAG), 2008 U.S. Dist. LEXIS 92133, at *19 n.8 (D.N.J. Nov. 12, 2008).......................................... 15

Oldham v. Pa. State Univ., No. 4:20-CV-02364, 2022 U.S. Dist. LEXIS 87272, at *50 (M.D. Pa. May 13, 2022)............................................................................. 14

Sarver v Chartier, 813 F3d 891, 897 (9th Cir 2016) .................................................... 11

SAT Agiyar, LLC v 7-Eleven, Inc., 2020 US Dist LEXIS 116762, at *12 (DNJ June 30, 2020,
        Civil Action No. 19-19994 (MAS) (ZNQ) ............................................................... 20

Schott v State, A-2612-04T1, 2006 WL 1911375, at *4 (NJ Super Ct App Div July 13, 2006) . 10

United States ex rel. Petras v Simparel, Inc., 857 F3d 497 (3d Cir 2017) .................................... 20

Weinstock v Sanders, 144 AD3d 1019, 1021 (2d Dept 2016) ...................................................... 19

Whiting v Computer Assoc. (In re Whiting), 2001 US Dist LEXIS 23539, at *17 (DNJ Aug. 20,
        2001, Civil Action No. 01-1583 (NHP) .................................................................... 13

Zagami, LLC v Cottrell, 403 NJ Super 98, 104, 957 A2d 691, 694 [NJ Super Ct App Div 2008]
        .................................................................................................................................. 17

**Statutes**
C.P.L.R. §3016(a) ...................................................................................................................... 12

**Other Authorities**
Restat 2d of Conflict of Laws, § 149 (2nd 1988) .................................................................. 11, 12

Plaintiff-Counter-Defendant John Doe ("Plaintiff"), by his attorneys, Daniel Szalkiewicz &

Associates, P.C., respectfully submits this Memorandum of Law and the Declaration of John

Doe in support of his Motion to Dismiss the Counterclaims ("Counterclaims") of defendant Baila

Sebrow ("Defendant" or "Sebrow") pursuant to Rules 12(b)(6) of the Federal Rules of Civil

Procedure ("FRCP").

## PRELIMINARY STATEMENT & FACTUAL BACKGROUND

Defendant Sebrow's legally insufficient and factually baseless counterclaims are nothing

more than salacious fabrications designed to continue and further her ongoing obsession with

publicly harassing and embarrassing Plaintiff.

Communications between the parties make clear: Plaintiff and Defendant were once

romantically involved and, when Plaintiff broke it off, Defendant began to unravel.

As evidenced by hundreds of messages and her flimsy counterclaims against Plaintiff,

Defendant's allegations are motivated by a vendetta brought on by unrequited romance, not fact.

Because Defendant has not stated a single cause of action upon which relief can be granted and

because her claims are contradicted by documentary evidence, dismissal of her counterclaims is

warranted and necessary.

### A. Defendant has Admitted, in Writing, that her Rape Accusations are False

Defendant has, on more than one occasion, acknowledged, in writing, that she was not

raped by Plaintiff.  On July 11, 2018, Defendant stated to Plaintiff "I'm very sorry that I said you

raped me.  I was upset, and not thinking clearly.  It's not true.  I apologize for the grief that it

caused you" (Exhibit 1, p. 35).  On August 29, 2018, Defendant stated to Plaintiff, by email, "…I

am sorry about both emails on August 29.  None of it was true.  I was upset.  I will not send again.  I am sorry.  Baila Sebrow" (Exhibit 2).

Defendant has further threatened to claim rape if Plaintiff involved attorneys or rabbis in the parties' issues.  On August 17, 2018, Defendant wrote: "You want to go public with the story?  Then I will have to say it was rape because I wasn't in an emotionally sound state.  How dare you upset me now?" and "I won't say it was rape if we keep it quiet.  I only shared it with you, since it's your problem too!" (Exhibit 1, p. 99-100).

Despite her apologies, her retractions, her vacillating tales, and her messages to Plaintiff in which she professes her love for him[1], Defendant nevertheless arranged for a third party to create false and defamatory statements about him being a rapist, further harassed him by sending him anonymous text messages calling him a rapist, and in her Answer concocts a vile and graphic story of her alleged rape while failing to include a single cause of action relating to it.

As detailed below, Defendant's counterclaims are legally deficient, utterly frivolous, do not come remotely close to stating causes of action upon which relief can be granted and are asserted for the sole purpose of weaponizing a false rape narrative to further torment her ex.

### B.  Defendant Does Not Legitimately Believe She is Married to Plaintiff but Claims to for Harassment Purposes

Defendant's Answer repeatedly harps on the theory that Defendant needs a divorce from Plaintiff – as if to somehow legitimize her relentless attacks on Plaintiff; this concept is nothing but a red herring.  The parties have never been married.  Defendant, a matchmaker by trade, continued offering her matchmaking services to Plaintiff after they had separated.  Defendant's understanding of the state of their relationship is clear throughout their text messages.

---

[1] As recently as September 2, 2018, Defendant wrote to Plaintiff "I love you" (Exhibit 1, p. 157).

| Date | Defendant's Statement | Exhibit |
|------|----------------------|---------|
| July 10, 2018 | As I said, I will be polite. My aim right now is to help you. I definitely don't want a relationship with you. Nor would I ever want to marry you. But, you need help. And I want to help you. Let's talk, please. Choose the date and time. | Exhibit 1, p. 28 |
| July 13, 2018 | Hi [Plaintiff's name]. How are you? I have a shidduch idea for you. Her name is [Woman #1]. She's modern orthodox. Doesn't cover her hair, etc. Divorced quite awhile. Attractive lady. 57-58. Lives in Staten Island. She's interested. You can see her on Facebook. Shall I set it up? | Exhibit 1, p. 38 |
| July 18, 2018 | So sorry to hear. Not interested in marrying. Get some rest. | Exhibit 1, p. 46 |
| July 24, 2018 | Why did you turn on me again? I have no interest in marrying you. In fact, I'm ready to set you up with others. Why are you creating a tense situation for the weekend? Why do you want to ruin my weekend? That's not fair. | Exhibit 1, p. 53 |

Further demonstrating the absence of any belief she is married to Plaintiff and suggesting her true motive for continuing to bombard Plaintiff with harassive and demeaning messages more closely resembles jealousy, Defendant missed no opportunity to relentlessly mock and belittle Plaintiff and anyone she suspected Plaintiff might be dating. Over the span of several months, Defendant grew paranoid about a number of women – each time sending Plaintiff sexually graphic accusations.

| Date | Defendant's Statement | Exhibit |
|------|----------------------|---------|
| July 10, 2018 | You're gonna be licking and sticking your fingers in a trash bag!!! This is such fun. Why? I'm having fun. I'm picturing you banging a trash bag. Hahahahahah…Oh cmon. You know it's funny. I remember how you made fun of her. Now you're gonna bang her!...Hey, maybe you're gay. [Woman #2] looks like a tranny!`… | Exhibit 1, p. 30 |
| July 26, 2018 | This I must tell you, as a friend. [Woman #3] gypped your daughter. A good quality wig should not look so wiggy. Maybe try licking [Woman #3] a little more, and she will do better on the next wig. lol Just saying! | Exhibit 1, p. 63 |
| July 28, 2018 | It's actually an honor for me to say that you dumped me! Your kids will like the Peruvian. She's a convert like them and their mother. And she's a spic too! But, [Plaintiff's name], how can you actually fuck something so ugly? There's that other | Exhibit 1, p. 77 |

|  | women from Lakewood you were talking to.  Now that one bangs good!  She cheated on her hubby with half the town.  Her own family wants nothing to do with her, and she lives in a hotel.  She's a charity case.  [Plaintiff's name], you're getting what you deserve!  Karma is great! |  |
|---|---|---|
| August 8, 2018 | I believe you're fucking [Woman #3] now.  You keep going back to her after you break up.  You deserve that reject.  12 years she's been divorced.  Every man laughs at her. | Exhibit 1, p. 90 |
| August 17, 2018 | You seem proud that you dated me.  I deny it, cause you're a pig who bangs women.  So, stop connecting me to you!  Go bang Susan and the public sex and threesomes.  That's what you deserve!  You stopped wanting to talk to me because you were preparing to bang Susan again… So, you told [Woman #4] not to talk to me?...!  Why did you have to tell Susan about us?  That sex pig will tell everyone.  Do you want to settle this nicely? | Exhibit 1, p. 102-103 |
| August 20, 2018 | For once in your life, you have no control.  Your money can't buy me or tell me what to do.  I will make whatever decision I choose.  Now go do what you're good at.  Hunt for new pussy!  Who are you banging now? [Woman #5]? | Exhibit 1, p. 112 |
| August 24, 2018 | I don't care if I reveal this to you.  But, I could show you the conversation.  Your former fuck friend is banging [Man's name].  So, don't feel bad for her.  Her cunt is getting plenty of action.  It's a miracle you didn't get an STD! | Exhibit 1, p. 135 |
| September 3, 2018 | And you are trying to go out with other women to bang and dump.  And another thing: Don't ever tell me that I was "carrying on" with [Man's name].  I follow Halacha.  And Halacha mandates that one never associate with lower class. | Exhibit 1, p. 159 |
| September 6, 2018 | Question: Remember how you were wondering over and over why a particular man married a particular popular woman (who you don't like) whose marriage is #4?  Answer: The man has HSV2 (herpes virus, highly contagious) and so does the woman.  He was specifically seeking a woman with the same.  Source: Very Reliable…I don't want to say the name.  But, if you think about it you will figure out who the woman is.  I'll give you a hint: She wanted to sleep with you Shabbos Nachamu 2017.  Thank G-d you didn't. | Exhibit 1, p. 161 |
| September 22, 2018 | Shavua Tov.  Meant to tell you.  You know who called me Thurs. night at 10?  [Woman #6]!  We had an interesting convo!  Did you bang her again? [tongue emoji] Or just dinner?...Curious if it was just a dinner or a fuck too | Exhibit 1, p. 169-170 |
| September 25, 2018 | Guess you're trying to arrange banging sessions in Israel.  Just know that they have an issue with pubic lice there!!!  I'm smarter than any of the others you used as seminal deposits! | Exhibit 1, p. 173-174 |
| October 4, 2018 | Your lips look dry must be from overuse on [fish emoji, bush emoji, tongue emoji].  But, you still look handsome to me!  Tell | Exhibit 1, p. 176-177 |

| | her I say hi…Not hounding you at all! So, is she someone you just met, or knew her from before?  [bush emoji, fishing emoji, tongue emoji]…Getting laid? | |

Defendant further threatened to involve Plaintiff's employer with her various false claims:

| Date | Defendant's Statement | Exhibit |
|------|----------------------|---------|
| July 29, 2018 | Just sent an email to my relatives to transfer if they have a portfolio with [Plaintiff's employer].  Let's see you "bang" your way out of that one! | Exhibit 1, p. 80 |
| July 30, 2018 | And for your information.  My relatives have NO investments with [Plaintiff's employer].  Just said that to piss you off.  And my personal portfolio is with one of your competitors.  Had things not gone bad, perhaps I would've considered taking my business to you. | Exhibit 1. p. 83 |
| September 1, 2018 | You can ignore me all you like.  But, I'm drafting a long email directly to your company along with interesting screenshots.  [Plaintiff's employer] will kick you out on your smelly ass. | Exhibit 1, p. 151 |
| September 1, 2018 | Let's see how any woman will want you when the story hits the media…Let's see who will want you when you lose your job at [Plaintiff's employer]. You clearly unfriended me for a woman.  There was no fight.  You just did it to me.  And I'm not being treated like that.  So, the way to get back at someone is in the pocket.  As I said, [Plaintiff's employer] will get the full true report on you.  After that is when I will move on. | Exhibit 1, p. 154 |

The flimsiness of Defendant Sebrow's causes of action make one thing crystal clear: her counterclaims are designed to do nothing more than further embarrass and harass Plaintiff. Because her Answer wholly fails to state a cause of action upon which relief can be granted and because the mountains of documentary evidence show her heinous and tortious conduct and disprove every allegation even resembling a cause of action, the only appropriate action is dismissal of her counterclaims.

**ARGUMENT**

**POINT I**
**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule 12(b)(6), a counterclaimant must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'". Ashcroft v. Iqbal, 556 U.S. 662, 678 [2009]). Elaborating, the Court in Ashcroft held that:

> (a) claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted). Id..

Further, "(t)hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (Id.). "(I)n a motion to dismiss the pleadings, a court may consider matters subject to judicial notice". Schott v State, A-2612-04T1, 2006 WL 1911375, at *4 (NJ Super Ct App Div July 13, 2006)). While "(t)ypically, extrinsic evidence should not be considered in ruling on a Rule 12(b)(6) motion" Third Circuit courts have held that, "if such external evidence 'was integral to and explicitly relied on in the complaint, and (if) the plaintiffs do not challenge its authenticity,' it may be relied upon in reviewing the sufficiency of the complaint". Morrissey v WTVR, LLC, 432 F Supp 3d 617, 623 (ED Va 2020).

<u>**POINT II**</u>

**REGARDLESS OF WHETHER THIS COURT APPLIES NEW YORK, NEW JERSEY, OR FEDERAL DEFAMATION LAWS, DISMISSAL OF DEFENDANT'S DEFAMATION COUNTERCLAIM IS WARRANTED DUE TO HER FAILURE TO <u>INCLUDE ANYTHING RESEMBLING PARTICULARITY IN HER PLEADINGS</u>**

In this action, Plaintiff is a domiciliary of New Jersey, while Defendant/counterclaimant is a domiciliary of New York.  "Under New York choice-of-law rules in defamation cases the state of the plaintiff's domicile will usually have the most significant relationship to the case, and its law will therefore govern". <u>Celle v. Filipino Reporter Enters.</u>, 209 F.3d 163, 175 (2d Cir. 2000).  The New Jersey Supreme Court has adopted the choice-of-law approach set forth in the Restatement (Second) of Conflict of Laws ("Second Restatement"). <u>Sarver v Chartier</u>, 813 F3d 891, 897 (9th Cir 2016).  The Second Restatement considers two types of defamation, both of which are outlined here due to the vague nature of Ms. Sebrow's pleadings.  The first is contained in Section 149 and "applies to all publications of defamatory matter except when there is a multistate publication of an aggregate communication within the meaning of the rule of §150". <u>Restat 2d of Conflict of Laws</u>, § 149 (2nd 1988).  Pursuant to Section 149, "in an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties, except as stated in §150, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in §6 to the occurrence and the parties, in which event the local law of the other state will be applied".  <u>Id.</u>. Section 150, which governs multistate publication of an aggregate communication, provides that "when a natural person claims he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state" (§150(2)).

The theory behind choice of law lying with the state in which the allegedly damaged party is domiciled is a sensible one:

> When there has been publication in two or more states of an aggregate communication claimed to be defamatory, at least most issues involving the tort should be determined, subject to the possible limitation stated in Comment *d*, by the local law of the state where the plaintiff has suffered the greatest injury by reason of his loss of reputation. This will usually be the state of the plaintiff's domicile if the matter complained of has there been published
> Restat 2d of Conflict of Laws, § 150 2nd 1988.

In her counterclaim, Defendant argues that Plaintiff's defamation was designed to "cause the Defendant extreme financial and emotional hardship, and purposefully interfere with Defendant's professional career and livelihood". Answer, ¶44..  That she is a "citizen and resident of Lawrence, Nassau County, New York" is one of two paragraphs to which she admits in her Answer. Answer, ¶3, Complaint ¶11.  Accordingly, the State of New York - Defendant's home state - has the most significant relationship with her defamation claims against Plaintiff, whatever it is they might be.

Still also available are federal laws and pleading requirements concerning defamation. However, regardless of whether this Court chooses to follow New York, New Jersey, or federal requirements, it should still dismiss Defendant's counterclaim for defamation due to its utter failure to provide Plaintiff with any notice of claims against which he should attempt to defend himself.

**A.  Dismissal is Warranted Pursuant to New York Law**

New York's heightened pleading requirement is statutory.  C.P.L.R. §3016(a) mandates that, in actions to recover damages for defamation, "the particular words complained of shall be set forth in the complaint(.)"  Case law has extended the particularity requirement to necessitate

that a plaintiff allege the "the time when, place where, and manner in which the false statement was made, and specify to whom it was made". <u>Epifani v Johnson</u>, 65 AD3d 224, 233 (2d Dept 2009); <u>see</u> <u>also</u> <u>Langella v Mahopac Cent. Sch. Dist.</u>, 2022 US Dist LEXIS 2156, at *31 (SDNY Jan. 5, 2022, No. 18-cv-10023 (NSR).

"New York state courts require a plaintiff to state defamation claims with particularity, setting forth 'the particular words complained of,' though "their application to the plaintiff may be stated generally". <u>Biro v. Condé Nast</u>, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012).  More specifically, "the failure to set forth the actual words constituting the alleged defamatory matter renders the complaint defective.  It is not sufficient to summarize the language or to state the substance or general effect of the words used". <u>Brown v. Reed</u>, 167 N.Y.S.2d 41, 42 (Sup. Ct. 1957).

Using the widest possible net to catch all statements allegedly made by Plaintiff which Defendant might be claiming are defamatory, she has failed to state them with any degree of particularity as required by New York State's laws.

**B. Dismissal is Warranted Pursuant to New Jersey Law**

Similarly, in New Jersey, "(a) complaint alleging defamation…must be plead with particularity and thus must set forth facts identifying the defamatory statements, their utterer, and their publication".  <u>Whiting v Computer Assoc. (In re Whiting)</u>, 2001 US Dist LEXIS 23539, at *17 (DNJ Aug. 20, 2001, Civil Action No. 01-1583 (NHP).

Here, again, Defendant has failed to set forth any facts to identify the statements allegedly made, that Plaintiff made them, and any information about their publication, other than being done – apparently – by writing and verbally.  Just as New York law requires dismissal due to failure to plead with particularity, so too does New Jersey law.

### C.  Dismissal is Warranted Pursuant to Federal Law

Should this Court choose to apply federal rules to the sufficiency of Defendant's pleadings,

dismissal remains appropriate because Defendant's counterclaims wholly fail to give Plaintiff

notice of communications complained of:

> In federal court…the complaint is subject to the usual standards set forth
> by the Federal Rules of Civil Procedure and *Twombly* and *Iqbal*. "While
> the federal rules do not require the particularized pleading requirements
> set forth in New York's C.P.L.R. section 3016, Rule 8 [of the Federal
> Rules of Civil Procedure] still requires that each pleading be specific
> enough to afford defendant sufficient notice of the communications
> complained of to enable him to defend himself (Biro v. Condé Nast, 883
> F. Supp. 2d 441, 456 (S.D.N.Y. 2012)).

The court in Biro held more specifically that a "defamation claim is only sufficient if it

adequately identifies the purported communication, and an indication of who made the

communication, when it was made, and to whom it was communicated" (Biro v. Condé Nast,

883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012)).

Admittedly federal judges "disagree about what facts are required to 'provide sufficient

notice'" but while the "federal pleading standards may be liberal…they require more than bare

allegations that 'fail to identify with any degree of specificity the substance and circumstances of

the representations at issue'". Oldham v. Pa. State Univ., No. 4:20-CV-02364, 2022 U.S. Dist.

LEXIS 87272, at *50 (M.D. Pa. May 13, 2022).  The court in Mangan held that "'according to

rule 8, a defamation pleading does not need to cite precise defamatory statements, it must only

provide sufficient notice to the other party of the allegations made against him". Mangan v.

Corp. Synergies Grp., Inc., 834 F. Supp. 2d 199, 204 (D.N.J. 2011).  In Novartis Pharms. Corp.,

the New Jersey District Court, citing to Kotok, specified that "while a 'verbatim transcription' of

the alleged defamation is unnecessary, some factual pleading of the statements made is

required'".  Novartis Pharm. Corp. v. Bausch & Lomb, Inc., Civil Action No. 07-5945 (JAG), 2008 U.S. Dist. LEXIS 92133, at *19 n.8 (D.N.J. Nov. 12, 2008).  Interestingly, in Kotok Bldg., a thoughtfully written opinion out of Cumberland County, the court wrote that "the conclusory allegation in paragraph four of the second count of defendant's counterclaim, i.e., that plaintiff slandered defendant, is an inadequate 'statement of the facts on which the claim is based' under R.4:5-2, and accordingly paragraph four must fail for insufficiency".  Kotok Bldg. v. Charvine Co., 183 N.J. Super. 101, 105 (Super. Ct. 1981).

Even the most generous reading of Defendant's counterclaims does not provide the slightest hint of an answer as to any of the identifying information called for in Biro.  Straining to find a whisper of a statement, one might be inclined to believe Defendant is referring to the lawsuit itself, but the second count refers to statements "both in writing and orally[.]"  But looking at all the spoken statements in the factual allegations, it is clearly Defendant's intention that we believe such statements to be true, not that they are false statements made about her.  But even applying a more liberal pleading requirement, Defendant's allegations are conclusory at best.  Like in Kotok Bldg., Defendant alleges, without any context, color, or other information that she was defamed by Plaintiff.  Defendant does not even bother to specify "in sum and substance" the words used to defame her, much less when or to whom the statement or statements were allegedly uttered.

It would be patently unreasonable for Plaintiff to be expected to defend himself against every statement – verbal and written – real or imagined by Defendant – he may have made about Defendant over the course of an unknown number of years.  As the court stated in Kotok Bldg., "we must never become slaves to a system of pleading, but liberality must not degenerate into anarchy".  Kotok Bldg. at 105.

**POINT III**

**DISMISSAL OF DEFENDANT'S DEFAMATION CLAIM IS WARRANTED DUE TO HER FAILURE TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED**

Defendant's counterclaim for defamation is vague and poorly pleaded and must fail for reasons beyond being deficient in terms of particularity.  Labeled the "SECOND COUNT" Defendant's defamation claim states that:

> The Plaintiff made false and defamatory statements, both in writing and orally, about the Defendant, in public as well as to third parties.  In doing so, the Plaintiff acted with malice, with the intention to cause significant injury to the Defendant.  The Defendant suffered extensive damages as a result of the defamatory statements, and abundant legal action he has taken against her.

Notably, Defendant's factual allegations fail to illuminate her claim any further.  The only quotations contained within her allegations are: "business proposition," "drink slowly[,]" get dressed[,]" "I want to show you something[,]" and "blow me, if you do not, I will show these pictures to everyone."  While these quotations do show an abundance of imagination on the part of Defendant, they are not defamatory.

The Second Circuit Court of Appeals has held that a party wishing to state a cause of action must set forth five elements:

> Under New York law, a plaintiff must establish five elements to recover in libel:
> 1) a written defamatory statement of fact concerning the plaintiff;
> 2) publication to a third party;
> 3) fault (either negligence or actual malice depending on the status of the libeled party);
> 4) falsity of the defamatory statement; and
> 5) special damages or per se actionability (defamatory on its face).
> Celle v. Filipino Reporter Enters., 209 F.3d 163, 176 (2d Cir. 2000).

Defendant's pleadings are so sparse as to make asserting a claim for defamation nearly impossible.  Mostly obviously, nowhere does she include a written defamatory statement

concerning her and nowhere does she state special damages or per se actionability.  Further,

while she claims Plaintiff's statements were made "in public as well as to third parties" the

quoted language above – the only language Defendant attributes to Plaintiff – seems only to be

made to Defendant directly.

**POINT IV**
**DISMISSAL OF DEFENDANT'S DEFAMATION CLAIM IS**
**WARRANTED DUE TO LITIGATION PRIVILEGE**

"[C]ertain statements made in the course of judicial, administrative, or legislative

proceedings are absolutely privileged because of 'the need for unfettered expression critical to

advancing the underlying government interest at stake in those settings'". Zagami, LLC v

Cottrell, 403 NJ Super 98, 104, 957 A2d 691, 694 [NJ Super Ct App Div 2008]. Elaborating, the

court in Zagami cited to Fenning v. S.G. Holding Corp, in which the need for protections

concerning statements made in relation to legal proceedings was emphasized and called

"indispensable to the due administration of justice[:]"

> [t]he doctrine that an absolute immunity exists in respect of statements,
> even those defamatory and malicious, made in the course of proceedings
> before a court of justice, and having some relation thereto, is a principle
> firmly established, and is responsive to the supervening public policy that
> persons in such circumstances be permitted to speak and write freely
> without the restraint of fear of an ensuing defamation action, this sense of
> freedom being indispensable to the due administration of justice.
> Id. citing Fenning v. S.G. Holding Corp., N.J.Super. 110, 117, 135 2d 346
> (App.Div.1957).

Notably, the protection has been held to apply to statements made both during and in connection

with a legal proceeding.

The litigation privilege is designed to "afford[ ] litigants and witnesses 'the utmost

freedom of access to the courts without fear of being harassed subsequently by derivative tort

actions'". <u>Hawkins v. Harris</u>, 141 N.J. 207, 216 [1995].  It is antithetical to any concept of justice that a victim of harassment, after enduring a criminal trial which led to her attacker being found guilty of harassment beyond all reasonable doubt, would then have to suffer a defamation lawsuit which is transparently baseless and retaliatory.

New Jersey's Litigation privilege is "firmly established" and protects statements "even those defamatory and malicious, made in the course of proceedings before a court of justice, and having some relation thereto". <u>Hawkins v Harris</u>, 141 NJ 207, 214, 661 A2d 284, 288 (1995).

In New Jersey, defamatory statements are protected by the litigation privilege if the statements are communications are "(1) made in judicial or quasi-judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action" (<u>Ashmore, supra</u>).

In New York, an absolute privilege is provided to a:

> party conducting judicial proceedings is privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words and writings are material and pertinent to the questions involved; and that, within such limit, the protection is complete, irrespective of the motive with which they are used.
> (<u>Allan & Allan Arts v Rosenblum</u>, 201 AD2d 136, 138 (2d Dept 1994)).

The absolute privilege "embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability". <u>Grasso v Mathew</u>, 164 AD2d 476, 479 (3d Dept 1991).  "The test of pertinency to the litigation is extremely liberal so as to embrace anything that may possibly or plausibly be relevant or pertinent".  <u>Brady v Gaudelli</u>, 137 AD3d 951, 952 (2d Dept 2016)(internal quotations omitted).  The privilege applies to "all statements made in or out of court and regardless of the motive for which they were made.".  <u>Id</u>.  The absolute privilege was created "to allow the parties,

witnesses, and attorneys in a litigation to communicate freely without fear of defamation litigation".  Weinstock v Sanders, 144 AD3d 1019, 1021 (2d Dept 2016).

To the extent Defendant is arguing that the allegations contained within Plaintiff's lawsuits constitute defamation, Plaintiff has absolute immunity for all statements made in connection with his lawsuits.

## POINT V
## DISMISSAL OF DEFENDANT'S FRAUDULENT MISREPRESENTATION CLAIM IS WARRANTED BECAUSE IT IS DEVOID OF MERIT

Dismissal of Defendant's bizarre cause of action for fraudulent misrepresentation is appropriate first because it is not pleaded with particularity and second because Defendant's factual allegations common to counterclaims do not meet the elements required for the cause of action.

### A.  The Counterclaim is Not Pleaded with Any Sort of Particularity

The federal rules, along with both New York and New Jersey law, mandate a higher pleading requirement for actions sounding in fraud.  Rule 9(b) states "(i)n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed Rules Civ Proc R 9.  To satisfy this standard, a counterclaimant must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation".  Frederico v Home Depot, 507 F3d 188, 200 (3d Cir 2007).

The purpose of the rule is "a party must plead (its) claim with enough particularity to place defendants on notice of the 'precise misconduct with which they are charged'".  United States ex rel. Petras v Simparel, Inc., 857 F3d 497 (3d Cir 2017).

Defendant's so-called fraudulent misrepresentation claim is as follows:

> The Plaintiff made false representations of material facts.  The Plaintiff knew the statements were false at the time they were made.  The Plaintiff intended for people to rely on the truth of the false statements, notwithstanding their falsity.  The Defendant suffered damages due to people having relied on the Plaintiff's false statements.

Parsing through the factual allegations common to counterclaims and looking for a date, time, and place; some knowledge of falsity on the part of Plaintiff; or even a reasonable reliance sheds no light on Defendant's claims.  Accordingly, Defendant's failure to plead her counterclaim for fraudulent misrepresentation with any degree of particularity requires dismissal of the cause of action.

## B.  The Counterclaim Fails to Set Forth a Cause of Action for Fraud

While the Counterclaim has zero facts that would suffice to establish a cause of action for fraud, even if the Defendant had included some dates, she still failed to establish a cause of action for fraudulent misrepresentation.  A counterclaimant must show "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance by the other person; and (5) resulting damages".  SAT Agiyar, LLC v 7-Eleven, Inc., 2020 US Dist LEXIS 116762, at *12 (DNJ June 30, 2020, Civil Action No. 19-19994 (MAS) (ZNQ).

Here, Defendant's counterclaim is conclusory at best.  Defendant has not asserted within her factual allegations and Plaintiff cannot begin to guess what "presently existing or past fact" Plaintiff has misrepresented.  In that vein, it would be impossible for him to defend himself

against an allegation that he knew the statement was false at the time he made it when he does not even know what the statement is today.

## POINT VI
### DISMISSAL OF DEFENDANT'S ABUSE OF PROCESS CLAIM IS WARRANTED BECAUSE IT FAILS TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED

While again exceptionally unartfully pleaded, Defendant's counterclaim for abuse of process appears to argue that Plaintiff's obtaining of a temporary restraining order against her (relevant police report annexed and resulting temporary restraining order hereto as Exhibit "3") in addition to the instant case amount to an abuse of process. Inexplicably, Defendant also makes mention of a lawsuit filed by Plaintiff against individuals *who are not Defendant*. Dismissal of Defendant's abuse of process claim is warranted because she fails to state a cause of action upon relief can be granted and because the claim is not yet ripe for adjudication.

### A. Dismissal is Appropriate Because Defendant Has Not Stated a Cause of Action for Abuse of Process

"An abuse of process occurs when a party employs legal process against another primarily to accomplish a purpose for which it was not designed". Marable v. W. Pottsgrove Twp., 176 F. App'x 275, 281 (3d Cir. 2006). "Abuse of process also requires that there be 'an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action.'" Giordano v Claudio, 714 F Supp 508, 533 [ED Pa 2010]. For a cause of action to lie, there must have been a "perversion" of legal process. Gen. Refractories, 337 F.3d at 304). "'There is no action for abuse of process when the process is used for the purpose for which it is intended,

but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant . . .'"

Marable v. W. Pottsgrove Twp., 176 F. App'x 275, 281 (3d Cir. 2006)).

> Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself such as the surrender of property or the payment of money by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the assurance [sic] of the process itself, which constitutes the tort.
> Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 305 (3d Cir. 2003).

Defendant's abuse of process counterclaim consists of two sentences: "The Plaintiff has improperly utilized the legal process to suit his own nefarious purposes, intending specifically to cause harm to the Defendant for his own collateral objectives.  The Defendant has suffered significant damages due to the persistent frivolous legal action perpetrated against her by Plaintiff."

Initially, what Defendant has asserted is that Plaintiff pursued a criminal and civil case against her and because of these two legal actions – which call for entirely different forms of relief – Plaintiff is committing abuse of process; this is preposterous.  If pursuing criminal action and later bringing a civil action against someone constituted an abuse of process, unknown numbers of people would be forced to choose whether they wanted their abuser to be held criminally responsible or to be made whole for the abuse they endured.  Further, Defendant has not alleged any illegitimate aim like extortion or blackmail, simply a conclusory and wholly unexplained statement that Plaintiff is using legal process for his own unstated collateral objectives; this is not enough.

Finding allegations of abuse of process to be "too vague" the Third Circuit Court of

Appeals has held that:

> Allowing a party to use the process in order to succeed in the litigation is
> an end contemplated by most legal processes, and, certainly, that goal does
> not pervert "discovery and litigation process." *See* Poduska, 895 F.2d at
> 856 ("[T]he lawsuit's objective of a money recovery cannot be the basis
> for abuse of process, or a defendant would have a triable counterclaim,
> whenever he was sued, by alleging the suit was groundless, and the
> plaintiff knew it."); *accord* Mozzochi v. Beck, 204 Conn. 490, 529 A.2d
> 171, 174 (Conn. 1987) (dismissing a complaint for abuse of process where
> the plaintiffs pled only that the defendants acted "for an unlawful ulterior
> purpose, to wit: to inflict injury upon the plaintiff and to enrich themselves
> and their said client although they knew that their said lawsuit was without
> merit")
> Gen. Refractories Co., supra.

In upholding dismissal of the cause of action for abuse of process for falling "short of

making the necessary allegations" the court in Gen. Refractories Co. further held that the

complaint did not "contain the necessary allegations that legal processes were not

employed to achieve their intended purposes" and the "purposes for which the attorney

appellees used the various legal processes are not specifically alleged as part of the abuse

of process claim against the attorney appellees" and were "more conclusory and general

in nature" (Id.).  Reading Defendant's counterclaim, she has not pleaded that legal

processes were not employed to achieve their intended purposes and did not detail or

even summarize what, exactly, the purpose for undertaking the unstated legal processes

might be.  Simply put, Defendant's counterclaim for abuse of process, even if believed, is

too vague and poorly pleaded to be said to assert a cause of action.

### B.  Dismissal is Appropriate Because the Claim is Ongoing and thus not Ripe for Adjudication

"The allegedly abusive process that forms the basis for an abuse of process claim must be completed before a litigant may bring an abuse of process claim; this is so 'whether it allegedly encompasses the entire litigation, or a portion thereof . . .'" (Giordano v Claudio, 714 F Supp 2d 508, 533 [ED Pa 2010]).

In Giordano, the court held that a counterclaim which asserted that the "underlying litigation as a whole constitutes an abuse of process fails to state a claim which is ripe for adjudication" because, by "definition, a lawsuit in its entirety cannot constitute an abuse of process when it has not been concluded" as a factfinder must first determine "'the primary reason' for the use of the allegedly abusive process" (Giordano at 533).  The court in Giordano dismissed the defendant's abuse of process counterclaim (Id. at 534).

Here, both Plaintiff's domestic violence claims and civil claims against Defendant are ongoing.  Because neither action has been concluded, this court is unable to ascertain Plaintiff's primary motive for seeking relief from Defendant's harassment through the criminal and civil processes.

Whereas, the Defendant's Counterclaims should be dismissed in their entirety.

Dated:        October 21, 2022
              New York, New York

                                        *Daniel S. Szalkiewicz, Esq.*
                                        Daniel S. Szalkiewicz, Esq.

24