**IRA HELLER LAW, LLC**
IRA W. HELLER, ESQ.
(MEMBER OF BAR - NJ & NY)

1317 Morris Avenue, Union, NJ 07083
Tel: 908-275-8626 / Fax: 908-349-3005
iwhelleresq@gmail.com

February 16, 2023

**VIA EMAIL & ECF FILING**
United States Magistrate Judge Edward S. Kiel
Frank R. Lautenberg U.S. Post Office & Courthouse Building
2 Federal Square
Newark, NJ 07102

      Re: John Doe v. Baila Sebrow
      United States District Court, District of New Jersey
      Case No.: 2:21-cv-20706

Dear Magistrate Judge Kiel,

    My Law Office represents the Defendant in the above-referenced matter. I write this letter in response to Mr. Szalkiewicz's letter, submitted to the Court on February 8, 2023.

    I most vehemently object to the specious allegations against my client, which are entirely baseless. The Parties are currently engaged in an evidence gathering stage, and Mr. Szalkiewicz is all too quick to push his own premature conclusions, while attempting to drag the Court with him. We are in a forum in which both sides have the equal right to present their case and pursue their own evidence gathering, and this process is anything but complete.

    Defendant treats this matter as if his version of events is the only one that can possibly true, and purports to have irrefutable evidence of same. However, we strongly contest his position, and the Defendant fully intends to present her case, and deserves her day in Court to do so. In the meantime, the Court should not circumvent the Defendant's right to due process on Mr. Szalkiewicz's "say-so," but this is precisely what he is demanding.

**Brief Background**

    The Plaintiff has thus far retained at least two law firms, and has filed three separate law suits implicating Ms. Sebrow in the last year and half. The first matter was filed by the Plaintiff in the New Jersey Superior Court, Family Division, in July of 2021, in which the Plaintiff sought a Restraining Order against Ms. Sebrow. In September of 2021, the Plaintiff filed an action in the New York Supreme Court, in which Ms. Sebrow was not even named as a Defendant in that case, but yet, obsessively referenced Ms. Sebrow, over and over, in his certification. As was later revealed, the law firm of Borenstein, Mcconnel & Calpin, P.C. hired Mr. Szalkiewicz's law firm to track down the person who posted the "Harvey Bell date rape" postings on the internet, which they found, but were disappointed to find that Ms. Sebrow was not responsible for them, as he had hoped.

1

It was also later revealed that in Order to find the actual perpetrators of the postings, they utilized the Caption of the New Jersey Domestic Violence matter to send out document subpoenas to multiple places, while violating multiple rules of the New Jersey Courts. Domestic violence matters in the New Jersey family Court are summary proceedings which require leave of the Court to pursue document subpoenas, which Mr. Szalkiewicz and company did not seek. Furthermore, as is universally required, they did not Notice me on any of the subpoenas, thereby depriving my client of her due process rights. Consequently, Defendant's attorneys were already sanctioned by the Family Court for their misconduct, and pending the adjudication of a current Motion to Quash, are likely to incur further sanctions.

**The New York Matter**

As it turns out, when Mr. Szalkiewicz and Mr. Borenstein found out that the perpetrator of this posting was not Ms. Sebrow, they still set about reverse engineering what they had found to make their case that Ms. Sebrow was some sort of "cyber-sleuth" in the background, pulling all the strings in some nefarious agenda to defame Mr. Bell. Once having discovered that the responsible party was not Ms. Sebrow, but rather, parties named Michael Kogan and Tania Kogan, they still persevered in their agenda to hold Ms. Sebrow responsible. These parties were hired not by Ms. Sebrow, but by a woman named Nadia Kiderman. Accordingly, it became necessary for them to make the case that though the postings were made by Michael Kogan and Tania Kogan, and hired to do so by Nadia Kiderman, it was necessary to posit that it must have been Ms. Sebrow who allegedly "made her do it."

**Matters of Expert Testimony**

A "letter" is most certainly not the place to be arguing the entirety of Ms. Sebrow's case, but I assure the Court that there are clearly two sides to this matter, and all of the text messages and other "evidence," much of which has already been introduced to this Court by Mr. Szalkiewicz, are not "facts," as the Defendant would like the Court to think. Mr. Szalkiewicz has introduced hundreds of pages of text messages to this Court as evidence, in both this matter and the New Jersey matter, which acting as an "expert witness" in the New Jersey matter, Mr. Szalkiewicz downloaded and presented hundreds of pages of text messages. Mr. Szalkiewicz revealed that he extracted Mr. Bell's text messages from his phone using a consumer software program called "iMazing." This program is not used by experts in the phone forensics community, as it does not provide the data required to make a proper determination of the authenticity of the information. After retaining our own expert, Mr. Szalkiewicz then informed us that he was going to retain a forensic expert who will use the expert grade program called "Celebrite," though no viable explanation was forthcoming as to why Mr. Szalkiewicz did not utilize it for his "expert testimony" in the first place, and only turned to it after learning that we would be bringing in our own expert. We were provided with the new expert's download using "Celebrite," but our expert has already detected several deficiencies in what was provided, and will be duly addressed over the course of the remaining discovery process.

The Defendant vehemently denies what the Plaintiff has been representing as her authentic texts and emails, and has retained her own data forensics experts to do their own verifications. We have also verified by our expert that just as the Plaintiff claims that my client altered the email that Mr. Szalkiewicz attached as exhibits to his letter can go both ways. In other words, Mr. Bell could have equally altered his email, and it need not be Ms. Sebrow who altered it. The fact that the original email disappeared from my client's server could easily be explained by the fact that Mr. Bell, during the months that he was connected with Ms. Sebrow, obtained the passwords from Ms. Sebrow to her devices. Ms. Sebrow's position, which she will eagerly present under oath, is that she was date raped by Mr. Bell, and subsequently blackmailed with lewd photos he took of her, to force her to bend to his will. The fact that Mr. Szalkiewicz finds this to be preposterous is immaterial, and not probative of anything.

**Gratuitous Innuendo**

Mr. Szalkiewicz's letter is overflowing with inuendo against Ms. Sebrow, bereft of facts. If this Court was to be ruled by whose opinion was most persuasive, we could easily fight back with a comparison of the histories and reputations of these two individuals. Notwithstanding Mr. Bell's attempts to characterize Ms. Sebrow as a mentally ill woman who was obsessed with him, this does not fit Ms. Sebrow's past profile and reputation. However, if Mr. Bell were to be judged by his reputation, past and present, it would be better matched with Ms. Sebrow's characterization of him, which is that of a serial abuser of women.

**The Deposition**

Regarding Mr. Szalkiewicz's conclusions drawn from their recent deposition of Ms. Sebrow, which has yet to be completed, he once again engages in mischaracterization of Ms. Sebrow. For example, in Mr. Szalkiewicz's letter, he accuses Ms. Sebrow of lampooning a question about "spoofing," perhaps expecting her to provide a sophisticated response on the science of "cyber-spoofing." The fact that Ms. Sebrow gave a very basic definition of the term "spoof," by conjuring up an example of a "Saturday Night Live skit" which were commonly known as "spoofs," is actually a quite accurate representation of her understanding of the word "spoof," and Mr. Szalkiewicz has thus proven nothing. Furthermore, his noting the fact that Ms. Sebrow did not initially recognize the image of their discovery demands on the conference room screen, does nothing to detract from her credibility. The deposition was not completed, and there has been no opportunity for me to cross examine my client to provide necessary clarifications. In fact, Ms. Sebrow had seen the discovery demands, because I sent them to her before reviewing the answers with her. However, Ms. Sebrow recollection was focused on the pages in which the questions appeared, and did not immediately recognize the format of the document on the screen. This is no way impeaches Ms. Sebrow's credibility, Mr. Szalkiewicz seeks to claim.

**Mr. Bell's Display of Dishonesty**

In contrast, there is some information regarding an incident which occurred early in this case, which strips bare Mr. Bell's evil designs against Ms. Sebrow, and which is prepared to pursue, at any expense, in order to completely destroy her.

On July 15, 2021, Mr. Bell filed a Temporary Restraining Order ("TRO") Complaint in New Jersey, which was granted by the Municipal Court Judge in West Orange, New Jersey (see Complaint, annexed hereto as **EXHIBIT A**). The basis of his grievance was the "Harvey Bell date rape…" postings, regarding which it was proven very soon thereafter that this was a false accusation, as Ms. Sebrow did not post them.

Nevertheless, on August 2, 2021, Mr. Bell returned to the West Orange Municipal Court, claiming that Ms. Sebrow violated the TRO, stating that Ms. Sebrow specifically sent him an email, inviting him to a Jewish dating gathering. As a result, Mr. Bell got the Court to issue a warrant for Ms. Sebrow's arrest, for allegedly violating the TRO restrictions (copy of August 2, 2021 Complaint is annexed hereto as **EXHIBIT B**). In truth, what Mr. Bell had received was a Notice from Ms. Sebrow's twitter dating site, which came from the email address "info@twitter.com," and was clearly not sent by Ms. Sebrow (see copy of email, annexed hereto as **EXHIBIT C**). In other words, the only way to receive those emails from the dating site would have been for Mr. Bell to actively sign up to receive them (explanation of process of setting up a Twitter notification, annexed hereto as **EXHIBIT D**), which Mr. Bell clearly did or he would not have received the email. He then took a copy of the email received from Ms. Sebrow's Twitter site, which he himself received by his own initiative and not Ms. Sebrow's, and deliberately deceived the Court into thinking that Ms. Sebrow sent him the email. Based upon this deliberately false representation by Mr. Bell, a warrant for Ms. Sebrow's arrest was issued. This is emblematic of Mr. Bell's level of integrity, which we fully intend to show is seriously flawed.

If and when this case goes to trial, it will clearly be up to each side to prove his/her case, and the Court will make its own determination as to who it feels is telling the truth. Until such time, however, this Court is bound to give the Defendant her full opportunity to present her case, and fully challenge Mr. Bell's claims. Until such time, however, no decisions should be made in this Court on Mr. Szalkiewicz's say-so. Mr. Szalkiewicz has provided no proof of any perjury, nor that his client's competing "proofs" are, or will be, superior to that which my client will present to this Court.

Regarding the Electronically Stored Information ("ESI"), we have no problem making any available ESI available to our adversary, as soon as our experts can ascertain what ESI is available. It is true that there have been some delays in my getting my bearings and catching up in this matter, for reasons already known to this Court. However, neither I nor my client have any intention of shirking our responsibility to provide what is required, as per the rules of this Court.

Accordingly, I respectfully request that Mr. Szalkiewicz's request to strike my client's pleadings be summarily denied. My client has answered Mr. Szalkiewicz's interrogatories, and has responded to his discovery demands. Once the discovery stage has been completed, the

Parties can present their evidence, and the Court will make its determinations at the proper time. In the meantime, Mr. Szalkiewicz's incessant filings, some of which, like this one, have been blatantly frivolous, have been unfairly burying me in paper, and is a form of harassment that needs to stop.

    I thank Your Honor for your kind consideration to this matter.

                                        Respectfully submitted,

                                        Ira W. Heller, Esq.

cc: Daniel Szelkiewicz, Esq.
    *Attorney for Plaintiff*