UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| John Doe.<br><br>        Plaintiff,<br><br>    v.<br><br>Baila Sebrow<br><br>        Defendant. | Case No. 2:21-cv-20706 |

BRIEF IN OPPOSITION OF DEFENDANT BAILA SEBROW'S MOTION TO QUASH A SUBPOENA ON VERIZON

Daniel Szalkiewicz, Esq.
Daniel Szalkiewicz & Associates, PC
23 West 73rd Street, Suite 102
New York, NY 10023
(212) 706-1007
daniel@lawdss.com
*Attorneys for Plaintiff*

1

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT & FACTUAL BACKGROUND** .......................................... 3

**ARGUMENT**

**POINT I DEFENDANT'S MOTION TO QUASH SHOULD BE DENIED** .......................... 6

    A.   Mr. Heller Failed to Engage in Any Good Faith Efforts to Resolve the Issue Prior to Filing the Motion ................................................................................................................ 6

    B.   Defendant Lacks Standing to Challenge the Subpoena ................................................. 7

    C.   Defendant's Motion is Untimely ................................................................................... 8

    D.   By Proceeding as John Doe, the Subpoena is not a Nullity. .......................................... 8

    E.   The Subpoena is Not Improper Because the Defendant's Name is Betty ..................... 9

    F.   The Distance of the Subpoena is Proper ....................................................................... 9

    G.   The Scope of the Subpoena is Reasonable ................................................................. 10

    H.   Defendant's Request for Sanctions Must be Denied ................................................... 11

Plaintiff John Doe ("Plaintiff"), by his attorneys, Daniel Szalkiewicz & Associates, P.C., respectfully submits this Memorandum of Law and the Declaration of John Doe in opposition the motion to quash of defendant Baila Sebrow ("Defendant" or "Sebrow") pursuant to Rule 45 of the Federal Rules of Civil Procedure ("FRCP").

## PRELIMINARY STATEMENT & FACTUAL BACKGROUND

To date, defendant Sebrow has not meaningfully participated in the discovery process. Sebrow and her attorney have ignored every deadline, requiring Plaintiff to file multiple motions to compel and strike Sebrow's pleadings. Despite demands being served on November 21, 2022, it was not until February 5, 2023, Mr. Heller produced, for the first time, five emails. Plaintiff has shown these documents are fabrications and was created by Defendant to further her harassment of Plaintiff. More so, Defendant has refused to engage in ESI discovery, refused to discuss any parameters of searches to be performed on her devices and email accounts, and refused to turn over her devices for Plaintiff's expert to examine. Finally, during her deposition, Defendant swore that although our office received her interrogatories response on January 9, 2023, she had never seen the document before and never verified that they were true. With Defendant's utter disregard for this matter and lack of participation, Plaintiff was forced to utilize other discovery methods to prosecute this case.

On February 6, 2023, pursuant to F.R.C.P. 45(a)(4) Plaintiff served a notice of subpoena on Defendant Sebrow's attorney (Exhibit 1). The notice included a copy of the subpoena and informed Mr. Heller that it sought "the production of documents and electronically stored information." The subpoena was returnable on February 26, 2023. Later that night, Mr. Heller requested another copy of the subpoena, which our office forwarded to him (Exhibit 2). This was the last, and only, communication Mr. Heller had with our office concerning the subpoena.

3

Mr. Heller did not call our office to discuss any concerns relating to the scope of the subpoena prior to filing his untimely motion to quash on March 1, 2023.

**The Verizon Information is Pertinent to the Litigation of This Matter**

Defendant Sebrow's deposition is still ongoing, but she has made her telephone records pertinent to this case.  Although Plaintiff has produced over 1,000 pages of text messages originating from or being received by Defendant, she has alleged each of these messages is false and spoofed.  She claims they did not come from her Verizon cell phone plan.

During her first day of her deposition, Defendant Sebrow stated she received numerous other spoofed calls on her Verizon phone, and believed they came from Plaintiff (Exhibit 3).

Ms. Sebrow also refused to answer questions about the number of times she contacted Plaintiff and harassed him.  Ms. Sebrow stated that she has no recollection of dates when she calls people ("I don't write down dates of when I speak to a person. Unless there's a specific reason that I need to do it") and that while she should have records of the times that she called Plaintiff, she did "not check[] [her] phone".  Exhibit 3.

Besides being totally incapable of producing documents or having any recollection of her telephone calls with Plaintiff, Defendant had numerous other calls with relevant third parties that she refused to disclose information about.  For example, Plaintiff asserts that Defendant utilized Nadia Kiderman to publish false and defamatory websites about Plaintiff.  Defendant has alleged that her phone was "spoofed".  During her deposition, Sebrow testified Kiderman "reached out" to her in "2017 and then again in 2018" and that they began talking over the telephone. Sebrow's telephone calls continued with Kiderman until 2021.  Sebrow testified that based on

4

statements Kiderman allegedly made about Plaintiff, Sebrow then had telephone calls with an individual named Fagy Rudman.

Defendant also testified that she had telephone conversations with Debby Rochlin and Benny Rogosnitzky going back to 2017 about John Doe. Defendant testified that the night she had sex with Plaintiff in a car she was awoken by a telephone call she received from her daughter. Defendant also testified that she continuously took Ubers to see Plaintiff; each of which could be reflected in her Verizon records.

**Defendant's Failure to Produce an Accurate List of Witnesses Creates the Need for the Subpoena**

In her initial disclosures, Sebrow failed to disclose any independent witnesses. Then, in her unsworn interrogatory response, Defendant Sebrow provided conflicting information as to who would be her potential witnesses. During her deposition testimony, Sebrow's malfeasance only amplified. When asked "Are there any witnesses who you plan to -- who exist in the world who will be able to testify about your interactions with John Doe," Sebrow responded "I'm not sure." Exhibit 4. Sebrow continued that she did not know who her witnesses are and refused to produce a single name. When pressed, Sebrow miraculously stated she had telephone calls and messages with two other potential witnesses, Mike Leaphardty and Nancy Meyer. Defendant also mention other numerous witnesses that she had telephone calls with concerning Plaintiff, none of which she disclosed to Plaintiff as part of the discovery.

**Defendant Destruction of Evidence and Alteration of Emails Leads to the Need for Third Party Discovery**

Finally, the unreliability of Sebrow's evidence and her fraud on the court should not be taken lightly. As evidenced by Plaintiff's letter, dated February 8, 2023 (exhibit 6), on February

5

5, 2023, Mr. Heller produced, for the first time, five emails. Defendant deleted the original emails from her AOL account. On February 6, 2023, the morning of Ms. Sebrow's continued deposition, Mr. Heller was presented with the original emails to compare to the fabricated one he had produced the night before. Rather than correct the record, or retract the email, Mr. Heller refused to concede his client had committed perjury and continues to assert the farce that his client's text messages and telephone calls were spoofed. Mr. Heller makes these assertions without producing any evidence, discovery, or ESI information.

## ARGUMENT

### POINT I
### DEFENDANT'S MOTION TO QUASH SHOULD BE DENIED

**A. Mr. Heller Failed to Engage in Any Good Faith Efforts to Resolve the Issue Prior to Filing the Motion**

Initially, concerning the representation made by Defendant's counsel that we have engaged in "good faith" "communications" to resolve this matter, no such conversations have taken place. Indeed, had Defendant's counsel bothered to contact our office regarding his issues with the Verizon Subpoena, he would have learned that Plaintiff is agreeable to adjusting of the time frame for the records[1] and would gladly amend the caption to refer to Defendant as "Baila Sebrow a/k/a Betty Sebrow" or Betty Sebrow p/k/a Baila Sebrow[.]" However, as the parties' attorneys simply have not discussed the matters complained of in this motion, for this reason alone it should be denied as the "good faith language in Rule 37 encompasses, among other things, honesty in one's purpose to meaningfully discuss the discovery dispute…and faithfulness to one's obligation to secure information without court action" (Alerding Castor Hewitt Llp v.

---

[1] Plaintiff is amenable to changing the date of telephone logs, SMS, MMS, and other text message logs, and data usage logs from December 1, 2017 until present.

6

Fletcher, No. 1:16-cv-02453-JPH-MJD, 2018 U.S. Dist. LEXIS 244876, at *6 (S.D. Ind. Dec. 10, 2018)). Here, Defendant ignored this rule and went straight to the court.

Worse yet, Mr. Heller actively misleads the court in his participation in any conversations with our office. Mr. Heller falsely claims that "there was significant effort invested in communications with Plaintiff's counsel in a good faith effort to resolve, by agreement the issues raised in the instant motion. Unfortunately, the parties were unable to do so." It cannot be stated more clearly that there was not a single effort undertaken by Mr. Heller to resolve this motion. Not a single telephone call. Not a single email. Nothing was done by filing the instant motion.

Mr. Heller could not even be forthcoming with the court about his service of this motion. In his certification of service, Mr. Heller alleges that the motion was served by EMAIL AND REGULAR MAIL on March 1, 2023. The truth is no email was sent and Mr. Heller did not mail the motion until March 8, 2023 (Exhibit 5).

Such utter lack for candor alone should be reason to deny the motion to quash in its entirety.

### B. Defendant Lacks Standing to Challenge the Subpoena

Defendant lacks standing to object to the subpoena as "'[i]n the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness'" and "[i]n this regard, '[a] party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden'" (Gov't Emples. Ins. Co. v. Trnovski, Civil Action No. 16-4662 (CCC), 2018 U.S. Dist. LEXIS 182375, at *7-8 (D.N.J. Oct. 23, 2018)).

Defendant is not subject to the subpoena, Verizon is. And the closest Defendant comes to a privilege argument is her claim that Verizon's production would violate the privacy of non-parties and that her business as an event planner and matchmaker requires confidentiality.

7

However "[c]ontrary to [that] assertion, '[a]n individual does not have a legitimate expectation of privacy in the telephone numbers that are dialed on his or her telephone.'" Notably, despite her assertions, the subpoena seeks call and text logs, not the content of those communications.

### C. Defendant's Motion is Untimely

Rule 45 provides that "on timely motion, the court by which the subpoena was issued shall quash…" and that an "objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."

Plaintiff served the subpoena on Defendant and Verizon on February 6, 2023. Verizon has not served any objection to the subpoena and Defendant's objection was not served until March 1, 2023, after her fourteen-day window to do so had passed. Defendant's motion should be denied.

### D. By Proceeding as John Doe, the Subpoena is not a Nullity.

Defendant's paragraph 1 argues that at the time Plaintiff had served its Verizon Subpoena, he had not yet been granted the Court's permission to proceed pseudonymously and, therefore, the subpoena is defective. Defendants in Doe v. Barrow County made the same argument – that "documents filed prior to a court granting permission to proceed anonymously are in essence a nullity" – with no success (Doe v. Barrow Cty., 219 F.R.D. 189, 191 (N.D. Ga. 2003)). Further, in EW v. New York Blood Ctr. the court held that "the federal rule itself indicates that failing to bring an action in the name of the real party in interest does *not* immediately and automatically divest a district court of jurisdiction" (EW v. N.Y. Blood Ctr., 213 F.R.D. 108, 109 (E.D.N.Y. 2003)).

8

On February 8, 2023, Plaintiff filed a motion to proceed as John Doe. Defendant did not oppose the application. Accordingly, Plaintiff's Verizon Subpoena is not defective simply because it was issued prior to this Court formally granting Plaintiff permission to proceed anonymously.

### E. The Subpoena is Not Improper Because the Defendant's Name is Betty

Defendant's paragraph 2 argues that Plaintiff's Verizon Subpoena is defective due to the "misnomer" rule, as Plaintiff sued Baila Sebrow, which is apparently a nickname for Betty Sebrow. Defendant owns "Baila Sebrow Events, LLC[;]" her Instagram handle is "@BailaSebrow[;]" and she holds herself out to be Baila Sebrow in her day to day life. Defendant does not argue service here or that she is not the proper party, simply that there is "no such person as 'Baila Sebrow.'"

This matter has been pending since December 2021 and Defendant has not raised any objection to being sued as Baila. For the same reasons as set forth with regard to Plaintiff's use of John Doe, use of a nickname in the original caption does not nullify the lawsuit.

### F. The Distance of the Subpoena is Proper

Defendant's arguments as to the format of the subpoena, distance[2] from the court house, recording method, tender of fees, timing of the production are all objections based on undue burden placed on the producing non-party and are thus improperly made by Defendant. Verizon is not objecting to the disclosure of the information sought in the subpoena.

---

[2] Additionally, Plaintiff's subpoena was served upon an address in Bedminster, New Jersey. And, even if Verizon's subpoena compliance office is located in Texas, there is little reason to believe someone from that office would be the one gathering and producing the documents rather than a representative from their Bedminster, New Jersey address.

Additionally, Verizon's subpoena compliance is located at 180 Washington Valley Road, Bedminster, New Jersey 07921, a mere 43.8 miles to Plaintiff's counsel's office and 29 miles to the courthouse. The court only needs to review Defendant's Exhibit C, Verizon's letterhead, to see the address of their subpoena compliance unit.

### G. The Scope of the Subpoena is Reasonable

Defendant's argument as to the subpoena not being relevant is also an objection not properly raised by Defendant. Additionally, Plaintiff has reason to believe that Plaintiff's telephone and text message logs could reflect calls and messages initiated or received through an application and that the same logs would further verify the accuracy of text messages sent by Defendant to Plaintiff as well as third parties, including NK, using her true phone number. Detailed data usage logs, if available, will also be illustrative as to Defendant's use of applications to contact Plaintiff and third parties. These communications go beyond the last phone call Plaintiff had with Defendant using her true phone number and Defendant's proposed July 24, 2018 cutoff is arbitrary and irrelevant to the collection of data Plaintiff seeks.

More so, Defendant's claim that, per paragraph 48 of the Complaint, the date of the parties' last telephone conversation was July 24, 2018 and any request for information beyond that date is a fishing expedition is simply not accurate[3]. Paragraph 86 alleges that, on October 5, 2018, Defendant called in 131 times in a row. Paragraph 87 alleges that, on October 10, 2018, Defendant called him approximately 20 times. Paragraph 94 alleges that Defendant and NK exchanged numerous text messages and phone calls relating to their plan to defame and harass

---

[3] Paragraph 48 provides: On or about July 24, 2018, Ms. Sebrow sent the following response to JOHN DOE: "I know that I'm an amazing person. At least we finally agree on something! And that's why I would be amused to see who will be the next woman after me. Will be funnier than laughing-gas."

10

Plaintiff; paragraph 88 states that this plan was hatched in October 2018. Accordingly, while Plaintiff understands why Defendant selected the arbitrary July 24, 2018 cutoff date, the Complaint demonstrates why Defendant's call and text logs beyond that point are relevant.

Defendant's suggestion that she is working with phone forensic experts who "are attempting to restore and recover information" from her cellphone does not undo Plaintiff's right to subpoena a nonparty for the information. Additionally, the information which *might* be found on her phone *if* it can be restored and recovered is not the same information that is captured by Verizon and will be produced.

### H. Defendant's Request for Sanctions Must be Denied

The irony of the fact that a defendant and her attorney who continuously perjure themselves, mislead the court, and ignore all deadlines are now calling for sanctions in an untimely and improper motion should not be lost on the court. Defendant argues that Plaintiff's Verizon subpoena was done in bad faith and was made to harass or delay. According to Defendant, because Plaintiff is aware that Defendant is investigating her deleted emails, it is bad faith to seek phone records from Verizon. Defendant's not-so-mysterious missing e-mails have nothing to do with a subpoena for phone records, except perhaps to demonstrate why receiving records from a third party is so imperative to this case.

The remainder of Defendant's claims relating to other actions are nothing more than an attempt to portray a simple subpoena for call and text logs as something nefarious. However, in intentionally inserting only the first and last page of a different court's decision, it is Defendant who is acting untoward. Defendant's paragraph 22 and Document 44-5 deliberately omits the portion of the Opinion in which the court wrote that it did "not find that the Plaintiff acted

11

intentionally in bad faith" and "does not find that the employment of adverse inferences, bifurcated proceedings, preclusion of evidence, or dismissal are appropriate."

As evidenced throughout the Complaint, Defendant's preferred means of harassment and defamation was undertaken electronically.  As Defendant's cellphone provider is Verizon, the information stored by Verizon relating to Defendant's phone, text, and data logs during the relevant time period are of course relevant to the issues of this case.

As such, the Motion to Quash should be denied in its entirety.

Dated:      March 20, 2023
            New York, New York

                                         *Daniel S. Szalkiewicz, Esq.*
                                         Daniel S. Szalkiewicz, Esq.