```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

JOHN DOE,                            .
                                     .
        Plaintiff,                   .
                                     .  Case No. 21-cv-20706
vs.                                  .
                                     .  Newark, New Jersey
BAILE SEBROW,                        .  June 2, 2023
                                     .
        Defendant.                   .
                                     .


                      TRANSCRIPT OF HEARING
               BEFORE THE HONORABLE EDWARD S. KIEL
                  UNITED STATES MAGISTRATE JUDGE

This transcript has been reviewed and revised in accordance
with L. Civ. R. 52.1.

APPEARANCES (the parties appeared in person):

 For the Plaintiff:       DANIEL SZALKIEWICZ, ESQ.
                          Daniel Szalkiewicz & Associates, P.C.
                          23 West 73rd Street, Suite 102
                          New York, NY 10023
                          (212) 706-1007
                          daniel@lawdss.com

 For the Defendant:       IRA W. HELLER, ESQ.
                          Heller Morowitz & Feit PC
                          292 Madison Avenue
                          New York, NY 10017
                          (212) 685-7600
                          iwhelleresq@gmail.com



Audio Operator:

Transcription Service:    KING TRANSCRIPTION SERVICES
                          3 South Corporate Drive, Suite 203
                          Riverdale, NJ  07457
                          (973) 237-6080

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

1                    (Commencement of proceedings)

2

3             THE COURT:  We're on the record in the matter of
4    Doe versus Sebrow.  It's Case 21-cv-20706.
5             If we could have the appearance on behalf of
6    plaintiff, please.
7             MR. SZALKIEWICZ:  Daniel Szalkiewicz, Daniel
8    Szalkiewicz & Associates PC, 23 West 73rd Street, Suite 102,
9    New York, New York 10023, for the plaintiff John Doe, who is
10   to my left.
11            Good morning, Your Honor.
12            THE COURT:  Good morning. And on behalf of
13   defendant?
14            MR. HELLER:  Yes, good morning, Your Honor.  Ira
15   Heller, representing Baile Sebrow, who is present to my
16   right.
17            THE COURT:  All right.
18            Mr. Heller, we've been down this road with me
19   waiting for you here with no word from you.  And this seems
20   like an ongoing issue.  When I say something's going to start
21   at 10:00.  It starts at 10:00.
22            MR. HELLER:  Yes, Your Honor. We were here at a
23   quarter to 10 downstairs at security.  I explained to them
24   that we had a conference.  I was under the impression that
25   was actually going to Judge Farbiarz.  And they said, "Well,

```
 1  wait here, and we will make an inquiry."
 2              We waited 20 minutes downstairs until finally they
 3  said, "Well, you know, why don't you just go up.  Judge Kiel
 4  is present.  Go up to Judge Kiel's courtroom."
 5              THE COURT:  Why did you think it was before Judge
 6  Farbiarz today?
 7              MR. HELLER:  I received a notice from the court
 8  that it was being transferred to Judge Farbiarz.  I apologize
 9  if I read something wrong.  But I have it here.  I have an
10  image of it on my phone that I can show Your Honor.
11              THE COURT:  I know it was transferred to Judge
12  Farbiarz.
13              Okay.  All right.  Please be seated.
14              All right.  I had this converted to an in-person
15  conference from telephone status conference because a lot of
16  things have come up since then.  And I issued the letter
17  opinion on May 24th, 2023, and in accordance with that,
18  plaintiff filed an amended complaint.  I saw -- I believe it
19  was yesterday.
20              And so have there been some discovery --
21  supplemental discovery that's been issued to the defendant?
22              MR. SZALKIEWICZ:  We intend to issue that today,
23  Your Honor.  And, obviously, after addressing today's
24  conference, there's been some concern because the discovery
25  demands themselves initially were not fully responded to.  So
```

1   we wanted guidance on whether we should reissue demands
2   with -- more specific demands or whether or not just to do
3   them --
4            THE COURT:  Well, I thought that the additional
5   discovery was going to be related to e-discovery and the
6   issue with the disputed email.  And we're not going to have a
7   wholesale redoing of discovery at this point.
8            MR. SZALKIEWICZ:  That's fine, Your Honor.
9            All we're looking for is the e-discovery and
10  emails.  The problem becomes that the defendant has not
11  identified what devices she has and they have not engaged in
12  any sort of conversation whatsoever.  So it's very difficult
13  to do any sort of ESI discovery at this point.
14           THE COURT:  It was my understanding that some kind
15  of device was handed over or no?
16           MR. SZALKIEWICZ:  Not to us, Your Honor.
17           Apparently, Ms. Sebrow's represented since
18  December, I believe, that she's retained her own expert.
19           THE COURT:  Okay.  Well, let's take care of this.
20           What devices does she communicate with?
21           MR. HELLER:  Your Honor, this is a device that
22  would have the texts that were presented to the Court by
23  Mr. Szalkiewicz.
24           THE COURT:  Which devices?
25           MR. HELLER:  And --

1      THE COURT:  Which device is that?

2      MR. HELLER:  It's an iPhone which was not
3 functioning.  He sent it to a forensic expert in California
4 to try and extract the information.  Thus far, that's been
5 unsuccessful.  I spoke to the expert yesterday.

6      THE COURT:  Where is the phone now?

7      MR. HELLER:  It's right now still in the hands of
8 the expert in California.

9      THE COURT:  You're going to get it back from him,
10 and you're going to hand it over to plaintiff's counsel.
11 He -- and he's going to do what he needs to do to extract the
12 information.  And you provide whatever codes are necessary to
13 access that phone.  Okay?

14      MR. HELLER:  Okay.  Well, Your Honor, will we have
15 access to the person who is extracting the information so it
16 will not be done out of our view?

17      THE COURT:  Well, it's being done out of his view.

18      MR. HELLER:  Okay.  So there's going to be a third
19 party.

20      THE COURT:  Well, I don't know.  I'm -- I'm sure
21 plaintiff's counsel has people that can extract that
22 information.  I presume you're going to find somebody that
23 can do that.

24      Right, sir?

25      MR. SZALKIEWICZ:  We've hired an expert to extract

1   my client's information.  We'll use the same company.

2            THE COURT:  So it's going to be an independent

3   third party who's going to -- you are going to get whatever

4   information is extracted from there.

5            MR. HELLER:  Request that it be done on consent,

6   though.

7            THE COURT:  It's not done on consent.  It's done by

8   the order of the Court, sir.

9            MR. HELLER:  On consent as to who the forensic

10  expert is.

11           THE COURT:  No.  No.  He's going to choose who the

12  forensic expert is going to be, and that forensic expert is

13  going to give you whatever report is generated and all

14  information that's -- that is extracted from that device.

15           MR. HELLER:  Well, Your Honor, I don't mean to be

16  argumentative.

17           But if I do not know this expert and this --

18           THE COURT:  He's going to tell you who the expert

19  is.

20           MR. HELLER:  -- and if I decide that this expert is

21  not acceptable, I have the right to ask that it be a mutually

22  agreeable expert?

23           THE COURT:  You write me a letter and tell me that

24  that expert is not acceptable.

25           But since this case has been going on for how many

```
 1  months now, you've had your expert to try to do this.
 2           Did you tell Mr. Stanislau [sic] who your expert
 3  is?
 4           MR. HELLER:  Yes, I did.
 5           THE COURT:  Okay.  And did you provide the name and
 6  how he's doing all of that?
 7           MR. HELLER:  I absolutely provided it.
 8           THE COURT:  Okay.
 9           MR. HELLER:  I provided it when he deposed us --
10  what was the date -- I don't remember the date.
11           THE COURT:  All right.  Well, obviously, it's not
12  working.  So he's going to get an opportunity to do it.
13           MR. SZALKIEWICZ:  Your Honor, respectfully, we were
14  made aware of the company.  Apparently that was not in
15  California, but I believe it was located in Baltimore.
16           THE COURT:  Well, we can get past --
17      (Simultaneous conversation)
18           THE COURT:  Hold on.  We can get past all this.  I
19  don't want to hear argument on it.  We're going to resolve
20  it.
21           If you can't do it, if your expert can't do it,
22  then we're going to give an opportunity to plaintiff's expert
23  to do it.  Okay?
24           Get that device over to him within the next two
25  weeks.
```

1          What's two weeks from today?  Let me see.

2          16th.

3          Any other devices she used to communicate with
4  regard to the allegation?

5          Mr. Heller?

6          MR. HELLER:  Not to my knowledge.

7          MR. SZALKIEWICZ:  Your Honor --

8          THE COURT:  Okay.  That's the representation that's
9  being made by your client right now?  That she has no other
10 devices she sent emails, texts or anything?

11         MR. HELLER:  Oh, so you're asking about anything
12 that went out as far as communications?  I presume she has a
13 computer.

14         THE COURT:  Where is that computer?

15         MR. HELLER:  In her home, I would presume.  I'm --
16 I don't know where she keeps her computer.

17         THE COURT:  Well, before at the last conference, we
18 talked about this case being all about ESI; right?

19         And what have you done since then to extract
20 whatever information that she has from her computer or from
21 her phone?

22         MR. HELLER:  I can get you a report from my
23 forensic expert in terms of the efforts that he's made to try
24 and extract the information, Your Honor.

25         THE COURT:  Let's talk about the computer.  What

1  have you done with the computer?  Nothing?

2          MR. HELLER:  No, I haven't.

3          THE COURT:  Okay.  You're going to provide access

4  to plaintiff's counsel and his expert of that computer.

5  They're going to take a mirror image of it, and they're going

6  to try to extract whatever information is necessary.

7          All right?  You do that within the next two weeks

8  as well.  You guys coordinate with each other.  Counsel

9  coordinate with each other to provide access to her computer

10 by June 16th, to make mirror image of it.  And then you can

11 extract whatever information there is from it.

12         All right.  What else, sir?

13         MR. HELLER:  Who is going to have access to this

14 information, Judge?

15         THE COURT:  The expert's going to have it.

16         Listen, Mr. Heller, if there is no discovery that's

17 going from you over to plaintiff, then it has to be ordered.

18 This case has been going on and on, long enough.  We had a

19 discovery schedule.  I told you at the last conference that

20 this case is all about ESI.  And I said, "Confer in good

21 faith with each other to figure out how to get the ESI."

22         If you're not going to confer in good faith, then

23 I'm just going to order it.

24         What else am I supposed to do, sir?  Just let this

25 case linger and go at your pace?

```
 1              MR. HELLER:  No, Your Honor.  And I made it clear
 2  that we are in a case in New Jersey that is --
 3              THE COURT:  I don't care about the case in New
 4  Jersey.  I told you I don't care about the case in New
 5  Jersey.
 6              What does that have to do with this case and what
 7  the discovery schedule is in this case?
 8              Did you confer in good -- did you try to confer in
 9  good faith with plaintiff's counsel on the ESI protocol?
10              I ordered you to do that.
11              Did you?
12              MR. HELLER:  Yes, there is an issue that it
13  requires a $2,000 payment which my client doesn't have.
14              THE COURT:  What did you do in your good-faith
15  effort to confer with plaintiff's counsel on an ESI protocol?
16              MR. HELLER:  I communicated to him that my client
17  does not have $2,000 to pay for ESI discovery.
18              THE COURT:  That's your entire conversation with
19  him?  That's your good-faith effort to try to get ESI
20  discovery?
21              Well, that's why that have I to order these things.
22  That's why I have to order the phone to be turned over,
23  provide access to her computer to make a mirror image, and
24  we'll go from there.
25              Right?  What other relief can I provide?  If your
```

1  client doesn't have the money, then the plaintiff's going to
2  spend the money to extract the information.  Okay?  All
3  right.
4              What other device?  Is that the only two devices?
5              MR. HELLER:  I'm sorry?
6              THE COURT:  Is that -- are those the only two
7  devices?
8              I want your client to make the representation on
9  the record today of all the devices that she uses to
10 communicate, emails, text messages, and those things that are
11 related in this case.
12             That's it?  Those two?
13             MR. HELLER:  Those are the two.
14             THE COURT:  Okay.  Good.  We have that
15 representation on the record.
16             MR. SZALKIEWICZ:  Respectfully, Your Honor, we'd
17 like have to access to the iCloud account.  She uses an Apple
18 phone.  There's going to be an iPod account.  Additionally,
19 her current device, because she claims that she has messages
20 on all devices, doesn't mean that, obviously, transfer
21 messages on --
22             THE COURT:  Well, obviously, the iPhone has an
23 iCloud account, and you can try to get that and provide the
24 information.  She should provide whatever access codes to
25 whatever devices that she has.

1  MR. SZALKIEWICZ: Okay. I just want to make sure
2  that we are not talking about one broken phone, that as long
3  as defendant counsel understands that we are looking for the
4  current device and the access to the iCloud account as well.
5  THE COURT: Well, it sounds like that she's -- does
6  she have an active phone now?
7  MR. HELLER: Yes, Your Honor.
8  THE COURT: When did he get that phone?
9  MS. SEBROW: My phone? Sorry. What's the
10 question?
11 MR. HELLER: I believe it's a Verizon phone.
12 THE COURT: When did she get that new phone?
13 MS. SEBROW: When did I get it?
14 THE COURT: When?
15 MS. SEBROW: When did I get this phone? 2019.
16 THE COURT: Okay. Well, is 2019 the period of time
17 that these communications are alleged to have happened?
18 UNIDENTIFIED SPEAKER: No.
19 MR. SZALKIEWICZ: That's correct. It's 2018,
20 Your Honor, through 2021.
21 THE COURT: Okay. So how come you're not trying to
22 get the information extracted from this phone, Mr. Heller?
23 MR. HELLER: The information from the current
24 phone --
25 THE COURT: Yes.

1          MR. HELLER:  -- or the phone that's broken?

2          THE COURT:  The current phone.

3          MR. HELLER:  All right.  And please repeat the
4  question, Judge.

5          THE COURT:  Why have you not made any efforts to
6  extract any information from the phone that she currently
7  has?

8          You drop your hands like, "I don't know"?

9          MR. HELLER:  No, it's not I don't know, Your Honor.
10 And I will tell you that this is an effort basically to strip
11 my client of all of her privacy before this issue, which was
12 started by the plaintiff in New Jersey, is adjudicated
13 because what he's basically doing is using this case to gain
14 advantage in order to be able to have information that he's
15 not entitled to use it against her somehow and to persecute
16 her, contact all of her clients, contact everybody in order
17 to make her life miserable.

18         That's my statement, Your Honor.

19         THE COURT:  Well, that statement is taken under
20 consideration.

21         But we're well past that.  There's a lot of water
22 under the bridge.

23         You had every opportunity, sir -- I gave you every
24 opportunity to confer with plaintiff's counsel and do an ESI
25 protocol.

1                Do you know what an ESI protocol means, sir?  That
2   means you get an opportunity to protect the privacy of your
3   communications with your client.
4                You contact plaintiff's counsel.  Plaintiff's
5   counsel contacts you.  You guys get together.  And you
6   determine what search terms are going to be used, what
7   information is going to be extracted.
8                If you're not going to do that, again, I'm going to
9   do it for you.  And I'm going to order what I just ordered.
10  Right?  That's what an ESI protocol does.  That protects your
11  client.
12               And you did nothing about it until today.  Just
13  standing up and arguing that there's privacy concerns.
14               That's a lot of water under the bridge, sir; right?
15  Right?
16               You -- I'm going to explain to you again.  You had
17  every opportunity to protect your client's privacy that
18  you're talking about.  You never took that opportunity, even
19  though I ordered you to do it.
20               So we're left with no choice but to give the
21  plaintiff the opportunity to do it themselves without an ESI
22  protocol.  Right?
23               Okay.
24               MS. SEBROW:  May I address the Court?
25               THE COURT:  All right.  So other than -- oh, so as

1  to the new phone or present phone, that also should be given
2  access to within the next two weeks.
3              MR. SZALKIEWICZ:  Your Honor, I can probably have
4  an expert at her place of residence so she doesn't need to
5  part with the devices for an extended period of time.
6              THE COURT:  Yeah, I'm just telling her to give you
7  access to it.
8              MR. SZALKIEWICZ:  I understand.
9              THE COURT:  Whereas the broken phone is going to be
10 given to you.
11             MR. SZALKIEWICZ:  Understand, Your Honor.
12             THE COURT:  Okay.  And also with the computer.
13 Just given access within the next two weeks.  Counsel are
14 going to confer when they're going to go over and extract the
15 information from there.
16             All right.
17             So those are the three devices that Ms. Sebrow is
18 tell me -- representing to the Court that she has.
19             All right.
20             Anything further?
21             MR. SZALKIEWICZ:  We'd just like -- Ms. Sebrow's
22 deposition never concluded.  We'd just like to continue her
23 deposition.
24             THE COURT:  Well, I think the deposition's going to
25 have to be rescheduled or continued after you received the

```
 1  new information.
 2          MR. SZALKIEWICZ:  We just want to reserve the
 3  rights, Your Honor.
 4          THE COURT:  Okay.  Okay.  You'll be able to take
 5  her deposition further on that.
 6          MR. SZALKIEWICZ:  Thank you.
 7          THE COURT:  All right.
 8          Mr. Heller?
 9          MR. HELLER:  Yes, Judge.
10          THE COURT:  Anything further?
11          MR. HELLER:  No.
12          THE COURT:  All right.  Very good.
13          Is there anything on the letter order that needs to
14  be discussed today?  I know there was an issue about a $2,000
15  paying or something.
16          What is that about?
17          MR. SZALKIEWICZ:  I never heard from Mr. Heller
18  about $2,000.  They were directed to pay Mr. Fell's
19  attorney's fees.  And by May 31st, we have not even received
20  a communication from them concerning --
21          THE COURT:  Mr. Heller, I'm going to tell you,
22  comply with that order.  You are jointly and severally liable
23  for it.  So please communicate with plaintiff's counsel
24  before they make a further application for sanctions.  Okay?
25          Mr. Heller, okay?
```

```
 1              MR. HELLER:  Yes, Judge.
 2              THE COURT:  Okay.  Thank you.
 3              We're off the record.
 4       (Pause in proceedings)
 5              THE COURT:  I'm going to put another conference on.
 6  And I put a June 30th fact discovery end date.  It's going to
 7  be a little tight.  I don't think you're going to make it.
 8              And so I'm going to talk about further scheduling
 9  of fact discovery at the next conference.  We'll do that in
10  30 days or so in person.
11              I do want to talk to counsel.  I've got a call at
12  10:30, which will be relatively short.  And then I'll talk to
13  counsel in chambers.
14              My calendar's not coming up.  I'm just going to go
15  back to chambers and take this quick call.  And I'll be back.
16                   (Conclusion of proceedings)
17
18
19
20
21
22
23
24
25
```

## Certification

I, SARA L. KERN, Transcriptionist, do hereby certify that the 18 pages contained herein constitute a full, true, and accurate transcript from the official electronic recording of the proceedings had in the above-entitled matter; that research was performed on the spelling of proper names and utilizing the information provided, but that in many cases the spellings were educated guesses; that the transcript was prepared by me or under my direction and was done to the best of my skill and ability.

I further certify that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

s/ *Sara L. Kern*      19th of June, 2023
_____   _____
Signature of Approved Transcriber            Date

Sara L. Kern, CET**D-338
King Transcription Services
3 South Corporate Drive, Suite 203
Riverdale, NJ  07457
(973) 237-6080