## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JOHN DOE,** | **CASE NUMBER:** |
|  | **2:21−CV−20706−SDW−ESK** |
| **Plaintiff,** |  |
|  | **Jury Trial:** *(check one)*    √ Yes  No |
| **v.** |  |
|  |  |
| **BAILA SEBROW** |  |
|  | **AMENDED ANSWER AND** |
| **Defendant.** | **COUNTERCLAIM** |

## DEFENDANT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIMS

**NOW COMES** Defendant improperly identified, as Baila Sebrow in several documents filed with this Court and Baile Sebrow in several documents filed with this Court, by and through her attorney, for her Answer to the Amended Complaint filed by "John Doe" with this Court on June 1, 2023, (the "Complaint"), responds thereto as follows:

1.       Defendant denies the allegation of paragraph 1, 4, 5, 6, 7, 8, 9, 10, 17, 21,  25-49, 51, 52-85, 87, 89-93, 95-99, 101-125, 140-144,  146-152,  155-162,  164-184,  193, 194, 195, 196,  199, 201, 202, 203,  207, 208, 210, 212-214,  216-224, 226-234 in the Complaint

2.       Defendant lacks sufficient knowledge to admit or deny the allegation of paragraph 11, 13, 14, 18, 19, 20, 23, 24, 50, 86, 88, 94, 100, 126-139, 145, 153, 154, 163, 185, 197, 198, 200, 204-206, 209, 211, 215 in the Complaint and demands strict proof therein.

3.       Defendant admits to the allegation of paragraph 12, 16, 22 in the Complaint.

4.       Defendant neither admits nor denies the allegation of paragraph 2, 3, 15, 186-192, 225 in the Complaint.

1

As and for her affirmative defenses, the Defendant asserts and states as follows:

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

5.      The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Unclean Hands)

6.      Each of the alleged causes of action contained in the Complaint is barred by the

equitable doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE
### (Collateral Estoppel)

7.      Plaintiff is estopped from asserting any of the alleged rights, claims and/or the

reliefs it seeks against Defendant as the same is barred by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE
### (Actions of Third Parties)

8.      Plaintiff is barred from asserting any of the alleged rights, claims and/or the

reliefs it seeks against Defendant as they are actions of third parties.

## FIFTH AFFIRMATIVE DEFENSE
### (Lack of Damages)

9.      Plaintiff has not suffered any damages as a result of any of the purported actions

taken by Defendant, and is barred from asserting any cause of action against Defendant.

## SIXTH AFFIRMATIVE DEFENSE
### (Failure to State the Name of a Party)

10.      Plaintiff's Complaint is barred in its entirety as it violates Federal Rule of Civil

Procedure 10(a) by failing to state the name of the Plaintiff.

## SEVENTH AFFIRMATIVE DEFENSE
### (Lack of Subject Matter Jurisdiction)

11.     Plaintiff's Complaint is barred in its entirety as it violates the requirements of 28 USC 1331 and Article III of the Constitution. Plaintiff's causes of action do not arise out of a Federal question, and therefore, the Court lacks subject matter jurisdiction.

## EIGHTH AFFIRMATIVE DEFENSE
### (Lack of Personal Jurisdiction)

12.     Plaintiff's Complaint is barred in its entirety as Defendant was never properly served, and therefore, the Court lacks personal jurisdiction.

## NINTH AFFIRMATIVE DEFENSE
### (Laches)

13.     Plaintiff's Complaint is barred in its entirety under the equitable doctrine of Laches.

## TENTH AFFIRMATIVE DEFENSE
### (Res Judicata)

14.     Plaintiff is precluded from asserting any of the alleged rights, claims, causes of action and/or the reliefs it seeks against Defendant as the same is barred by the principle of Res Judicata.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Improper Purpose)

15.     Plaintiff's Complaint is barred in its entirety under Federal Rule of Civil Procedure 11.

### Additional Defenses and Right to Amend Reserved

Defendant hereby gives notice that she may rely on other defenses if and when such defenses

become known during the course of litigation, and hereby reserves the right to amend her answer

to assert any other defenses as they become known or available.

## FACTUAL ALLEGATIONS COMMON TO COUNTERCLAIMS

The Defendant is a singles event organizer, matchmaker and columnist, residing in Long

Island New York. In June of 2017, the Defendant was widowed from her husband of 30 years.

Very shortly thereafter (and even beforehand, during Defendant's husband's protracted illness),

the Plaintiff began pursuing a relationship with the Defendant. The Defendant, diplomatically but

categorically, made it clear to the Plaintiff that she was not interested in having a relationship

with him. Nevertheless, the Plaintiff approached the Defendant with a "proposal," in which he

would create a "scholarship fund" for older single women to attend single's events if they could

not afford it. Plaintiff proposed to the Defendant that if she was not interested in a dating

relationship, that they could at least work together to provide something worthwhile for the

community. Plaintiff proposed that they meet and discuss his "business" proposal, and set a date

to meet on December 23, 2017, at the Carlyle Hotel, located at 35 E 76th St in Manhattan. It was

a Saturday night, and the Defendant traveled in an Uber from her home in Long Island to meet

the Plaintiff. The Defendant called the Plaintiff from the Uber to let him know that there was

traffic and she would be delayed. The Plaintiff asked her what she wanted to drink, and

Defendant told him to order a diet coke, which was waiting for her when she arrived. When

Defendant arrived at the Hotel, Plaintiff handed her the drink, and told her to "drink slowly."

Shortly after, Defendant describes her feeling her head become heavy, her vision blurred, and the

room began to spin. The next thing Defendant remembers is waking up in the back of Plaintiff's

car naked, with her legs spread apart, with semen dripping down her leg and other parts of her

body. She then heard Plaintiff's voice telling her to "get dressed."  The next time the Defendant

heard from the Plaintiff, she was organizing another singles' event, in which the Plaintiff emailed the Defendant expressing interest in attending. The Plaintiff attended the event, and at the event, approached the Defendant and said "I want to show you something." The Plaintiff then pulled a packet of pictures out of his pocket, which depicted the Defendant naked, in various positions and all possible angles. At that time the Plaintiff said to the Defendant "I want you to blow me, if you refuse, I will show these pictures to everyone."

Until approximately September of 2018, the Plaintiff utilized those photographs to coerce the Defendant into an abusive, sexual relationship. During this time, Plaintiff also made declarations to her in Hebrew, leading her to believe that she was married to him by Jewish Law, therefore requiring a Jewish religious divorce. This abusive relationship continued until approximately October of 2018, when she was last in contact with Plaintiff. Subsequently, the Defendant made no attempts at any contact with the Plaintiff. After the end of the relationship Plaintiff began an intentional campaign to ruin her personal and professional reputation by spreading false statements about her. The Defendant does not know how many people the Plaintiff contacted in this effort, but she knows about several people who approached her, informing her of the fact that the Plaintiff approached them and tried to dissuade them from working with the Defendant.

After the Defendant thought the Plaintiff had long disappeared from her life, almost three years since their last contact, the Defendant was shocked when she was served with a Temporary Restraining Order, filed by Plaintiff on July 15, 2021. In the allegations, the Plaintiff accused the Defendant of making posts on Twitter and other internet sites stating "John Doe, Date Rapist," and other similar postings.

5

Shortly thereafter, the Defendant was served with a warrant for her arrest, issued by the West Orange, NJ Municipal Court, stating that she was being charged with contempt for violating the Temporary Restraining Order filed by the Plaintiff. Annexed to the Complaint was a copy of an email twitter notice from the address info@twitter.com, advertising one of the Defendant's singles events. In fact, the email notice to Plaintiff was a Twitter Notice that automatically went out to the Defendant's followers, provided they specifically elected to receive them. In other words, Plaintiff would have had to sign up to receive those emails, and the email was not initiated by the Defendant, but by Plaintiff himself.

Realizing that she was under attack from the Defendant then filed a Cross Temporary Restraining Order against Plaintiff, alleging criminal coercion, sexual assault, criminal sexual contact, and harassment. Counsel then contacted the Essex County Prosecutor's office regarding the arrest warrant, who then investigated the matter and summarily dismissed it. The hearings on the dual TRO filings are currently pending in the Domestic Violence Division of the Essex County Family Court.

### FIRST COUNT
### (False Light)

Since January of 2019, the Plaintiff has intentionally made false statements about the Defendant to third parties designed to ruin her personal character and professional reputation. Plaintiff contacted numerous of Defendant's friends and acquaintances; members of her community; clients, professional associates, professional employers, program organizers, advertisers, promoters and told them that she committed despicable immoral acts (sexual and otherwise). Plaintiff told people that she was crazy, showed them vulgar and outlandish text messages which he alleged to be from Defendant to Plaintiff, citing this as evidence of behavior unbecoming an Orthodox Jewish women and professional Jewish matchmaker. Amongst the

multiple malicious acts purposely committed by Plaintiff, in January of 2019 Plaintiff contacted an event's program organizer, at which Defendant was scheduled to appear, told the organizer not to hire her for the President's Day weekend program, telling them highly offensive false tales about her to impugn her character and cast her professional ability in a false light so as to convince the organizer to never use Defendant for any of their events again.

In January of 2019, Defendant was hired to promote and participate in a singles program. Plaintiff personally drove to Boro Park, New York to meet with the organizer and asked him not to hire her. Plaintiff told him his false tales about the Defendant and showed him filthy text messages purportedly crafted by the Defendant, as alleged evidence in support of his claims. A month later, Plaintiff contacted the organizer of a Passover program, at which Defendant was scheduled to appear, and again spun his false tales about the Defendant in order to cast her character and professional ability in a false light, to dissuade him from hiring her for that and future programs.

On other various dates and times over the next two years, Plaintiff did systematically follow Defendant's professional appearances and did the same, frequently leading to Defendant being dropped from events and/or programs due to his illicit actions. The Plaintiff knew the statement were false when making them. The Plaintiff intended for the third parties to rely on the false statements. The Defendant/Counterclaimant suffered damages due to its reliance on the Plaintiff's false statements.

Since January of 2019, the Plaintiff has intentionally made false statements about the Defendant to Defendant's friends designed to malign her character and professional reputation. These third parties, as a result of Plaintiff's false statements, no longer wanted to associate with Defendant. These third parties, upon Plaintiff's instructions, did then tell others in Defendant's

worldwide community these tales, again causing many of her friends and community members to disassociate themselves from her. The Plaintiff knew the statement were false when making them. The Plaintiff intended for the third parties to rely on the false statements. The Defendant/Counterclaimant suffered damages due to its reliance on the Plaintiff's false statements.

Since January 2019, Plaintiff has been on a campaign to ruin the Defendant's personal reputation and professional career. Upon information and belief, Plaintiff and hired a publicist to purposely spread false statements and cast false light upon Defendant's character and professional fitness. Plaintiff directed his counsel to hire a publicist to ruin her good name and standing as a professional matchmaker, speaker, columnist and author by spreading the Plaintiff's false statements. The Plaintiff knew the statement were false when making them. The Plaintiff intended for the third parties to rely on the false statements. The Defendant/Counterclaimant suffered damages due to its reliance on the Plaintiff's false statements.

**SECOND COUNT**
**(Sexual abuse and Sexual Assault)**

On or about December 23, 2017, the Plaintiff in this matter, asked the Defendant to meet him a New York City hotel to discuss a potential "business proposition," in which he would create a fund to assist older Jewish singles to attend singles events, if they did not have the financial ability to do so. When Defendant arrived at the Hotel, Plaintiff handed her a drink, and told her to "drink slowly." Shortly after, Defendant describes her feeling her head become heavy, her vision blurred, and the room began to spin. The next thing Defendant remembers is waking up in the back of Plaintiff's car naked, with her legs spread apart, with semen dripping down her leg and other parts of her body. She then heard Plaintiff's voice telling her to "get dressed."  The

next time the Defendant heard from the Plaintiff, she was involved in organizing another singles'

event. Plaintiff emailed the Defendant expressing interest in attending. The Plaintiff attended the

event, and at the event, approached the Defendant and said "I want to show you something." The

Plaintiff then pulled a packet of pictures out of his pocket, which depicted the Defendant naked,

in various positions and all possible angles. At that time the Plaintiff said to the Defendant "I

want you to blow me, if you refuse, I will show these pictures to everyone." Until approximately

September of 2018, the Plaintiff utilized those photographs to coerce the Defendant into an

abusive, sexual relationship. During this time, Plaintiff also made declarations to her in Hebrew,

leading her to believe that she was married to him by Jewish Law, therefore requiring a Jewish

religious divorce. This abusive relationship continued until approximately October of 2018, The

Plaintiff inflicted severe emotional, mental and physical harm upon Defendant/Counterclaimant

who suffered damages due to Plaintiff's actions.

       **WHEREFORE**, Defendant/Counterclaimant respectfully requests that this

Court enter judgment in its favor for the sum of ten million dollars ($10,000,000), dismiss

Plaintiff's Complaint with prejudice, award Defendant/Counterclaimant its costs (including

reasonable attorney fees and disbursements with interest), and grant

Defendant/Counterclaimant such other relief as the law, equity, and justice require.

Date: September 18, 2023

                    IRA HELLER LAW, LLC

                    By: _____
                        Ira W. Heller, Esq.