UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

John Doe.

               Plaintiff,

     v.

Baila Sebrow

               Defendant.

Case No. 2:21-cv-20706

BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO
FILE AN UNTIMELY ANSWER AND AMENDED COUNTERCLAIMS

Daniel Szalkiewicz, Esq.
Daniel Szalkiewicz & Associates, PC
23 West 73rd Street, Suite 102
New York, NY 10023
(212) 706-1007
daniel@lawdss.com
*Attorneys for Plaintiff*

1

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 5

FACTUAL BACKGROUND ................................................................................... 6

ARGUMENT

I.     DEFENDANT'S REQUEST FOR AN EXTENSION OF TIME SHOULD BE DENIED ... 7

   a.   Introduction ................................................................................................ 7

   b.   Legal Standard ........................................................................................... 8

   c.   Defendant's Reasons for Untimely Filing ..................................................... 9

   d.   There is No Good Cause for the Extension .................................................. 9

   e.   Defendant's Neglect is Not Excusable ....................................................... 10

   f.   There is an Enormous Danger of Prejudice ............................................... 12

   g.   Defendant's New Claims Will Require Reopening Discovery and Delay Proceedings... 13

   h.   Defendant is Not Acting in Good Faith ...................................................... 14

II.    DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS SHOULD BE
DISMISSED AS IT FAILS TO STATE A CAUSE OF ACTION ............................................ 14

   a.   Legal Standard ........................................................................................ 14

   b.   Defendant's False Light Cause of Action Should be Dismissed ..................... 15

      i.    Defendant's False Light Claim Should be Dismissed as Conclusory.......................... 16

      ii.   Defendant's False Light Claim Should be Dismissed as Facts Indicate Plaintiff's Belief
in Allegations ............................................................................................... 18

      iii.  Defendant's False Light Claim Should be Dismissed as Past the Statute of Limitations
19

      iv.   Defendant Fails to Allege this is a Misrepresentation of her Character, History,
Activities, or Beliefs nor that the Statements Were Highly Offensive to a Reasonable Person
20

   c.   Defendant's "Sexual Abuse and Sexual Assault" Cause of Action Should be Dismissed 20

      i.    Defendant has Failed to State a Cause of Action for Sexual Abuse ............................ 21

      ii.   Defendant Has Failed to State a Cause of Action for Sexual Assault ......................... 21

**TABLE OF AUTHORITIES**

**Cases**

Adams v. Trs. of the N.J. Brewery Employees' Pension Tr. Fund, 29 F.3d 863, 874 (3d Cir. 1994) .................................................................................................................... 13

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)................................................................... 14

Benecard Servs. v. Allied World Specialty Ins. Co., Civil Action No. 15-8593 (MAS) (TJB), 2020 U.S. Dist. LEXIS 94806, at *38 (D.N.J. May 31, 2020) .................................. 16

Botts v. N.Y. Times Co., No. 03-1582 (MLC), 2003 U.S. Dist. LEXIS 23785, at *17 (D.N.J. Aug. 29, 2003) .................................................................................................... 20

Callaremi Lincoln-Mercury, Inc. v. Picon Auto Grp., LLC, No. 17-cv-6819 (KSH) (CLW), 2018 U.S. Dist. LEXIS 184925, at *17 (D.N.J. Oct. 29, 2018)........................................... 17

Gumbs-Heyliger v. CMW & Assocs. Corp., No. 2012-0078, 2017 U.S. Dist. LEXIS 49049, at *6 (D.V.I. Mar. 31, 2017) ............................................................................................ 11

Joseph v. Hess Oil V.I. Corp., 651 F.3d 348, 356 (3d Cir. 2011).......................... 10, 12

Kotok Bldg. v. Charvine Co., 183 N.J. Super. 101, 105 (Super. Ct. 1981)................................ 18

Mangan v. Corp. Synergies Grp., Inc., 834 F. Supp. 2d 199, 204 (D.N.J. 2011)........................ 17

Merrill v. State Farm Fire & Cas. Co., Civil Action No. 12-1328, 2013 U.S. Dist. LEXIS 19660, at *13 (W.D. Pa. Feb. 13, 2013) ............................................................................... 22

Monge v. Univ. of Pa., No. 22-2942, 2023 U.S. Dist. LEXIS 88270, at *49 (E.D. Pa. May 18, 2023) .................................................................................................................... 19

Morrissey v WTVR, LLC, 432 F Supp 3d 617, 623 (ED Va 2020)............................................ 15

Novartis Pharm. Corp. v. Bausch & Lomb, Inc., Civil Action No. 07-5945 (JAG), 2008 U.S. Dist. LEXIS 92133, at *19 n.8 (D.N.J. Nov. 12, 2008)............................................ 18

Nype v. Sam, Civil Action No. 20-13680 (MAS), 2022 U.S. Dist. LEXIS 225051, at *9 (D.N.J. Dec. 14, 2022)....................................................................................................... 8

Oldham v. Pa. State Univ., No. 4:20-CV-02364, 2022 U.S. Dist. LEXIS 87272, at *50 (M.D. Pa. May 13, 2022)....................................................................................................... 17

<u>Perry v. Lee,</u> Civil Action No. 19-17899 (FLW) (TJB), 2020 U.S. Dist. LEXIS 107631, at *29 (D.N.J. June 19, 2020) ........................................................................................................... 16

<u>Ramos v. Quien,</u> 631 F. Supp. 2d 601, 609 (E.D. Pa. 2008) ......................................................... 8

<u>Read v. Profeta,</u> 397 F. Supp. 3d 597, 651 (D.N.J. 2019) ............................................................ 19

<u>Schott v State,</u> A-2612-04T1, 2006 WL 1911375, at *4 (NJ Super Ct App Div July 13, 2006) . 15

<u>State v. Gallagher,</u> 286 N.J. Super. 1, 13 (App. Div. 1995) ......................................................... 22

**<u>Statutes</u>**
F.R.C.P. 6(b)(1)(B) ........................................................................................................................ 8

N.J.S.A. § 2A:61B-1 (LexisNexis, Lexis Advance through New Jersey 220th Second Annual Session, L. 2023, c. 96 and J.R. 11)........................................................................................... 21

NJ Rev Stat § 2A:61B-1 .............................................................................................................. 22

NJ Rev Stat §2C:14-2 .................................................................................................................. 21

Plaintiff-Counter-Defendant John Doe ("Plaintiff"), by his attorneys, Daniel Szalkiewicz & Associates, P.C., respectfully submits this Memorandum of Law in Opposition to the proposed Amended Counterclaims ("Amended Counterclaims") of defendant Baila Sebrow ("Defendant" or "Sebrow") pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and in opposition to Defendant's request for an extension of time to file an amended answer and counterclaims pursuant to FRCP 6(b)(1)(B) and L. Civ. R. 6.1(b).

## **PRELIMINARY STATEMENT**

Defendant Sebrow's latest filings come after many others before it which ask this Court and Plaintiff to ignore fact and law.  Defendant's first counterclaims for fraudulent misrepresentation and defamation were dismissed by this Court on March 22, 2023[1] (Doc. 47).  Notably, the Order provided that Defendant had 30 days to amend the counterclaims; she did not.

On July 7, 2023, Defendant filed amended counterclaims, again for fraudulent misrepresentation, defamation, and abuse of process.  The filing contained Plaintiff's name and identifying information, in contravention of an earlier court order which Defendant had previously violated (D.E. 74).  The document was stricken, with the Court further indicating it was untimely (DE 76).

Now, more than two months later, Defendant has filed all new counterclaims, months after fact discovery was deemed to be complete (Doc. 48) and somehow wants this Court to believe Plaintiff is not prejudiced.  As egregiously, Defendant's new allegations and causes of action – while different from her first – are more of the inflammatory, unsupported, self-serving, and conclusory allegations which have already been dismissed.  Accordingly, and as further discussed below, even if this court is inclined to grant Defendant's motion to extend the period

---

[1] Defendant's abuse of process claim survived motion to dismiss but she has since abandoned it.

of time to file her answer, the counterclaims should still be dismissed as being conclusory and failing to state a cause of action upon which relief can be granted.

## **FACTUAL BACKGROUND**

This Court is respectfully referred to Plaintiff's earlier Motion to Dismiss for a fuller recitation of the facts at play in this case (Doc. 15).  However, briefly, Defendant's relentless communications make clear: Plaintiff and Defendant were once romantically involved and, when Plaintiff broke it off, Defendant began to unravel.  Vacillating between deranged and sentimental, Defendant was willing to say just about anything to get Plaintiff's attention.  Her antics involved threatening to send her rape allegations to Plaintiff's employer, actually sending such allegations, harassing Plaintiff and his family using an anonymous phone number; causing the creation of multiple social media profiles and a website falsely broadcasting that Plaintiff was under investigation for raping hundreds of women, and initiating hundreds of unwanted phone calls to Plaintiff.  Inevitably, once Defendant got the reactions she sought, her messages turned to apologies and professions of her love for Plaintiff.  This went on for months and would likely still be occurring if not for Plaintiff receiving a Temporary Restraining Order against her on July 15, 2021 which is still in effect.

Plaintiff's initial Motion to Dismiss contained messages from Defendant in which she confirmed her rape allegations were false.  It also contained messages contradicting Defendant's bizarre claim that she and Plaintiff are married, including Defendant proposing potential romantic partners for Plaintiff, demonstrating the concept is just another way to tie herself to an unwilling Plaintiff to justify further communications.  Finally, the Motion to Dismiss contained text message after text message of Defendant using vile, sexually charged language to demean

and harass Plaintiff, his family, and women she speculated he was dating.  Though not always identified by Defendant by name, her messages relentlessly attacked the women Plaintiff was now "banging[,]" "sticking [his] fingers in[,]" or "fucking" with claims the women were "trash bag[s,]" "spic[s]" "charity case[s,]" "sex pig[s]" and "seminal deposits."

## **ARGUMENT**

### I.   **DEFENDANT'S REQUEST FOR AN EXTENSION OF TIME SHOULD BE DENIED**

#### a.  **Introduction**

Initially, Defendant would lead this court to believe that this latest filing is a "refiling" of Defendant's counterclaims which had been stricken for including Plaintiff's name and being untimely and "there is no prospect of prejudice" because "Plaintiff has already seen the Defendant's Answer and Counterclaim to the Amended Answer" (Doc. 92-2).  The truth is, **Plaintiff has not seen any of the counterclaims** in Defendant's latest Answer and Counterclaims because they are completely different from those filed originally on October 3, 2022 and those filed and stricken on July 7, 2023.  Indeed, even Defendant's "Factual Allegations Common to Counterclaims" are different than those filed on July 7, 2023.  This is yet another brazen and verifiable misrepresentation.

Defendant's initial counterclaims included: 1) fraudulent misrepresentation; 2) defamation; and 3) abuse of process.  Defendant's stricken counterclaims similarly included 1) fraudulent misrepresentation; 2) defamation; and 3) abuse of process – albeit with a different counterstatement of facts.  Defendant's latest counterclaims – filed after the close of discovery in this case – include a new counterstatement of facts and causes of action including: 1) false light and 2) sexual abuse and sexual assault.

To label this document a refiling would be a flagrant misrepresentation of the truth. None of these counterclaims have ever been filed and, while the factual allegations bear a resemblance to those previously filed, they too have never previously appeared on this docket.

### b.  Legal Standard

F.R.C.P. 6(b)(1)(B) provides that a court may, upon a showing of good cause, extend the period of time for the filing of a motion if the failure to file was due to "excusable neglect." "[D]etermining what is 'excusable' requires weighing such relevant circumstances as 'the danger of prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" Ramos v. Quien, 631 F. Supp. 2d 601, 609 (E.D. Pa. 2008).

"Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." Nype v. Sam, Civil Action No. 20-13680 (MAS), 2022 U.S. Dist. LEXIS 225051, at *9 (D.N.J. Dec. 14, 2022).  The court in Nype additionally outlined the Third Circuit's "'non-exclusive list of factors to guide the district court's exercise of discretion' when trying to determine if excusable neglect exists:"

> (1) whether the inadvertence reflects professional incompetence such as ignorance of the rules or procedure; (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court; (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence; (4) whether the inadvertence reflects a complete lack of diligence; or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance.

Additionally, Local Civil Rule 6.1(b) provides that the Clerk can offer no more than 14 additional days to file answers as long as the extension is sought "before the expiration of the original deadline to answer."  According to the Local Rule, "[a]ny other proposed extension of time must be presented to the Court for consideration."

### c.  <u>Defendant's Reasons for Untimely Filing</u>

Here, Defendant's counsel filed an entirely different document also called an Amended Answer and Counterclaim on July 7, 2023.  This document was rejected as untimely, however, it also contained several mentions of Plaintiff's name in contravention of court order.  Defendant's counsel makes the following justifications for his inclusion of Plaintiff's name and the delay:

- As to including Plaintiff's name: "This was my carelessness in attempt to rush out a filing prior to the in-person appearance" and he reacted his name from parts of the document just not all of them (D.E. 92-1, ¶3).
- As to the July 7, 2023 document being untimely: "There was a flurry of activity in the case at the time which made it confusing as to whether we could file an application to extend time to file Defendant's Amended Answer and Counterclaim until after all the open matters were resolved" and "Text Order 55 specifically barred any applications or even letters" (D.E. 92-1, ¶4).

Notably, Defendant's proffered reasons seem to apply only to the delay in filing the July 7, 2023 Amended Answer and Counterclaim *not* the September 18, 2023 Amended Answer and Counterclaim; as to the latter of the two, Defendant has offered **no excuse for his untimely filing.**

### d.  <u>There is No Good Cause for the Extension</u>

The Third Circuit Court of Appeals in <u>Joseph</u> mused on the difference between good cause and excusable neglect, holding:

> The good cause and excusable neglect standards have "different domains." *Lorenzen v. Employees Retirement Plan*, 896 F.2d 228, 232 (7th Cir. 1990). They are not interchangeable, and one is not inclusive of the other. The excusable neglect standard applies in situations in which there is fault; in such situations, the need for an extension is usually occasioned by something within the control of the movant. The good cause standard applies in situations in which there is no fault—excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant. Joseph v. Hess Oil V.I. Corp., 651 F.3d 348, 356 (3d Cir. 2011).

The court in <u>Joseph</u> took particular interest in Justice Scalia's understanding of "good cause" providing:

> Justice Scalia rejected as 'unremarkable' the suggestion of one litigant's counsel that more time was needed to consult with another lawyer, as 'all petitioners can honestly claim that they would benefit from additional advice and consultation.'  He also rejected the contention that the withdrawal of appellate counsel would 'automatically justify an extension of time,' as there was no indication "that the withdrawal was a reasonably unforeseeable occurrence."  Further, while the 'additional justification' of the death of counsel's father 'would in some circumstances qualify as 'good cause shown,''counsel in question had not been working on the petition and 'prevented by the death from completing his work,'   and there was 'no indication why some other attorney [from the same office] could not have undertaken this last-minute task, nor why the task has been left to the last minute.'
> <u>Joseph, supra</u>.

Here, the excuses offered by Defendant demonstrate that her delay in filing the July 7, 2023 Answer and Counterclaims was entirely within her and her attorney's control.

### e. Defendant's Neglect is Not Excusable

"Under the good cause standard, the Court focuses on Plaintiff's 'burden to show due diligence.' *Race Tires Am. Inc.*, 614 F.3d at 84. Similarly, under the *Pioneer* excusable neglect factor regarding reason for delay, the Court examines whether Plaintiff exhibited 'substantial diligence' and 'professional competence,' but notwithstanding such efforts, 'the result of some

minor neglect' caused the lack of compliance." Gumbs-Heyliger v. CMW & Assocs. Corp., No. 2012-0078, 2017 U.S. Dist. LEXIS 49049, at *6 (D.V.I. Mar. 31, 2017).  The Gumbs-Heyliger case centered around miscalendaring a deadline.

Defendant's counsel's claim that his July 7, 2023 document was untimely due to his fear of violating Text Order 55 is self-defeating as he did, indeed, file the document, it was just untimely and unsupported by a motion seeking additional time.  More so, this excuse asks the Court to ignore the fact that *after* Text Order 55 was made and before he so timidly filed the first version of his Amended Answer and Counterclaims Defendant's counsel filed:

1. a Motion for Consideration on June 16, 2023 (D.E. 62);
2. a Brief in Support of a Motion for Consideration on June 19, 2023;
3. a letter on June 20, 2023;
4. a Response to an Order to Show Cause on June 20, 2023; and
5. a letter on July 5, 2023.

Additionally, putting aside his ongoing filing during this apparent time of confusion, while his excuse might conceivably apply to his delay in filing the document on July 7, 2023, it certainly does not apply to his delay in filing the latest version on September 18, 2023 – more than two months after this Court struck the earlier one and provided him with a road map on how to file a motion pursuant to Rule 6.  Defendant's counsel has provided absolutely zero reason for his two plus month delay in filing this new document.

In Gumbs-Heyliger, the court held that "accidentally entering 'December 31' instead of 'December 23'" when calendaring a reply deadline "shows 'substantial diligence' and 'professional competence'" and concluded that "Plaintiff has met her burden of establishing good cause, and that the 'reason for delay' *Pioneer* factor weighs in favor of a finding of excusable neglect (Gumbs-Heyliger, 7).  In Joseph, a petitioner seeking additional time due to their retention of a new lawyer was found not to have demonstrated good cause because they

"fail[ed…] to point to any event beyond its control as having affected its ability to comply" and even though the attorney indicated he had "other obligations" that week "he does not claim to have been unaware of those obligations well in advance, nor does it appear that he is so encumbered by them that requiring compliance with the deadline would be unreasonable." Joseph, supra.  The court concluded that a "busy schedule, by itself, is not good cause for more time." Id.

Between Defendant's counsel's ongoing use of Plaintiff's name, his decision to first flout the rules in seeking an extension, sit on the court's directive for two months, and then attempt to sneak in an entirely new Amended Answer and Counterclaims as if it was a refiling, this is not a matter of professional incompetence, it's a deliberate disregard for the rules.  While one part of Defendant's counsel's excuse is capable of being verified – Text Order 55 *does* exist – it ends there; the remainder of his claims are easily manufactured and uncompelling at that.

### f.   There is an Enormous Danger of Prejudice

Defendant's first cause of action is for false light and claims, in sum and substance, that since January 2019, Plaintiff has been telling various unnamed people, including "clients, professional associates, professional employers, program organizers, advertisers, [and] promoters" that she is crazy and showed them copies of text messages she sent him. It also claims that Plaintiff directed his attorney to hire a publicist to further spread the "false statements."  The second cause of action is for "Sexual Abuse and Sexual Assault" and suggests that Plaintiff drugged and raped Defendant, detailing the event.

The Third Circuit Court of Appeals has held that:

> Examples of prejudice include "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'  Prejudice also includes deprivation of information through non-cooperation with

> discovery, and costs expended obtaining court orders to force compliance with discovery. Prejudice need not be "irremediable harm that could not be alleviated by [the] court's reopening discovery and postponing trial." Adams v. Trs. of the N.J. Brewery Employees' Pension Tr. Fund, 29 F.3d 863, 874 (3d Cir. 1994).

Defendant claims Plaintiff has been presenting her in a false light to armies of people since 2019. Defendant sat for her deposition.  Discovery is closed.  Imagining discovery is reopened, Plaintiff will face a virtually insurmountable and absurdly expensive task – redeposing Defendant to get the names of these people, locating them, deposing them, asking them about something that never happened five years ago, and expecting them still to be in possession of any communication which Defendant purports to exist.  All to include a cause of action which Defendant has now, for the first time even though this case was filed in 2021, decided to raise this.  Evidence has been irretrievably lost and memories of so-called witnesses likely warped by the passage of time and existence of publicly viewable documents.  Added to this, Plaintiff has, for months now, been attempting to conduct ESI discovery – discovery which would unarguably corroborate or refute Defendant's various claims and has been shut down by Defendant, again in contravention of court order.

### g.  Defendant's New Claims Will Require Reopening Discovery and Delay Proceedings

This lawsuit was initiated at the end of 2021; these claims were not raised then.  The majority of Defendant's Counterclaims were dismissed on March 22, 2023; these claims were not raised then.  Plaintiff's Amended Complaint was filed on June 1, 2023; these claims were not raised then.  Defendant filed an – albeit untimely – Amended Answer and Counterclaims on July 7, 2023; these claims were not raised then.  This Court struck Defendant's Amended Answer and Counterclaims and provided the relevant rules for seeking an extension of time; these claims

13

were not raised then.  Instead, Defendant waited another two months to file that motion, including along with it an entirely new Amended Answer and Counterclaims.  As indicated above, Defendant's new counterclaims will necessarily involve reopening discovery and will delay this proceeding, forcing Plaintiff to engage in a pricy and utterly pointless wild goose chase.  As egregiously, we will be reopening discovery in a case where Defendant all but refuses to engage in discovery, even after receiving explicit directions from the Court to do so.  There is no good reason to further delay this proceeding.

### h.  Defendant is Not Acting in Good Faith

Defendant's counsel's conduct in this case demonstrates his latest filing is not made in good faith.  Defendant is calling this a re-filing of a document that Plaintiff has already seen, but that is just another statement that forces the reader to ignore the facts and believe in Defendant's manufactured reality.  Defendant's flagrant disregard for court orders and deadlines shows a pattern abuse which should not be allowed to continue.  For all the reasons detailed above, this Court should deny Defendant's motion requesting additional time to file his Amended Answer and Counterclaims.

## II.    DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS SHOULD BE DISMISSED AS IT FAILS TO STATE A CAUSE OF ACTION

### a.  Legal Standard

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule 12(b)(6), a counterclaimant must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'". Ashcroft v. Iqbal, 556 U.S. 662, 678 [2009]).  Elaborating, the Court in Ashcroft held that:

(a) claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted). Id..

Further, "(t)hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (Id.).  "(I)n a motion to dismiss the pleadings, a court may consider matters subject to judicial notice". Schott v State, A-2612-04T1, 2006 WL 1911375, at *4 (NJ Super Ct App Div July 13, 2006)).  While "(t)ypically, extrinsic evidence should not be considered in ruling on a Rule 12(b)(6) motion" Third Circuit courts have held that, "if such external evidence 'was integral to and explicitly relied on in the complaint, and (if) the plaintiffs do not challenge its authenticity,' it may be relied upon in reviewing the sufficiency of the complaint". Morrissey v WTVR, LLC, 432 F Supp 3d 617, 623 (ED Va 2020).

### b.   Defendant's False Light Cause of Action Should be Dismissed

Defendant claims, vaguely, that Plaintiff  "contacted numerous of Defendant's friends and acquainances; members of her community; clients, professional associates, professional employers, program organizers, advertisers, [and] promoters and told them that she committed despicable immoral acts (sexual and otherwise)."  She further claims that "Plaintiff told people that she was crazy, showed them vulgar and outlandish text messages which he alleged to be from Defendant to Plaintiff, citing this as evidence of behavior unbecoming an Orthodox Jewish women and professional Jewish matchmaker."

The court in Benecard Servs. Provides the following with regard to New Jersey's false light laws:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light which the other would be placed. Benecard Servs. v. Allied World Specialty Ins. Co., Civil Action No. 15-8593 (MAS) (TJB), 2020 U.S. Dist. LEXIS 94806, at *38 (D.N.J. May 31, 2020).

### i. Defendant's False Light Claim Should be Dismissed as Conclusory

Defendant does not name the people to whom Plaintiff apparently placed her in a false light. She also does not indicate what, exactly, or even in sum and substance, Plaintiff said about her. As in Perry, this Court should find that her claim "does not pass muster under Rule 12(b)(6)" Perry v. Lee, Civil Action No. 19-17899 (FLW) (TJB), 2020 U.S. Dist. LEXIS 107631, at *29 (D.N.J. June 19, 2020). In Perry, the plaintiff's pleadings stated that it "may be reasonably inferred" that the plaintiff had to provide her former employer's stated reason for her termination to prospective employers (Perry, 28-29). The court dismissed the claim stating her "false light claim must be dismissed because she has not identified any statement made by any defendant regarding Plaintiff's termination, nor has she demonstrated that any such statement was made with knowledge of reckless disregard of its falsity" (Id. 29). The court further held that the claim rested "solely on the conclusory allegation" that defendants had published untrue statements and "Plaintiff must, at the very least, identify the publicized statements that were made about Plaintiff and who made those statements" (Id. 29-30).

Similarly, in Callaremi Lincoln-Mercury, Inc. indicated that "[w]ithout more information about the content or circumstances of publication of the challenged statements, it is impossible to discern how they could be false and defamatory [and] equally impossible to ascertain how

16

Newton was placed in a false light, whether the false light would be highly offensive to a reasonable person, or whether Motion knew of or acted in reckless disregard of the matter's falsity" Callaremi Lincoln-Mercury, Inc. v. Picon Auto Grp., LLC, No. 17-cv-6819 (KSH) (CLW), 2018 U.S. Dist. LEXIS 184925, at *17 (D.N.J. Oct. 29, 2018).

Due to the similarity between the causes of action, courts often address defamation and false light claims together.

> In federal court…the complaint is subject to the usual standards set forth by the Federal Rules of Civil Procedure and *Twombly* and *Iqbal*. "While the federal rules do not require the particularized pleading requirements set forth in New York's C.P.L.R. section 3016, Rule 8 [of the Federal Rules of Civil Procedure] still requires that each pleading be specific enough to afford defendant sufficient notice of the communications complained of to enable him to defend himself (Biro v. Condé Nast, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012)).

The court in Biro held more specifically that a "defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated" (Biro v. Condé Nast, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012)).

Admittedly federal judges "disagree about what facts are required to 'provide sufficient notice'" but while the "federal pleading standards may be liberal…they require more than bare allegations that 'fail to identify with any degree of specificity the substance and circumstances of the representations at issue'".  Oldham v. Pa. State Univ., No. 4:20-CV-02364, 2022 U.S. Dist. LEXIS 87272, at *50 (M.D. Pa. May 13, 2022).  The court in Mangan held that "'according to rule 8, a defamation pleading does not need to cite precise defamatory statements, it must only provide sufficient notice to the other party of the allegations made against him".  Mangan v. Corp. Synergies Grp., Inc., 834 F. Supp. 2d 199, 204 (D.N.J. 2011).  In Novartis Pharms. Corp., the New Jersey District Court, citing to Kotok, specified that "while a 'verbatim transcription' of

the alleged defamation is unnecessary, some factual pleading of the statements made is required'". <u>Novartis Pharm. Corp. v. Bausch & Lomb, Inc.</u>, Civil Action No. 07-5945 (JAG), 2008 U.S. Dist. LEXIS 92133, at \*19 n.8 (D.N.J. Nov. 12, 2008).  Interestingly, in <u>Kotok Bldg.</u>, a thoughtfully written opinion out of Cumberland County, the court wrote that "the conclusory allegation in paragraph four of the second count of defendant's counterclaim, i.e., that plaintiff slandered defendant, is an inadequate 'statement of the facts on which the claim is based' under R.4:5-2, and accordingly paragraph four must fail for insufficiency".  <u>Kotok Bldg. v. Charvine Co.</u>, 183 N.J. Super. 101, 105 (Super. Ct. 1981).

Even the most generous reading of Defendant's counterclaims does not provide the slightest hint of an answer as to any of the identifying information called for in <u>Biro</u>. Defendant's allegations are conclusory at best.

It would be patently unreasonable for Plaintiff to be expected to defend himself against every statement – verbal and written – real or imagined by Defendant – he may have made about Defendant over the course of an unknown number of years.  As the court stated in <u>Kotok Bldg.</u>, "we must never become slaves to a system of pleading, but liberality must not degenerate into anarchy".  <u>Kotok Bldg</u>. at 105.

### ii. Defendant's False Light Claim Should be Dismissed as Facts Indicate Plaintiff's Belief in Allegations

Defendant's claim that Plaintiff "knew the statement were false when making them" is further entirely conclusory and, in fact, contradicted by Defendant's own counterstatement of facts.  Indeed, Defendant repeatedly states that Plaintiff showed "filthy text messages purportedly crafted by the Defendant, as alleged evidence in support of his claims" and "showed

them vulgar and outlandish text messages which he alleged to be from Defendant to Plaintiff, citing this as evidence of behavior[.]"

"Opinions based on true, disclosed facts cannot support a false-light claim unless they create a false impression." Monge v. Univ. of Pa., No. 22-2942, 2023 U.S. Dist. LEXIS 88270, at *49 (E.D. Pa. May 18, 2023). "To the extent the statements are substantially true or are "opinion[s] based on disclosed facts," they are not *"false." McCafferty*, 955 F.3d at 360. The false light claim must fail as a matter of law as to these substantially true or opinion-based statements." Id. Additionally, "'[r]eckless disregard' is defined as a high degree of probable falsity, for proof of which plaintiff must present sufficient evidence to permit the conclusion that defendant in fact entertained serious doubts as to the truth of the statements." Read v. Profeta, 397 F. Supp. 3d 597, 651 (D.N.J. 2019).

Defendant has offered absolutely no basis for her assertion that Plaintiff entertained any doubts as to the truth of any alleged statements. Instead, according to her, Plaintiff accompanied the vague opinions he shared with generalized others with her text messages supporting those opinions. Notably, nowhere in Defendant's counterstatement of facts does she state they were *not* her text messages, just that they were filthy, vulgar, and outlandish. Where falsity is a necessary element of a false light claim, she cannot claim Plaintiff showing others her text messages places her in a false light.

### iii.   Defendant's False Light Claim Should be Dismissed as Past the Statute of Limitations

Further demonstrating the baseless speculation of this cause of action, Defendant provides two time frames resembling dates in her false light claim – "since January of 2019" and once "[i]n January of 2019[.]"  "False light invasion of privacy in other jurisdictions carries a

one-year statute of limitations, the same as that for defamation" Botts v. N.Y. Times Co., No. 03-1582 (MLC), 2003 U.S. Dist. LEXIS 23785, at *17 (D.N.J. Aug. 29, 2003).  Regardless of whether this court accepts as true that the time period for the false light claim is either a vague and conclusory range of dates lasting nearly five years or occurred at some point in January nearly five years ago, dismissal of this cause of action for being outside of the statute of limitations is appropriate.

### iv.   Defendant Fails to Allege this is a Misrepresentation of her Character, History, Activities, or Beliefs nor that the Statements Were Highly Offensive to a Reasonable Person

"To establish false light plaintiffs must show that they were depicted in a manner that would (1) 'constitute a major misrepresentation of [their] character, history, activities or beliefs,' and (2) 'be highly offensive to a reasonable person.'" Botts, supra.  While, again, Defendant has not provided the alleged statements which portray her in a false light, she has also failed to allege that they are a "major misrepresentation of [her] character, history, activities or beliefs[.]".  Indeed, the claim that Plaintiff apparently went around with supporting text messages indicates otherwise.  More so, she also fails to assert that the unspecified statements about her would be considered highly offensive to a reasonable person.

### c.   Defendant's "Sexual Abuse and Sexual Assault" Cause of Action Should be Dismissed

Defendant's second cause of action for "Sexual Abuse and Sexual Assault" – without any reference to federal or state law – is a bizarre inclusion, to say the least.  Sexual abuse is defined in the New Jersey Revised Statutes as involving a child under the age of 18.  The New Jersey statute for sexual assault provides some avenues for relief for adult victims, none of which are applicable here.  Similarly named federal laws do not appear to exist.

20

### i. Defendant has Failed to State a Cause of Action for Sexual Abuse

As indicated above, "sexual abuse" necessarily involves a minor victim.  Defendant's counterstatement of facts indicates that, in 2017 her husband of 30 years died.  Accordingly, it is safe to assume she was not a minor in 2017 when she claims Plaintiff sexually abused/sexually assaulted her.

> "Sexual abuse" means an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult. A parent, resource family parent, guardian or other person standing in loco parentis who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse, except that it is an affirmative defense if the parent, resource family parent, guardian or other person standing in loco parentis was subjected to, or placed in, reasonable fear of physical or sexual abuse by the other person so as to undermine the person's ability to protect the child. N.J.S.A. § 2A:61B-1 (LexisNexis, Lexis Advance through New Jersey 220th Second Annual Session, L. 2023, c. 96 and J.R. 11).

To the extent Defendant's "Sexual Abuse and Sexual Assault" cause of action is intended to be one for "Sexual abuse" this claim should be dismissed because, even assuming Defendant's counterstatement of facts to be true, she was not under the age of 18 in 2017.

### ii. Defendant Has Failed to State a Cause of Action for Sexual Assault

Looking to the second half of Defendant's second cause of action, sexual assault, this claim also must fail because Defendant's factual allegations common to counterclaims do not assert that sexual penetration occurred, an act which is required pursuant to NJ Rev Stat §2C:14-2, which provides, in part, that an "actor is guilty of sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances…"

NJ Rev Stat § 2A:61B-1 defines "sexual penetration" as including "vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or vagina either by the adult or upon the adult's instruction."  Accepting Defendant's factual allegations as true, she still falls short of ever stating that sexual penetration occurred.

In State v. Gallagher, the Superior Court Appellate Division held that a "plain reading of the definition of penetration dictates that touching the buttocks or slightly penetrating between the two cheeks does not constitute anal penetration. While the depth of insertion is not relevant, there must be an insertion 'into the anus' in order to prove penetration" State v. Gallagher, 286 N.J. Super. 1, 13 (App. Div. 1995).  The court concluded that a jury instruction that "'insertion of the penis into the crevice formed by the left and right buttocks to any degree' constituted penetration" was an error as intercourse required penetration, no matter how slight, of the anus (Id.).  Nowhere in Defendant's allegations is it ever alleged that penetration actually occurred, much less what type of penetration.

The closest Defendant gets to such allegations are, at best, insinuations – that Defendant woke up "with semen dripping down her leg and other parts of her body[,]" that "Plaintiff said to the Defendant 'I want you to blow me...'" and that the two were in a "sexual relationship." "[M]ere insinuations" and "conclusory allegations and bare-bones insinuations" are not enough to survive a motion to dismiss Merrill v. State Farm Fire & Cas. Co., Civil Action No. 12-1328, 2013 U.S. Dist. LEXIS 19660, at *13 (W.D. Pa. Feb. 13, 2013).  Accordingly, Defendant's second cause of action should also be dismissed.

Whereas, the Defendant's motion for leave to file a later answer should be denied.

However, if the court accepts Defendant's late answer, the counterclaims should be dismissed in their entirety.

Dated:       October 3, 2023
              New York, New York

                                       *Daniel S. Szalkiewicz, Esq.*
                                       Daniel S. Szalkiewicz, Esq.