UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff<br><br>v.<br><br>BAILA SEBROW<br><br>Defendant | CASE NUMBER:<br>2:21−CV−20706−SDW−ESK<br><br>*ATTORNEY'S CERTIFICATION IN RESPONSE TO PLAINTIFF'S OPPOSITION TO MOTION TO WITHDRAW*<br><br>CIVIL ACTION<br><br>Presiding Judge:<br>HON. STACEY D. ADAMS |

I, IRA W. HELLER, ESQ., hereby certify as follows:

1. I am the attorney to the Defendant, Ms. Betty Sebrow. I write this Certification in response to the Opposition of Plaintiff to my Motion to Withdraw as counsel.

**Plaintiff's Preliminary Statement**

2. In Mr. Szalkiewicz's brief in opposition, he continues the pattern of conduct he has exhibited since the inception of this case. He consistently twists facts, exaggerates circumstances, and unfairly accuses both me and Ms. Sebrow of misconduct. This behavior has been evident in letter after letter submitted to the Court throughout the history of this matter, forcing me to dedicate extensive time and effort to defending myself against his baseless and inflammatory accusations.

3. Early on, Mr. Szalkiewicz attempted to litigate this case via letters to the Court, frequently referencing alleged lewd and aggressive communications purportedly received by the Plaintiff from Ms. Sebrow. These alleged communications were never properly tested or substantiated before the Court, and will be aggressively challenged, yet they were used in an

1

apparent effort to create preconceived notions and unfairly prejudice the Court against Ms. Sebrow

4. For example, Mr. Szalkiewicz's assertions in the first paragraph of his brief are laced with invective and clearly intended to mislead. He claims that "Defendant Sebrow has shown her disregard for this Court in many ways, including by skipping court appearances." To clarify, Ms. Sebrow missed a single conference, which was scheduled for December 21, 2022. The Order for that conference (See **EXHIBIT 1**, filed as Document 18) explicitly states: "Counsel, as well as persons with full settlement authority, is mandatory."

5. Ms. Sebrow, who travels by public transit from Lawrence, New York, a journey of approximately two and a half hours each way, discussed with me the parameters of my authority to settle prior to the conference. I requested that she remain available by phone in case further consultation was needed. This was an oversight on my part, as I learned Judge Kiel expected all parties, including litigants, to attend the conference in person. I genuinely thought that appearance was required by a person authorized to settle, which I clearly was. However, I apologized profusely to the Court and took full responsibility for my oversight. However, for Mr. Szalkiewicz to characterize Ms. Sebrow's absence as "showing disregard for the Court" by "skipping court appearances" is an entirely dishonest and exaggerated depiction of her conduct. This statement is not only misleading but also fails to account for the context and circumstances surrounding her absence at that conference.

6. In the same sentence, Mr. Szalkiewicz asserts that I "file motions without regard to federal rules or Court directives." I fully acknowledge that several of my filings were not accepted due to procedural deficiencies. However, his insinuation that this emanates from a lack of regard for this Court or its procedures is entirely false and malicious.

7. I made multiple attempts to file objections to Orders issued by Judge Kiel and exercised due diligence in trying to comply with the applicable rules. Specifically, I filed several objections, making every effort to do so in accordance with Court rules. This includes:

    a. My objections addressed to Judge Kiel dated June 21, 2023 (**EXHIBIT 2**),

    b. A letter objection to District Court Judge Farbiarz on July 5, 2023 (**EXHIBIT 3**),

    c. A response to Mr. Szalkiewicz's objections filed on July 28, 2023 (**EXHIBIT 4**).

8. When I was later informed that my objections needed to be filed in motion form, I promptly did so on October 20, 2023 (**EXHIBIT 5**). To suggest that these filings were made "without regard to Federal procedure" is, once again, a gross mischaracterization of my efforts and intent. My filings reflect an earnest attempt to comply with the rules and procedures of this Court, even in the face of my limited experience with Federal legal procedures.

9. Finally, addressing the third accusation, Mr. Szalkiewicz claims that I have deliberately violated the Court's Order to redact the Plaintiff's name from all documents, suggesting that I am doing so out of spite and deliberately disobeying the Court's directive. This accusation is entirely frivolous and unwarranted and should be afforded no currency by this Court.

10. Once I was clear about what the Court was demanding in terms of redactions, I maintain that I applied my full due diligence to comply. However, in the way of explaining some of my early confusion regarding this directive, the restriction on using the Plaintiff's name was imposed months after the Plaintiff had been freely referenced by name in several filings. When the Plaintiff filed this action under a pseudonym, the Court rules required him to seek leave of the Court at the outset, but he did not. It was only later, on February 8, 2023, that Mr. Szalkiewicz submitted a letter to the Court requesting what was in essence retroactive permission

3

to pursue the matter under a pseudonym. Permission was granted on February 10, 2023, before I even had an opportunity to respond or raise reasonable objections.

11. When I was informed by the Court of the new restrictions, I initially experienced difficulties in understanding that all exhibits, in addition to the primary filings, had to be redacted. While I paid careful attention to redacting my primary submissions, I overlooked the necessity of redacting the attached exhibits. As soon as the oversight was brought to my attention, the Court rendered the filed document inaccessible, and I promptly refiled the documents with the exhibits properly redacted.

12. I earnestly made every effort to comply with the Court's Order, though I admittedly inadvertently missed some redactions in subsequent filings, particularly at the outset, given the far-reaching scope of the redactions required. Furthermore, Mr. Szalkiewicz later expanded his objections to include references to any information about the Plaintiff that might potentially reveal his identity, such as his line of work, the town where he resides, and other details. This further broadened the scope, thus further increasing my exposure to accusations of violating the Order. At no point did I ever intentionally violate the Court's Order, nor was I cavalier or careless.

13. I believe it is significant for the Court to note that I have now been compelled to write four pages in response to just one paragraph of Mr. Szalkiewicz's misleading and inflammatory statements, and there is still more to address. This motion was intended to focus on a motion to withdraw, which I will certainly address below. However, I should not be placed in the position of having to respond to unwarranted attacks that bear no relevance to the matter at hand.

**The Representation of Being a Pro-Bono Attorney**

14. In the next paragraph, Mr. Szalkiewicz hurls more accusations. I submitted a Certification to the Court, stating that I have not been paid by Ms. Sebrow since February of 2022. At that time, from the time I was retained in July of 2021, I had been paid a total of $16,000 for the 60.5 hours I had worked up to that point in this matter. That was the last time I was paid by Ms. Sebrow, after the assistance she was receiving from an organization topped out. Since that time, between the Federal and State matter, I have put more than 730 hours of work into this matter, carrying a current balance of $244,856 in unpaid legal fees.

15. Mr. Szalkiewicz has absolutely no knowledge of what I have or have not been paid, yet he baselessly claims that I have been compensated and that my claims are fraudulent. He further alleges that I have been paid by Ms. Sebrow in the Domestic Violence case in Essex County. How does Mr. Szalkiewicz know what I have or have not been paid? He does not know, yet he still makes this statement in a Court filing without any apparent regard for his responsibility to verify facts before presenting them to the Court.

16. The fact remains that I have not been compensated, neither in this matter nor in the DV matter since February of 2022, yet he persists in accusing me of lying to the Court without any factual basis whatsoever. These baseless claims are not only misleading but are also clearly intended to impugn my integrity. This repeated pattern of making unfounded accusations must not go unchecked, and if Mr. Szalkiewicz's is not aware that such conduct is patently unacceptable, then I respectfully request that the Court bring this to his awareness.

17. In regard to Mr. Szalkiewicz's demand that I provide a Retainer Agreement and proof of outstanding invoices, I remain bound by my ethical obligation to maintain my client's confidentiality, notwithstanding my request to withdraw from this case. Under Local Civil Rule 102.1, which governs the withdrawal of counsel, there is no explicit requirement mandating the

submission of a Retainer Agreement or invoices when filing a motion to withdraw. However, should the Court request such documentation, I will readily provide it. However, the rule does not require me to comply in this regard to the demands of opposing counsel.

**Ms. Sebrow's Alleged "Financial Windfall"**

18. Before addressing the substance of Mr. Szalkiewicz's accusations related to Ms. Sebrow's alleged "financial windfall," I must correct myself regarding an aspect of my letter response to Mr. Szalkiewicz request for permission to file a subpoena, submitted on January 21, 2025 (filed as Document #138). Simply reading the Judge's Order in the *Worbes Corporation et al. v. Betty Sebrow et al.* (Index # 800583/2022E) case, and the Will of David Sebrow does not provide all the necessary facts to determine who actually received the settlement money in that case. However, what is certain is that before accusing both me and Ms. Sebrow of attempting to mislead the Court, Mr. Szalkiewicz had an obligation to thoroughly review the entirety of the case he cites in support of his assertions, and he clearly did not.

19. Specifically, in referencing the *Worbes* case, it is evident that Mr. Szalkiewicz failed to review the Stockholders' Agreement (cited as Exhibit 104 in the *Worbes* case), which directly pertains to the issue at hand (see copy of the Stockholders' Agreement, annexed hereto as **EXHIBIT 6**).

20. The Stockholder's Agreement, on page 3 paragraph 6 states as follows:

> No stockholder of S&S, Worbes hnd WLC shall sell, transfer, assign, mortgage, hypothecate his shares in any of said corporations or enter into any agreement as the result of which some third party shall become a stockholder in any of said corporations without the unanimous consent of all the other stockholders with the sole exception that any stockholder may make a testamentary disposition of his shares to his issue in which event his issue shall own the shares of his deceased father but subject nevertheless to the terms and conditions contained in this agreement. Any other attempted transfer or disposition of such shares shall be a nullity and unenforceable

21.     In other words, the agreement explicitly precludes shareholders from transferring their shares to anyone other than their issue. Accordingly, Ms. Sebrow was precluded from any rights to the proceeds of the sale of the *Worbes* property, as the beneficiaries of the settlement were David Sebrow's issue, not Ms. Sebrow. This matter was fully litigated in the lower court and subsequently appealed, with no proceeds from the sale ultimately awarded to Ms. Sebrow. This information was readily available to Mr. Szalkiewicz, and before leveling accusations, he is bound to make sure that he has all his facts.

22.     Accordingly, there can be no dispute that none of the wealth to which Mr. Szalkiewicz refers came into Ms. Sebrow's possession following the settlement of the *Worbes* case. This is not a matter of opinion but of fact. If Mr. Szalkiewicz wishes to argue that Ms. Sebrow has access to the funds because her children inherited them, that argument clearly does not hold water. Ms. Sebrow's children are under no obligation to share their money with her.

23.     Furthermore, based on my information, the settlement funds were largely expended on a 50% contingency fee for legal representation, outstanding legal fees from the lower court matter and an unsuccessful appeal, as well as significant taxes on the proceeds. What remains indisputable is the simple truth: the finances of Ms. Sebrow's children are not Mr. Szalkiewicz's concern, and he has no grounds to demand information about this money. Nor do I, for that matter, as the funds rightfully belong to the issue of David Sebrow..

**The Domestic Violence Matter in Essex County**

24.     Mr. Szalkiewicz states on Page 7 of his Opposition Brief as follows:

> Mr. Heller's motion indicates that he will continue to represent Defendant Sebrow in a domestic relations matter against her showing the desire to withdraw as counsel is not financially motivated, but rather designed to further delay resolution in this matter."

25. I made no such representation. My Motion to Withdraw was simultaneously filed in the Essex County Domestic Violence Division (see copy of Essex County Motion to Withdraw annexed hereto as **EXHIBIT 7**). The reason for withdrawal in both matters was identical: my client's inability to pay. I am utterly baffled as to where Mr. Szalkiewicz is obtaining the alleged information that he presents as justification to block my withdrawal as counsel in this case.

26. Furthermore, it so happens that my Motion to Withdraw from the Essex County matter was denied shortly thereafter on January 23, 2025 (decision annexed hereto as **EXHIBIT 8**). However, the circumstances between the Essex County matter and this matter are markedly different. In the Essex County matter, we are in the middle of trial (and have been for some time), and potential prejudice to the client exists in that case, which does not apply here. One point I will reiterate is that I have not been paid in either matter, Federal or State, since February of 2022.

**There Is No Prejudice to the Plaintiff**

27. Trial has not yet begun in this matter. In addition to the reasons presented for my withdrawal, I firmly believe that my client would be better served by an attorney more substantial experience in Federal court proceedings. The majority of my legal career has been dedicated to practicing in the New Jersey State Court, Family Division. This case arises from the same facts and circumstances as those simultaneously being addressed in the Essex County Domestic Violence Division, and I initially entered my appearance in this Federal matter on Ms. Sebrow's behalf to ensure she was not left unprotected.

8

28.     What I did not anticipate at the time was the extent to which this Federal matter would become part of a coordinated, multi-pronged onslaught against Ms. Sebrow. This effort included another defamation case filed in the Nassau County Supreme Court in New York, with two law firms, Mr. Szalkiewicz's firm and Borenstein McConnel Calpin, working in tandem to overwhelm Ms. Sebrow with litigation and, by extension, overwhelm me as her counsel.

29.     Mr. Szalkiewicz has actively participated as a legal consultant and expert witness in the Essex County matter. He sought information in this Federal case that would have been restricted by the TRO in the DV matter, yet he obtained it despite my objections. He and Mr. Borenstein then used this information in the DV matter, gaining an improper advantage in clear violation of procedural fairness.

30.     Since discussing my intention to withdraw as counsel several weeks ago, Ms. Sebrow has been actively seeking replacement counsel. She is receiving assistance from organizations dedicated to helping parties secure pro bono representation. As stated in my motion, my law firm is not equipped to continue representing Ms. Sebrow on a pro bono basis. Furthermore, I believe Ms. Sebrow would be much better served by an attorney with the appropriate familiarity and expertise in Federal District Court. I do not anticipate any significant delay in the proceedings, as I expect that she will secure replacement counsel in a timely manner.

**The Sanctions**

31.     In regard to the two issues raised by Mr. Szalkiewicz related to the two pending Orders on sanctions and discovery: regarding the sanctions, I wrote a letter (and later attempted to refile it in proper motion format) to District Judge Farbiarz, seeking a voice of reason to reevaluate what had been imposed upon me by then-Magistrate Judge Kiel. The severity and

9

spartan reasoning behind the sanctions defy logic, as it is entirely disproportionate to impose a penalty upon an attorney exceeding $10,000 under these circumstances.

32. My involvement in this case, as well as the Domestic Violence matter, has been driven by a sincere commitment to doing the right thing in defending someone I believe is being unfairly targeted. Being subjected to such a severe penalty is not only unwarranted but also profoundly devastating, especially given the already adverse and challenging circumstances I am currently facing. Mr. Szalkiewicz's claim that I had not sought a stay is absolutely incorrect, they are all of record, and must be addressed. I am still respectfully requesting that this Court will address my objection and reevaluate this devastating penalty, significantly moderating it to reflect fairness and reasonableness under the circumstances.

**Discovery**

33. As far as discovery is concerned, there was an initial exchange of paper discovery with Mr. Szalkiewicz early in this case. I responded to his interrogatories and provided documents as per his requests. Admittedly, I did not fully understand the nature of ESI discovery at the time, as I had never before been involved in a case with such a discovery Order.

34. In my objections, first to then-Magistrate Judge Kiel and later to District Court Judge Farbiarz, I outlined the significant prejudice to my client in being compelled to hand over privileged information (see prior Exhibits). This included violations of Ms. Sebrow's right to privacy, her Fourth Amendment rights, and the privacy of her clients. The Order not only risked intruding upon Ms. Sebrow's own private information but also exposed the sensitive data of third parties, potentially subjecting Ms. Sebrow to far-reaching liability.

35. Mr. Szalkiewicz can continue to blame me for the delays, but the reality is that I reached out to him on multiple occasions, requesting that he engage reasonably to move

discovery forward. Instead, Mr. Szalkiewicz has shown no compulsion to moderate his stance, clearly relying on the expectation that the Court will enforce its Order, regardless of the lines that have been crossed in violation of Ms. Sebrow's rights.

**Conclusion**

36.     In light of the above stated, I ask Your Honor to grant my Motion to Withdraw in this matter, and in addition, positively consider my additional requests therein.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: January 27, 2025

Respectfully submitted,

_____
Ira W. Heller, Esq.

Ira Heller Law, LLC
1317 Morris Avenue
Union, NJ 07083
908-275-8626
iwhelleresq@gmail.com