**IRA HELLER LAW, LLC**

IRA W. HELLER, ESQ.
(MEMBER OF BAR - NJ & NY)

1317 Morris Avenue, Union, NJ 07083

Tel: 908-275-8626 / Fax: 908-349-3005
iwhelleresq@gmail.com

July 28, 2023

**VIA EMAIL & ECF FILING**
US District Court Judge Michael E. Farbiarz
Frank R. Lautenberg US Post Office & Courthouse Building
2 Federal Square
Newark, NJ 07102

    *Re: John Doe v. Baila Sebrow – Case No.: 2:21-cv-10706*
       *Letter Response to Opposition Letter of Daniel Szalkiewicz, Esq. to Objection Letter*

Dear Judge Farbiarz

    My Law Office represent the Defendant, Ms. Betty Sebrow, in the above referenced matter.

    On July 5, 2023, as Your Honor is aware, I wrote an objection to the June 21, 2023 Order of Magistrate Judge Kiel (ECF 68). Daniel Szalkiewicz, Esq., attorney to the Plaintiff in this matter, wrote a letter in opposition to my objection dated July 7, 2023 (ECF 72). In his letter, Mr. Szalkiewicz states a few paragraphs in opposition to my objection, but for the remainder of the letter, he fills 4 pages, presenting his evidence and litigating the facts of this case. In my experience, and in the forums in which I have practiced, I have learned the practice of litigating by letter to be contrary to proper procedure. Nevertheless, however, this has been what Mr. Szalkiewicz has been consistently doing since this matter's inception vis a vis the Hon. Magistrate Judge Kiel, and is now following the same tactic vis a vis Your Honor.

    That being said, I have generally refrained from engaging in this form of discourse with Mr. Szalkiewicz," but in retrospect, I believe I have generally paid a price in allowing Mr. Szalkiewicz's assertions to go unanswered. Accordingly, since Mr. Szalkiewicz has chosen to use his letter opposition to my Objection to argue the facts of this case, he has essentially opened the door, and I must respond.

    As Mr. Szalkiewicz states in his opposition letter, Page 2, Par 2, "while the untimeliness of Defendant's objections/appeal is reason enough to deny the relief requested, the facts of this case and litigation additionally warrant upholding Magistrate Kiel's orders as Defendant has offered and can offer nothing which is 'clearly erroneous or contrary to the law.'" So after a few paragraphs devoted to his opposition to my objection, Mr. Szalkiewicz dives right into his evidentiary assertions, which I cannot allow to go unchallenged.

**The "Facts of the Case"**

    On Page 2, paragraph 2, as quoted above, Mr. Szalkiewicz's appeals to Your Honor that the "facts of this case" must be considered as a factor in rejecting my Objection/Appeal to Your Honor. Which "facts" are Mr. Szalkiewicz referring to? What facts thus far in this matter have

been adjudicated to date? Absolutely none. Mr. Szalkiewicz then launches into a litany of quotes from alleged "evidence" which Plaintiff's counsel, both in this matter and in the matter in Essex County, have bandied about as if they were forgone conclusions of fact that are so ironclad that they cannot be challenged. However, I fully intend to challenge these assertions and alleged evidence he presents, and because I have not been litigating this case against Mr. Szalkewicz by letter does not mean I have no response.  Nevertheless, I have no choice but to push back in some fashion, as it has thus far been prejudicial to my client (as well as to me) that I have generally refrained from responding, leaving his assertions unchallenged.

**<u>Very Brief History</u>**

This matter began with a Temporary Restraining Order Complaint ("TRO") filed by the Plaintiff in the New Jersey Superior Court, Essex County Family Division ("Essex County"), and was served upon my client on or about July 15, 2021. The facts and circumstances in that matter are identical to the ones being presented in this Federal matter. Trial is ongoing in the Essex County matter, and the Plaintiff is still in the process of presenting his case. In fact, the Plaintiff himself is still in the process of testifying, and still has yet to be cross examined. However, the Plaintiff has already presented his two key witnesses in support of the predicate act of harassment in Essex County, who are also his two key witnesses supporting his defamation claim in this Federal matter. Now, in the aftermath of their testimony, not only has the Plaintiff failed to demonstrate that my client engaged in defamation of the Plaintiff, they have actually served to debunk the Plaintiff's claim.

On page 3 of Mr. Szalkiewicz's letter, paragraph 4, he states "finally, Defendant caused the creation of a website, Twitter account, and Instagram account which named the Plaintiff, stating '[John Doe], a 64 year old financial advisor in West Orange, NJ is accused by police of incapacitating 100s of victims by plying them with date rape drugs" (Doc 58 Par 115-132).'"

Accordingly, the Plaintiff, in his Essex County TRO Complaint, accused my client of being responsible for the defamatory web postings cited above by Mr. Szalkiewicz. The Plaintiff retained Abraham Borenstein, Esq. to pursue my client in the Domestic Violence Section of the Essex County Family Department.  Later, Mr. Borenstein hired Mr. Szalkiewicz to to find the source of the "date rape" internet postings, and get them removed from the web. Mr. Szalkiewicz found the source of the "date rape" internet posting, but the source of the posting was not Ms. Sebrow, but rather, a gentleman named Michael Kogan. Mr. Borenstein then filed suit in New York Supreme Court, Nassau County, naming "Gabriel Solomon, Michael Kogan, Tanya Kogan, and MBTA Management" as defendants. Conspicuously absent as a defendant from the law suit was Baila Sebrow, because they had found the party responsible for the posting, and they could find no connection to Ms. Sebrow that would justify including her as a defendant. Nevertheless, that did not stop them from filling the entirety of the Plaintiff's Nassau County Complaint with a a litany of accusations against Baila Sebrow, accusing her of being the mastermind of the postings, notwithstanding the fact that they had not one stitch of evidence against Ms. Sebrow that would have allowed her to name her as a Defendant in the Nassau County law suit.

**<u>The Plaintiff's Witnesses</u>**

2

On June 23, 2023, the Plaintiff produced Mr. Michael Kogan to begin his testimony in the Essex County matter. Mr. Kogan affirmed that he was the person who made the "date rape" internet postings about the Plaintiff, and that the person who asked him to make the posting was a woman named Nadia Kiderman, not Baila Sebrow. In fact, upon cross examination, Mr. Kogan admitted that he did not even know who Ms. Sebrow was at that time, and Ms. Kiderman never mentioned the name of Baila Sebrow. It was not until Mr. Kogan was sued by the Plaintiff in September of 2021, when he saw Ms. Sebrow's name in the Plaintiff's Complaint that he became aware of her.

Ms. Kiderman also appeared as Plaintiff's wintness on June 21, 2023. Ms. Kiderman admitted during testimony that she was the one who asked Mr. Kogan to make the date rape internet poster, and also admitted that she never mentioned Baila Sebrow's name to Mr. Kogan, but rather, her "friend." Notwithstanding, Ms. Kiderman testified that "Baila begged me and begged me to do it, and I had no choice." When asked as to why she went and did this, she said it was because she wanted to help the oppressed women of the world." When asked as to why she didn't simply give Ms. Sebrow Mr. Kogan's contact number, and Baila could have asked Mr. Kogan herself, she said that Baila "didn't want to be traced." When asked as to whether she too was concerned about being traced, she said that she didn't think about it that much. On the final day of her testimony, Ms. Kiderman made a new revelation, that Ms. Sebrow never told her she was personally raped by the Plaintiff, but testified that Ms. Sebrow told her that "other women had been raped by the Plaintiff." When questioned as to who Ms. Sebrow had told her was raped by the Plaintiff, Ms. Kiderman stated that she did not know their names. Ms. Kiderman was asked if she inquired about who these victims were, so she could verify before asking Mr. Kogan to post the date rape postings, she replied that she did not make any inquiries.

Finally, one point among many which calls Ms. Kiderman's credibility into serious question, when she was asked about how she found out that Mr. Kogan was being sued in Nassau County. It was absolutely incoherent. Furthermore, in an expert witness report issued by Mr. Szalkiewicz in March of 2022 in the Essex County matter, Mr. Szalkiewicz reported having met with Ms. Kiderman no less than four times between the dates of October 18, 2021 and December 21, 2021. When questioned about her meetings with Mr. Szalkiewicz, Ms. Kiderman changed her story at least 3 times. It was only after she was confronted with Mr. Szalkiewicz's expert report that she began to "recall" the meetings with Mr. Szalkiewicz. However, she testified that though she recalled the meetings, she was basically unable to recall what was discussed over the course of her 4 meetings with Mr. Szalkiewicz. I asked Ms. Kiderman if Mr. Szalkiewicz had mentioned anything about impleading her as a defendant into the Nassau County law suit, to which Ms. Kiderman replied that there was no discussion about it. I asked Ms. Kiderman as to why she thought the issue wasn't raised, after all, it was she who had admitted to having hired Mr. Kogan to make the date rape posts. She replied that she was sure that the Plaintiff's attorneys had no intention of bringing her in as a defendant, because "they know it was Baila who did it." So I asked her, why didn't they then dismiss the Nassau County law suit against all the other people, since they already allegedly found that it was Baila Sebrow, not the other people they were suing? Clearly, Ms. Kiderman had no good responses to these questions. Since Ms. Kiderman is clearly exposed legally as the person who hired Mr. Kogan to make the date rape posts, why is she so confident. If there was ever a person with a motive to lie, it is Ms. Kiderman.

The transcripts of Mr. Kogan and Ms. Kiderman are on order.

**<u>Plaintiff is Utilizing this Court as a Weapon</u>**

Mr. Szalkiewicz, who has clearly been very well compensated in this matter, as have the Plaintiff's entire legal team, has sanctimoniously commented in regard to my financial predicament, "nobody forced you to take it on." Actually, Mr. Szalkiewicz should know that I did not need anyone to tell me that I had to take this on, because I have my conscience.

When I first came into this case, I was retained to take on a filing of a Temporary Restraining Order matter in the Essex County Family Court, which are summary proceedings, and I have litigated scores of them. There was absolutely no reason for me to suspect that 2 years later, this matter would still be going on. In fact, while Mr. Szalkiewicz accuses ME of incessant delays, it was actually he and Mr. Borenstein who adjourned the Essex County matter more than six times, which in retrospect, they clearly did to buy time so they could send out document subpoenas without notice to me, and in violation of the Court Rules, for which they were sanctioned. Nevertheless, even with my client having run out of funding, I would have been able to tighten my belt and get through the matter in Essex County, and would have found a way to get my client through. What I was NOT prepared for was the Plaintiff opening up another front in the Federal District Court, which I maintain was aimed purely to overwhelm me and force me out of this case, thus leaving my client exposed and undefended. The Federal filing was also an underhanded tactic, which Mr. Szalkiewicz has been utilizing prolifically, in which he has been going on fishing expeditions in violation of the New Jersey Prevention of Domestic Violence Act of 1991, from which Mr. Szalkiewicz now claims virtual immunity because he is in the Federal Court.

Mr. Szalkiewicz then waives around evidence that he has allegedly found to justify his fishing expeditions in the breach. Through this period that was supposed to be a discovery process, he continued sending his letters to Magistrate Judge Kiel, arguing his case by letter, feeding his narrative and pseudo-facts to the Magistrate Judge before even one piece of evidence has been properly examined.

**<u>Mr. Szalkiewicz Quotes Magistrate Judge Kiel</u>**

In his opposition letter to Your Honor of July 7, 2023, Mr. Szalkiewicz actually quotes Magistrate Judge Kiel on page 4, paragraph 1 of his letter, stating "Magistrate Kiel further indicated that there was 'troubling evidence that defendant may have altered the disputed email' and that 'plaintiff has credibly raised a potential claim relating to defendant's attempt to inject a fraudulent document into this litigation and conceal evidence.'" This document seemed to be extremely persuasive to Magistrate Judge Kiel, but notwithstanding that this document has not faced any evidenctiary scrutiny, which I fully intend to present, it was clearly very persuasive to Magistrate Judge Kiel.

What is exceedingly "troubling" here, is the fact that given the current trajectory of this matter, Mr. Szalkiewicz has been succeeding in his objective to bury both my client and me before we even get a chance to be heard in this matter. I fully intend to deal with that document referenced by Magistrate Judge Kiel, in addition to a whole host of alleged "facts" which Mr. Szalkiewicz continues to hurl at the Court via his letters. But though this letter is not the place

4

for arguing the facts of this case, I have been left with absolutely no choice but to push back with this letter of my own.

I mean absolutely no disrespect to the Honorable Magistrate Judge Kiel, who is clearly a very able jurist, and I do not question his desire to be a fair arbiter in this matter nor any other matter. However, it has been made eminently clear that Mr. Szalkiewicz has already succeeded in skewing the playing field in his favor. The actions that the Court has taken against me and my client, the punishing financial sanctions, the Orders that violate her constitutional rights, the Order which precludes me from communicating directly with the Court (and directing me to send through my adversary first for his review), reflect a Court which is not treating both sides equally, thus depriving my client of her due process.

I know that there have been difficulties in this matter. I had a very difficult beginning in this matter, and I have admitted where I have erred and have earnestly apologized where appropriate. There were mix-ups at the outset with the Court having a defunct email address for me, during which I missed important messages from the Court (and which took an extended time to correct). There was a missed discovery conference that was supposed to take place via telephone, which was a misunderstanding on my part, for which I also took responsibility and apologized. When I came in to a settlement conference without my client, I incurred the Judge's wrath and stood accused of *intentionally* disobeying the Court's Orders. I absolutely did not intentionally disobey the Court, and do contend that my reading of the Order was a reasonable misinterpretation of the text of the Order. I was not avoiding anything, and I personally showed up at the Court. What gain was there for me to intentionally defy the Orders of this Court and tell my client not to show up?

It is apparent to me that Plaintiff's counsel is trying to bury me in this Court before I get a legitimate chance to make my case on behalf of my client. I absolutely do not think that this is intentional on the Magistrate Judge's part, but the Orders of this Court have been unfortunately bolstering that agenda, rather than providing equal justice.

**ESI Discovery**

I must state for the record, once again, that I am not refusing to cooperate with ESI discovery. I communicated several times with Mrs. Szalkiewicz on more than one occasion, offering my cooperation regarding the ESI discovery. It is simply not a reasonable answer to say that it's too late, when it involves sacred principles such as attorney client privilege, the right to due process, the right to privacy, and more. There is also a problem in regard to the $2,000 fee which the Court had expected my client to pay for the ESI Discovery. Magistrate Judge Kiel indicated when we appeared last, when I explained the difficulty for my client in having to pay a $2,000 fee, Magistrate Judge Kiel replied, "you should have asked the Court for an Order for the Plaintiff to pay the fee." I did not know that option was available to me, and hope it still will be, as my client can most definitely not afford such a fee, while the Plaintiff most certainly can.

I thank Your Honor once again for your very kind assistance in this matter.

                                                          Respectfully,

                                                          Ira W. Heller, Esq.

cc: Daniel Szelkiewicz, Esq.
    *Attorney for Plaintiff*