**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOHN DOE,** ) | **CASE NUMBER:** |
| ) | **2:21−CV−20706−MEF−ESK** |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **BAILE SEBROW** ) | ***MOTION TO ACCEPT DEFENDANT'S*** |
| ) | ***PRIOR OBJECTIONS TO ORDERS OF*** |
| ) | ***THE HON. MAGISTRATE JUDGE*** |
| **Defendant** ) | |
| ) | |

**PLEASE TAKE NOTICE THAT**  Defendant named BAILA SEBROW will move before the

Hon. District Court Judge Michael E. Farbiarz, U.S.D.J. on _____, 2023 (to be

determined by the Court for an Order regarding Defendant's OBJECTIONS TO MAGISTRATE

ORDERS.

In support of my Motion, I will rely on the attached Certification with supporting law and

Exhibits.

IRA HELLER LAW, LLC

Ira W. Heller, Esq.
1317 Morris Avenue
Union, NJ 07083
Tel: 908-275-8626
Email: iwhelleresq@gmail.com

I, IRA W. HELLER, hereby certify that a copy of my motion was served via email on 10/20/23

upon JOHN DOE by way of his counsel:

Daniel Szalkiewicz, Esq.
Daniel Szalkiewicz & Associates, P.C.
23 West 73rd Street, Suite 102
New York, New York 10023
Email: Daniel@lawdss.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | **CASE NUMBER:** |
| | ) | **2:21−CV−20706−MEF−ESK** |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BAILE SEBROW** | ) | **DEFENDANT'S OBJECTIONS TO** |
| | ) | **MAGISTRATE JUDGE'S ORDERS** |
| | ) | |
| **Defendant** | ) | |
| | ) | |

To:    Hon. Michael E. Farbiarz          Daniel Salkawicz, Esq.
       US District Court                 Szalkiewicz & Associates, P.C.
       Frank R. Lautenberg Courthouse Building    23 West 73rd Street, Suite 102
       2 Federal Square                  New York, N.Y. 10023
       Newark, N.J. 07102

# TABLE OF CONTENTS

| | |
|---|---|
| TABLE OF CONTENTS ............................................... | i |
| TABLE OF AUTHORITIES .......................................... | ii |
| PRELIMINARY STATEMENT ....................................... | iii |
| STANDARD OF REVIEW ............................................ | 9 |
| ARGUMENT ........................................................ | 10 |
| CONCLUSION....................................................... | 33 |

# TABLE OF AUTHORITIES

**Cases**

*Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)          9
*Gage v. Warren Tp. Committee & Planning Bd. Members*,
    463 Fed. Appx. 68, 72 (3d Cir. 2012)          10
*Duhaney v. Attorney General of U.S.*, 621 F.3d 340 (3d Cir.2010)          10
*CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999)          10
*Churchill v. Star Enterprises*, 183 F.3d 184, 194 (3d Cir. 1999)          10
*United States v. Athlone Indus.*, 746 F.2d 977, 984 (3d Cir. 1984          11
*Doe v. Megless*, 654 F.3d 404, at 408 (3d Cir. 2011)          13
*Doe v. Borough of Morrisville*, <u>130 F.R.D. 612, 614</u> (E.D. Pa. Apr. 17, 1990)          13

**Statutes**

28 U.S.C.§ 636(b)(1)(C)          8
29 CFR § 18.51          17

**Other Authorities**

Fed. <u>R</u>. Civ. P. 72(b)(3)          8
FED. <u>R</u>. C IV. P. 10(a)          12, 14
Fed. R. Civ. P. 4(e)          14
Fed <u>R</u>. C IV. P. 15          16
Fed, Civ, <u>P</u>. 26(b)(2)          17
Fed. <u>R</u>. Civ. P. 37(b)(2)          19

**PRELIMINARY STATEMENT**

The Defendant, Ms. Betty Sebrow ("Defendant"), is by profession a highly reputable and trusted Jewish matchmaker, relationship coach, Jewish singles event organizer, educator, lecturer and columnist. Defendant was married for 28 years and was widowed in late May of 2017, after her beloved husband succumbed to a long battle with cancer. Defendant currently resides in Long Island, New York together with her two children.

The Plaintiff, who is referenced in this matter as "John Doe" ("Plaintiff") is by profession a captain of the financial investment industry, currently a leading wealth management advisor for Morgan Stanley, who has been personally named to Forbes' list of Best-In-State Wealth Advisors for 2022 and 2023; the "XXXX Team" (redacted due to Plaintiff's last name referenced in Team title), with Plaintiff at the helm, was named to Forbes' list of Best-In-State Wealth Management Teams for 2023. Plaintiff became a chaplain in 2023, following the rigorous intellectual, mental and physical process for the United States Chaplain Corps (the USCC is a private organization committed to easing suffering and supporting people in times of need. Founded in 2020 by director-general Mendy Coën, it maintains a roster of chaplains who are ready to provide emotional support to people from various walks of life.). Plaintiff sits on the Board of the Friars Club of Manhattan and fancies himself as one who hob knobs with celebrities, political figures and other industry leaders. Plaintiff was married and divorced three times, and is believed to have had a fourth union in which he was married only by Jewish religious contract ("Ketuba"), from which he is believed to have obtained a religious divorce ("Get"). Defendant reports having four children with his three legal wives, and resides in the

3

Township of West Orange, in the State of New Jersey. Plaintiff considers himself what is known as a "ba'al teshuvah," meaning, having been born a secular, non-affiliated Jew, he later in life adopted an Orthodox Jewish lifestyle. Plaintiff considers himself a member of the West Orange Jewish Community, where he attends synagogue, and participates in other community life and functions. Being unmarried, Plaintiff is known to be a frequent participant at various "Jewish Singles" events for older singles. In these circles, over recent years, the Plaintiff has developed a reputation for taking sexual advantage of middle-aged single women.

On or about December 23, 2017, after attending a Jewish single's event in Long Island that the Defendant helped organize, the Plaintiff approached the Defendant and proposed that he assist her in promoting more upscale single's events and create a fund for older female singles who could not afford to attend these events. The Plaintiff suggested that they meet in a New York City hotel to discuss this potential "business proposition." Defendant took an Uber to the Carlyle Hotel in New York City from Long Island, and spoke to the Plaintiff from the car. Plaintiff asked the Defendant if she wanted him to order her a drink, since the bar was crowded and it may take some time to obtain service. Defendant said to order a Diet Coke. When the Defendant arrived, the Plaintiff handed her the drink, and told her to "drink slowly." Shortly after taking her first sips, Defendant recalls feeling her head becoming heavy, her vision blurred, and the room began to spin. The next thing Defendant remembers is waking up in the back of Plaintiff's car, all of her clothing had been removed, and her legs were spread apart. As an Orthodox Jewish Woman, the wig with which she covered her hair in public was removed and stuck in the crack of the car seat. She looked down and saw that there was semen dripping down her leg as well as other parts of her body. She then heard Plaintiff's voice telling her to "get dressed."

4

Defendant filed a police report regarding this date rape incident, and the investigation is still open. The Plaintiff called an Uber, and the Defendant arrived home in the wee hours of the morning, traumatized and disoriented. The Defendant had a commitment to attend a single's event, which she helped organize, the following evening, on December 24, 2017, and notwithstanding her still being shocked and traumatized from the events of the night before, kept her commitment. To the Defendant's consternation, the Plaintiff showed up at the event, and approached the Defendant. The Plaintiff motioned the Defendant and said to her, "I want to show you something." The Plaintiff then pulled a packet of pictures out of his pocket, which depicted the Defendant naked, positioned in various positions and photographed from every possible angle to maximally reveal each one of her body parts. The Plaintiff then put the pictures back into his pocket and said to the Defendant "blow me, if you refuse, everyone is going to see these pictures."

From that time, until the beginning of October 2018, the Plaintiff freely employed the leverage of the threat of revealing those photographs to coerce the Defendant to do his bidding, on command. During this time, the Plaintiff virtually held the Defendant hostage, to meet him at hotels upon his command when he wanted sex, and even held her on phone calls to provide "phone sex" whenever Plaintiff felt the desire. During approximately three of these sexual encounters, the Plaintiff uttered the specific Hebrew declarations a husband makes to his wife at the time of betrothal, thus creating a legitimate question as to whether they were married according to Jewish Law. Due to the fact that a woman who is married by Jewish Law needs a "Get" (Jewish Divorce document) to be freed from the marriage, women cannot marry another man until they receive a Get. This has created many serious issues of woman to whom husbands refuse to provide a Get, which then leaves them as an "Aguna," which means "a chained

woman." In a questionable situation such as that, a Rabbi with special expertise in this area needs to be consulted to determine if a Get will be necessary. The Defendant had to then consult with a very prominent Rabbi, and the initial information she received regarding her situation was that what the Plaintiff had done had created a questionable marriage, and a "Get" was going to have to obtained from the Plaintiff.

This abusive and controlling relationship continued until early October of 2018, when was when the Defendant had her last contact with Plaintiff. After that time, the Defendant made no attempts whatsoever to make any contact with the Plaintiff. Nevertheless, the Plaintiff subsequently went on a deliberate campaign to destroy the Defendant's personal and professional reputations by spreading false information about her. The potential effect, given the fact that she relied upon her reputation to work as a matchmaker and columnist in the Orthodox Jewish community, could be potentially devastating to every aspect of her life.

After not having had any contact with Plaintiff for over two and half years, confident that the Plaintiff was effectively out of her life, on or about July 15, 2021, Police arrived at the Defendant's home in Long Island and was served with a Temporary Restraining Order ("TRO") from the Plaintiff. In his TRO Complaint, the Plaintiff alleged harassment due to the Defendant allegedly posting a Twitter Page stating: "XXXX, Date Rapist" (name redacted as per Court Order). Shortly thereafter, the Defendant was served with a warrant for her arrest, issued by the same Judge in the West Orange, N.J. Municipal Court, charging the Defendant with contempt for having violated the TRO. The "evidence" presented by the Plaintiff involved an email he received from twitter (info@twitter.com), not from the Defendant, which was a posting from the Defendant's dating cite which the Plaintiff would have had to sign up for to receive. Accordingly, this notice simultaneously went out to thousands of other people who signed up to

receive automatic twitter postings from the Defendant's Twitter page. Defendant's Counsel then contacted the Essex County Prosecutor's office regarding the arrest warrant, which was investigated and summarily dismissed as completely baseless. The Defendant then filed a Cross Temporary Restraining Order Complaint against Plaintiff alleging harassment for his false accusations, and alleging criminal coercion, sexual assault, criminal sexual contact, and harassment for the sexual assault which occurred in December of 2017.

The hearings on the dual TRO filings are currently pending in the Domestic Violence Division of the Family Part of the Superior Court of New Jersey in Essex County. Shortly after the matter was docketed, the Plaintiff violated court rules in issued document subpoenas to numerous entities under the DV Caption, without notice to opposing counsel, improperly seeking information about Defendant. "DV Matters," as they are referred to, are under the Prevention of Domestic Violence Act of New Jersey of 1991, and are considered summary proceedings requiring leave of the Court and special permission to issue document subpoenas. Not only did Plaintiff not ask for leave of the Court, but deliberately did not notice opposing counsel in order to obtain the information before the Court found out. The Plaintiff did illicitly obtain many personal documents of the Defendant, and retroactive Motions to Quash needed to be filed. The Plaintiff was found to have violated the Court rules, and was accordingly sanctioned.

`       On or about September 1, 2021, the Plaintiff filed a lawsuit in the Supreme Court of New York, Nassau County, against Defendants Gabriel Solomon, Michael Kogan, Tanya Kogan, and MBTA Management LLC. Though the Nassau County Complaint is saturated with allegations against Ms. Sebrow for perpetrating Defamation against the Plaintiff, the Plaintiff did not even name Ms. Sebrow as a Defendant in this lawsuit. In fact, the Defendants that were named in that lawsuit were a result of the Plaintiff having retained experts to locate the party or parties

responsible for the negative postings about the Plaintiff, who found the named Defendants to be the parties responsible for the postings, and NOT Ms. Sebrow. Nevertheless, the Plaintiff still persisted in saturating his Complaint with accusations against Ms. Sebrow, because his interest in targeting Ms. Sebrow was far greater than his interest in finding the perpetrators of the postings. Supporting this presumption is the fact that notwithstanding the Plaintiff having found the people responsible, he has still not pursued the litigation against them, more than two years later. However, the lawsuit has not been dismissed, which it is reasonable to assume the Plaintiff has deliberately kept active as a means of leveraging the Defendant's to point the finger at Ms. Sebrow as being the responsible party.

In the matter currently pending in Essex County, the Plaintiff called Mr. Michael Kogan, Defendant in the Nassau County matter, as a witness. As per Mr. Kogan's testimony, he attested to having been the party who posted the defamatory information on the internet about the Plaintiff, and performed "optimization" in order to have the information come up more prominently and with more frequency. Mr. Kogan also testified that he was NOT hired by Ms. Sebrow to perform this service, but rather, by a party named Nadia Kiderman. Mr. Kogan never had any contact with Mr. Sebrow, nor did he even know who she was. All of his instructions came from Ms. Kiderman, who Mr. Kogan testified that she wanted him to post these things for "a friend," in order to deter him from abusing more women in the future. Accordingly, evidence is already before the Court that Mr. Michael Kogan, not Ms. Baila Sebrow, posted the defamatory postings on the internet that form the basis for the Plaintiff's accusations against Ms. Sebrow.

Ms. Kiderman, who also testified at length, testified that she did not communicate Ms. Sebrow's name to Mr. Kogan as the person on whose behalf she wanted the postings. Ms.

8

Kiderman's testimony was extremely telling, displayed a penchant to blame Ms. Sebrow for "making her do it," but her testimony was fraught with numerous contradictions and was highly incredible. Furthermore, having been found out as having been the person who solicited Mr. Kogan as the person responsible for making the defamatory postings, Ms. Kiderman is in an extremely vulnerable position, with a very high motivation to lie. Furthermore, there was clearly enough information to implead Ms. Kiderman as a Defendant into this matter, but she was not. This fact alone sheds very strong suspicion that Ms. Kiderman was deliberately not pursued by the Plaintiff in return for turning the blame onto Ms. Sebrow, which is unequivocally what she did.

Accordingly, as more facts regarding this alleged act of defamation continue to surface in the Essex County matter, the clearer it becomes that the Plaintiff's allegations are not related to an act of defamation by the Defendant, but rather, a personal vendetta of the Plaintiff against the Defendant. With each new revelation, more evidence comes to the fore revealing a deliberate misrepresentation of the facts, manipulation of evidence, all of which will be amply revealed in the Essex County matter, and will be equally revealed in this Federal matter should it proceed to trial. To date, the Plaintiff has heavily relied on crazy, unhinged text messages he alleges to have received from the Defendant, which he is utilizing in his efforts to characterize her as a crazy, obsessed stalker. Plaintiff's counsel has already inundated this Court with this alleged "evidence," whose authenticity has yet to properly challenged and vetted, but it absolutely will be thoroughly vetted, and exposed as fraudulent. This Court must accordingly not permit itself to be persuaded by this, which the Defendant intends to thoroughly address, in detail, in a future filing.

**STANDARD OF REVIEW**

This Court must review "de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). See also 28 U.S.C.§ 636(b)(1)(C) which states, "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."

## ARGUMENT

## PROCEDURAL FAILURES AND OBJECTIONS THERETO

On December 23, 2021 Plaintiff filed a Complaint against the Defendant in this Court (ECF 1) in violation of the Res Judicata Doctrine. Plaintiff had and still has an active ongoing lawsuit in Nassau County, New York stemming from the same allegations made before this Court (see **EXHIBIT A**) Nassau County is the proper venue to exercise jurisdiction over the present defendants named therein and Defendant in this matter, Betty Sebrow, who is most curiously not a named defendant in that matter, despite the numerous allegations enumerated therein, naming her as the culprit for the same wrongs Plaintiff complains of in this current Federal District Court Complaint, filed exclusively against Ms. Sebrow.

The doctrine of Res Judicata bars duplicate litigation involving the same parties, same cause of action and/or same material facts. It "protect[s] litigants from the burden of relitigating an identical issue with the same party . . . and promot[es] judicial economy by preventing needless litigation." *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007). "The doctrine of

claim preclusion is central to the purpose for which civil courts have been established, the

conclusive resolution of disputes, and seeks to avoid the expense and vexation of multiple

lawsuits, while conserving judicial resources and fostering reliance on judicial action by

minimizing the possibility of inconsistent decisions*." Gage v. Warren Tp. Committee & Planning*

*Bd. Members*, 463 Fed.Appx. 68, 72 (3d Cir. 2012).

Res Judicata precludes a party from initiating a second suit against the same adverse

party based on the same cause of action as the first suit, but also to claims that could have been

brought in a previous action. *Duhaney v. Attorney General of U.S.*, 621 F.3d 340 (3d Cir.2010).

The Third Circuit, which includes this court, takes a broad view of what encompasses the same

cause of action, "focusing on the underlying events of the two actions." *CoreStates Bank, N.A. v.*

*Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999); *Churchill v. Star Enterprises*, 183 F.3d 184,

194 (3d Cir. 1999). Causes of action are the same when there is an "essential similarity of the

underlying events giving rise to the various legal claims." *United States v. Athlone Indus*., 746

F.2d 977, 984 (3d Cir. 1984). The district courts should "focus on the central purpose of the

doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a

single suit. Id. In reviewing as to what constitutes the same causes of action, a court should

consider: 1) if the acts complained of and the demand for relief are the same; 2) if the theory of

recovery is the same; if the witnesses and evidence necessary for trial are the same; and if the

material facts alleged are the same. (*Athlone*, 609 F.3d at 261).

In the case at bar, Plaintiff and his attorneys knowingly violated this rule to purposely

weaponize the legal system against Defendant in order to harass and intimidate in retaliation for

Plaintiff's false perception that she wronged him. They filed the Nassau County Complaint in

September of 2021 stemming from the same facts and circumstances as those alleged in the

11

federal lawsuit brought three months later in December of 2021. The preliminary statements, about 70-80 percent of allegations and causes of action are virtually identical. The reliefs sought are the same, ie, damages for acts of harassment, defamation, and tortious interference; compensatory damages for acts of harassment, defamation, and tortious interference allegedly committed by Ms. Sebrow. Also demanded are compensatory damage in an appropriate amount, for injury resulting from loss of current and prospective income, emotional distress, and loss of reputation; interest, costs, and reasonable attorneys' fees incurred by the Plaintiff, among other reliefs. Plaintiff and his attorneys have been utilizing evidence obtained in the Federal matter, in order to gain unfair advantage in the ongoing matter in the Essex Count matter. The key defendants in Nassau County matter and other actors involved will be witnesses in this matter. Lastly, Defendant lives in Nassau County, having to defend a federal lawsuit in New Jersey has been an undue burden for her financially and physically. There is absolutely no valid reason that the Plaintiff and his attorneys did not, or cannot implead Ms. Sebrow into the Nassau County case which is still active. It is clear then that this Federal matter was initiated not with the intention of obtaining justice, but with a clear intent to harass, intimidate and overwhelm the Defendant. It is noteworthy for this Court to take judicial notice of the fact that three of the four defendants in the Nassau County action live or run their business out of Pennsylvania, yet they did not exercise the same diversity jurisdiction over these defendants as they did over Ms. Sebrow to bring the lawsuit in Federal Court (see paragraph 13 of the initial Complaint under docket # 2:21-cv-20706).  This serves to bolster the Defendant's premise that the Plaintiff and his team of attorneys have calculatingly weaponized the legal system to terrorize the Defendant as a form of attack for some perceived wrong, and to permanently neutralize and disable her in a way that she would no longer present a threat to him.

The Plaintiff's federal lawsuit Complaint identified him as "John Doe" in violation of Federal <u>Rules</u> of Civil Procedure. To preserve the presumptively public nature of judicial proceedings, under FED. <u>R</u>. C IV. P. 10(a), "The title of the complaint must name all the parties". In order for Plaintiff to proceed pseudonymously Plaintiff and his attorneys had to seek leave of the Court, but they did not. This Court erred by accepting Plaintiff's initial Complaint filed on December 23, 2021.

On February 8, 2023, some fifteen months later, Plaintiff and his attorneys finally filed a Motion for Leave to Appear Anonymously and Seal the Record (ECF 34). On February 10, 2023, deadline was set for the Motion to be heard on "3/6/2023 before Judge Susan D. Wigenton. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required." Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (qa.) (Entered: 02/10/2023)". Yet Hon. Magistrate Judge Edward S. Kiel, later that day, entered an Order granting their Motion (ECF 37). The Defendant was afforded no opportunity whatsoever to respond to this motion. Magistrate Judge Kiel's Order also errantly recites that Defendant made a submission and oral argument was held on this matter.

> " This matter having come before the Court on the motion of Plaintiff John Doe, by his counsel, Daniel Szalkiewicz & Associates, P.C., for Leave to Proceed under Pseudonym and to restrict access to Docket No. 13; and the Court having considered the submissions of the parties and the arguments of counsel, and for good cause shown,"

Defendant's counsel, immediately upon receipt of the Order, contacted both Magistrate Judge Kiel's Law Clerk to inform her of what was obviously an error. The Law Clerk stated that Magistrate Judge Kiel felt it was an urgent application requiring immediate action. This was an inexplicable violation of the Defendant's right to due process, and I fail to understand the

urgency of the Plaintiff's Motion to Proceed under a Pseudonym, when he had been proceeding as John Doe since the inception of the case (approximately 15 months), which as per the rules, seemingly improperly. How can this action by the Court be explained?

Even if we were to set aside our lack of opportunity to respond to the Motion, there was an analysis that needed to be performed as per Court procedures prior to granting this motion. As the Court has ruled in these matters, "[a] plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings, the mere allegation a litigant may suffer embarrassment or economic harm will not suffice *Doe v. Megless*, 654 F.3d 404, at 408 (3d Cir. 2011). Instead, a plaintiff must establish that the fear of severe harm is reasonable. The Courts must then determine whether the "litigant's reasonable fear of severe harm outweighs the public's interest in open judicial proceedings." Id. In *Megless*, the Third Circuit upheld rare and exceptional cases where litigants have been permitted to remain anonymous include "cases involving abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Id*. at 408 (citing *Doe v. Borough of Morrisville*, <u>130 F.R.D. 612, 614</u> (E.D. Pa. Apr. 17, 1990)).". The *Megless* Court also endorsed a nine-factor balancing test to be used by District Courts considering whether to allow a litigant to proceed anonymously. Just as significant is the fact that the District of New Jersey is prone to dismiss John Doe pleadings.

Here, the Plaintiff's claim of fear is simply unsubstantiated and unfounded. Plaintiff had no problem filing the Nassau County Complaint in his own name. Plaintiff's name is repeated at least a hundred times in that document. This fact also furthers Defendant allegation that Plaintiff and his attorneys are using the federal court case to harass, intimidate and embarrass the

Defendant in retaliation for Plaintiff's false perception that Defendant wronged him in some manner.

Similarly, this Court lacked basis to accept Plaintiff's complaint which identified Defendant by a nickname rather than her legal name in violation of FED. R. C IV. P. 10(a). Despite knowing Defendant's proper legal name, Plaintiff and his attorneys chose to purposely use her Hebrew name to harass her personally and professionally.

Defendant was never properly personally served as dictated by Rule 4 of the Federal Rules of Civil Procedure. Plaintiff first sought waiver of service of his initial complaint (ECF 3) without any justification. However, that initial complaint was dismissed because Plaintiff allowed it to lay dormant beyond the statutory limit. After reopening the matter, Plaintiff still did not properly serve Defendant, using the same original deficient process of service, which certified that the Summons and Complaint were stick on the door of her purported address. (ECF 8) Whether exercising Fed. R. Civ. P. 4(e), subsection (1) or (2), personal service is required. Accordingly, the Plaintiff's method of service upon Defendant is not considered acceptable and proper service, yet this Court allowed the case to proceed.

After Defendant appeared in the matter and her attorney's information was clearly provided in the Answer and Counterclaim (ECF 13), this Court sent all correspondence and notifications to an outdated firm in NY causing them to fail to respond or appear due to this Court's error which resulted in .them also being improperly sanctioned for said failure. It took months for the Court to straighten out their error.

Defendant and her attorney were severely sanctioned (ECF 56) for failing to appear but when Plaintiff and his attorneys did not appear either and there were no consequences to them (ECF 49).

Defendant and her attorney were sanctioned over $10,000 for non appearance at the Initial Conference on November 10, 2022 even though counsel was still not receiving notices from the Court. Plaintiff's counsel knew of the conference from a notice that was forwarded to him from opposing counsel, and appeared. The Order stated that a settlement conference would take place and parties with authority to settle needed to attend. The Defendant did not attend, but counsel had full authority, and Defendant would have been available by telephone as necessary. The treatment of the Defendant and counsel for this offense was extraordinarily punitive and unfair.

Almost every issue in this matter has been litigated by letter from Plaintiff's counsel ECF 66, 60, 54, 53, 52, 49, 42, 35, 29, 28, 22, 21.

**Full docket text for document 55:**

TEXT ORDER: The parties are directed to refrain from filing any further applications and letters abiding the Court's resolution of the parties' numerous pending applications and requests to the Court. So Ordered by Magistrate Judge Edward S. Kiel on 5/15/2023. (sms)

Despite Magistrate Judge Kiel's own directive on May 15, 2023, the Court continued to permit Plaintiff's counsel to litigate by letter and filings without any limit, presenting unchallenged "evidence" as support, which clearly influenced the thing of the Court and creating disadvantage and negative light in the eyes of the Court vis a vis the Defendant.

Again, Plaintiff is still being permitted to litigate by letter despite the directive against it. Plaintiff's attorney sent a letter requesting permission to amend their Complaint without a motion, and without the Defendant having had the opportunity to object. Nevertheless, the Court issued an Order granting permission for him to do so. (ECF 56)

16

Amending a Complaint is governed by Fed R. C IV. P. 15. Amending a Complaint at the point and time Plaintiff requested permission to do so is governed by subsection (d) requiring a motion. Defendant was once again denied her rights and due process by Magistrate Judge Kiel simply issuing orders absent the following of proper procedures.

Magistrate Judge Kiel even found Defendant guilty of perpetrating a fraud upon the Court solely based upon the letter submitted by Plaintiff's attorney. A judge is required to make findings of fact and conclusions of law, which can only be accomplished following a hearing or a trial. The Defendant's Fourteenth Amendment Right to Due Process has been unfortunately violated repeatedly throughout this litigation.

The Plaintiff and his legal team clearly knew that the Defendant was not the one who posted the defamatory information about the Plaintiff, but they nevertheless brought this case armed with that knowledge. They knew that Ms. Sebrow was not the person who solicited the services of Mr. Kogan to make the internet postings about the about Plaintiff, but they pursued it nevertheless. As per Mr. Kogan's testimony in Essex County on June 23, 2023 and June 27, 2023, he testified that he met personally with Mr. Salkawicz on at least 3 occasions beginning in October of 2021 at a time and place arranged by his attorney, shortly after he was served with the Nassau County Complaint. Mr. Kogan informed Mr. Szalkiewicz that he had not had any contact with Ms. Sebrow, had not been hired or paid by Ms. Sebrow, nor had he even heard of Ms. Sebrow. Knowing that Plaintiff and his counsel were aware of this information, but yet aggressively pursued this litigation is reprehensible conduct on their part. Accordingly, the initial actions of this Court, signaling a wrongful rush to judgement to the Defendant's detriment is highly prejudicial.

17

On June 21, 2023 Magistrate Judge Kiel issued a Text Order (ECF #67) denying Defendant's Request for what can be objectively deemed as a reasonable modification of the Court's Discovery Order of June 2, 2023 (ECF #65) which required the turnover of all of the Defendant's electronic devices with their passwords so they may be cloned by Defendant's counsel. The scope of this Order goes well beyond what is necessary in this matter, while violating the Defendants privacy rights, violating attorney client privileged information, exposing privileged and private information of the Defendant's clients which is contractually protected.

Discovery limitations exist under Fed, Civ, P. 26(b)(2), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case; the Court should limit discovery based upon "the importance of the issues at stake in the litigation, and the importance of the proposed discovery" in resolving the issues. It also exists under 29 CFR § 18.51 which states: **"**Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the judge may order discovery of any matter relevant to the subject matter involved in the proceeding. Relevant information need not be admissible at the hearing if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."The scope of the discovery ordered by Magistrate Judge Kiel to be turned over to the Plaintiff extends far beyond the restrictions imposed by the Court Rules.

It is also important that the Court take judicial notice of the fact that Plaintiff has already nefariously used the discovery that has been obtained via the Federal proceeding to intimidate

witnesses, and spread vile and malicious rumors about the Defendant to impugn her personal and profession life, while continuing his malevolent harassment of her. Plaintiff, through the discovery he has obtained thus far, has contacted various personal and professional contacts of the Defendant's, attempting to intimidate them from testifying in the ongoing matters. Plaintiff's counsel has made calls to Defendant's friends and professional contacts, showing them evidence we intend to show has been thoroughly falsified, in order to ruin the Defendant's personal and professional reputation. This behavior is only bolstered by such far reaching discovery Orders which will afford the Plaintiff leverage to continue and further expand his mischief, which must not be condone by this Court, and should most certainly not be facilitated by this Court. The scope of the discovery must therefore be reasonably narrowed and appropriately limited.

**Full docket text for document 67:**
TEXT ORDER: The Court is in receipt of defendant's response of June 20, 2023 (Response) (ECF No. [64]) and plaintiff's reply of June 21, 2023 (ECF No. [66]) to the order to show cause entered on June 12, 2023 (ECF No. [61]). Defendant's request in the Response for "some reasonable modification" of the Court's order of June 2, 2023 (ECF No. [65]) is DENIED. Defendant shall promptly, albeit although already beyond the time required, comply with the June 2, 2023 order. So Ordered by Magistrate Judge Edward S. Kiel on 6/21/2023. (sms)

Magistrate Judge Kiel's Text Order references Defendant's Response (ECF No. 64) to the Order to Show Cause entered on June 12, 2023. This was not the response to the OTSC, but rather, it was the letter withdrawing defendant's Motion for Reconsideration. We cannot be certain if the Court ever saw or considered Defendant's response to the OTSC filed under ECF No. 65. Magistrate Judge Kiel's Text Order references his June 2, 2023 Order as ECF No. 65 which may actually correctly be ECF No. 59.

**Full docket text for document 61:**
TEXT ORDER: In consideration of the information provided in plaintiff's letter of June 8, 2023 (ECF No. [60]), defendant is directed to show cause by June 19, 2023 why defendant's answer should not be stricken for defendant's: (1) continuing violations of

> Court orders (*see* ECF No. [56]); (2) failure to make payment of the sanction imposed on
> May 24, 2023 (*id.*); and (3) failure to coordinate in good faith with plaintiff to comply
> with the Court's order of June 2, 2023 (ECF No. [59]). So Ordered by Magistrate Judge
> on 6/12/2023. (sms)

ECF No. 60 was entered as "Motion for Leave to File," which would indicate to the recipient

that the timeline for said filing would be guided by L.Civ.K. 7.1 and L.Civ.R. 78.1, which

dictates that the motion be made returnable at least 24 days after the date of filing and thus afford

the Defendant certain rights and options to respond.

The document was actually a letter requesting permission to file an Order to Show Cause

on behalf of the Plaintiff, and not an actual Order to Show to Cause. However, it seems that

Magistrate Judge Kiel treated it as such. An Order to Show Cause must follow a certain format

and include certain statements and affidavits in accordance with Federal Rule of Civil Procedure

65. It also affords certain rights and options to respond, all of which were afforded, while the

Court accepted litigation by letter on behalf of the Plaintiff. More egregious is that Plaintiff's

letter only asked for permission to file an OTSC, which is also improper as Plaintiff's letter is

clearly designed to circumvent proper procedure and obtain reliefs via letter to the Court.

In Plaintiff's June 8, 2023 letter (ECF No. 60) upon which the Court based its Order of

June 12, 2023 (ECF No. 61) merely requests permission to file an OTSC based on Fed. R. Civ.

P. 37(b)(2) to enforce his own award of legal fees, which is hardly an emergent issue, as

monetary related reliefs are generally prohibited as the subject of an OTSC. If Plaintiff wanted to

file a truly emergent application permission would not have been necessary, as it could have

simply been filed. However, Plaintiff's request once again circumvented proper procedure.

Plaintiff's letter requesting permission to file an OTSC only requested enforcement of

Mr. Szalkawicz's legal fees award (see first paragraph and last sentence on page 2), with the rest

of the letter returning to ligating by letter, making legal arguments supported by alleged evidence

which the Defendant has had no opportunity to challenge. Nevertheless, the Court still turned the letter into an OTSC, and also expanded the reliefs sought. There was no mention of a request to strike Defendant's answer in Plaintiff's letter. Accordingly, the Court surpassed the Plaintiff's request advocating for a position which Plaintiff's own attorney did not even request.

Magistrate Judge Kiel did not permit the Defendant to respond Plaintiff's June 21, 2023 letter (ECF 66) before issuing his Text Order of the same date (ECF 67), which severely disadvantaged the Defendant and once again compromising her due process rights.

The Fourteenth Amendment provides "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"

As applied to civil proceedings, due process requires that the procedures by which laws are administered must be evenhanded, so that individuals are not subjected to the random exercise of judicial power. An individual is also entitled to an impartial tribunal. An unbiased decision maker is required to guarantee that life, liberty, or property will not be taken on by reason of an erroneous or distorted conception of the facts or the law. The Due Process Clause preserves a person's fundamental right to fairness in a civil proceeding by ensuring that no person will be deprived of their interests in the absence of a legal proceeding in which they may present their case with assurance that the adjudicator is not predisposed to making presumptions against them prior to having heard all the evidence from both sides. The function of the Due Process Clause is to guarantee accurate fact finding. It instructs the trier of fact as to the degree of discretion the arbiter should have as to the correctness of factual conclusions against a party. If a presumption is unreasonable, arbitrary, and operates to deny a person the fair opportunity to

repel it or to present facts pertinent to one's defense, is a violation of the Due Process Clause and should therefore not be tolerated in our Courts of Justice.

In the instant case, Plaintiff's counsel has garnered much space in this litigation to weaponize this proceeding as an arm of attack upon the Defendant. In virtually every one of his submissions to this Court, the Plaintiff has spewed entirely unfounded presumptions about the Defendant's character and even Defendant's counsel's character as well. The recent Order, which was thankfully rescinded, had deprived Defendant's counsel of the opportunity to file documents on the Court filing system, on the premise that some documents that were not properly redacted were intentionally submitted as such, which is patently false. In conjunction with that Order, Defendant's counsel was Ordered to send his documents first to Plaintiff's counsel, who would review them and charge legal fees to Defendant's counsel for his time. This Order, in addition to the prior unconscionable Order of sanctions of close to $11,000, subsequent to the Defendant not being present for a settlement conference, at which Defendant's counsel was present with explicit settlement parameters and phone access to the client (with language in the Order that was not thoroughly clear). It has already been made clear to this Court that the Defendant is destitute with absolutely no access to funds, while I have been proceeding as counsel unpaid since February of 2022. The Plaintiff has vastly superior resources and is ably funding two law firms in two simultaneous matters, both aimed at overwhelming the Defendant and Defendant's counsel. Because I have been unwilling to leave the Defendant undefended, my solo legal practice, in which I have the assistance of but one paralegal, has been running at a deficit for months as a result of the Plaintiff's legal onslaught. Now, having been saddled on top of all this with colossal economic sanctions, my back is being broken, and this Court should not permit itself to be exploited in this fashion. Accordingly, serious reconsideration of some of the

prior actions of this Court, based upon my objections laid out above, so the unconscionable

bullying can finally stop, and equal justice may proceed.

### CONCLUSION

For the reasons set forth herein, Defendant respectfully request that the Court reject the

findings and recommendations of the Court.

Dated: October 20, 2023

Respectfully submitted,

Ira W. Heller, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOHN DOE,** ) | **CASE NUMBER:** |
| ) | **2:21−CV−20706−MEF−ESK** |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **BAILE SEBROW** ) | **ORDER** |
| ) | |
| ) | |
| **Defendant** ) | |
| ) | |

**THIS MATTER** having been opened to the Court by Ira W. Heller, Esq. appearing on behalf of

the Defendant Betty Sebrow, pursuant to Fed. R. Civ. P. 72(b)(3) and the Court having

considered the papers submitted herein, this matter being decided under Fed. R. Civ. P. 78 and

for good cause shown;

      IT IS on this _____ day of _____, 2023

1. **ORDERED** that the above application is **GRANTED;** and

2. the following Orders of the Magistrate Judge are hereby vacated:

_____

_____

_____

.

_____
                                                     U.S.D.J.