# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN DOE,**<br><br>           Plaintiff,<br>    v.<br><br>**BAILA SEBROW**,<br><br>           Defendant. | Case No. 2:21-cv-20706 (MEF) (SDA)<br><br><br>**ORDER ON MOTION TO AMEND** |

      **THIS MATTER** having come before the Court on the Notice of Motion filed by Defendant Baila Sebrow ("Defendant") seeking leave to file an amended answer and counterclaim (ECF No. 113); and Plaintiff John Doe ("Plaintiff") having filed opposition (ECF No. 116); and the Court having heard oral argument on November 6, 2024, and for good cause shown:

      **IT IS ON THIS <u>28th</u> day of <u>March</u>, <u>2025</u> ORDERED THAT:**

1.  Defendant's Motion for Leave to file an Amended Answer and Counterclaim (ECF No. 113) is **DENIED**.

2.  The Clerk of Court is respectfully directed to terminate the Motion at ECF No. 113.


                                ***s/ Stacey D. Adams***          
                                Stacey D. Adams
                                United States Magistrate Judge

*Please see the attached Opinion.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JOHN DOE,**<br><br>          Plaintiff,<br>    v.<br><br>**BAILA SEBROW**,<br><br>          Defendant. | Case No. 2:21-cv-20706 (MEF) (SDA)<br><br>**OPINION**<br><br>**March 28, 2025** |

## STACEY D. ADAMS, UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court by way of Defendant Baila Sebrow's ("Defendant") motion to amend her answer and counterclaim. (ECF No. 113). Plaintiff John Doe ("Plaintiff") opposes the motion. Having carefully considered the parties' submissions and heard oral argument on November 6, 2024, the Court **DENIES** the motion for the reasons set forth herein.

### FACTUAL BACKGROUND[1]

Plaintiff and Defendant are both respected members of the orthodox Jewish Community. Defendant is a matchmaker who connects compatible couples for a fee. (Am. Compl. ¶ 2, ECF No. 58). The two were engaged in a short-term sexual relationship. (*Id.* ¶ 1). Plaintiff claims that, after he ended the relationship, Defendant began sending him threatening, abusive, and emotionally damaging messages, and accusing him of sexual abuse, drugging and raping women, and molesting his own daughter. (*Id.* ¶¶ 5, 89). Defendant sent these messages to Plaintiff's personal and work emails, knowing that Plaintiff's employer had access. (*Id.* ¶¶ 86-87). Plaintiff contends Defendant also used an application to anonymously send harassing messages to Plaintiff. (*Id.* ¶¶ 99-101).

---

[1] The Court gleans the following from Plaintiff's amended complaint and Defendant's proposed second amended answer and counterclaim.

According to Plaintiff, Defendant also disseminated the information to third parties and on social media, such that they were discoverable through a Google search of Plaintiff's name. (*Id.* ¶¶ 118, 120). Defendant also created Twitter and Instagram accounts with "@[Plaintiff's name]DateRape." (*Id.* ¶¶ 126-27). Plaintiff feels he will never find love in the Orthodox Jewish community because Defendant is using her position as a matchmaker to interfere with his relationships. (*Id.* ¶ 7).

As a result of these actions, Plaintiff obtained a temporary restraining order ("TRO") against Defendant pursuant to New Jersey's Prevention of Domestic Violence Act ("PDVA") on July 14, 2024. (ECF No. 39-1). Defendant filed a cross-TRO. (ECF No. 13 ¶ 41). As of the filing date of this motion, those two cases remain pending.

Plaintiff filed the instant complaint against Defendant on December 23, 2021 for harassment under New Jersey and New York law, defamation, intentional infliction of emotional distress, violations of N.J. Stat. § 2C:28-1 and N.J. Stat. § 2C:28-2, tortious interference, and punitive damages. (ECF No. 1). With leave of Court, Plaintiff filed an Amended Complaint on June 1, 2023 adding claims for fraudulent concealment and abuse of process. (ECF No. 58). Specifically, Plaintiff claimed that, after he filed this lawsuit, Defendant destroyed all text messages and created fake emails claiming that Plaintiff raped her. (*Id.* ¶ 10). He also alleged that Defendant altered emails between the parties to make it appear that Plaintiff was harassing her. (*Id.* ¶ 157). Plaintiff alleges Defendant lied in a sworn certification in the pending domestic violence matter, in violation of N.J. Stat. § 2C:28-1 and N.J. Stat. § 2C:28-2. (*Id.* ¶¶ 192-93). He also claims Defendant interfered with his employment as a financial advisor because his employer had access to the emails she sent. (*Id.* ¶¶ 196-207). Finally, Plaintiff alleges Defendant's failure to participate in discovery is tantamount to fraudulent concealment. (*Id.* ¶¶ 224-31).

Defendant denies the allegations in the complaint and, in her proposed second amended counterclaim, seeks to assert counterclaims for fraudulent misrepresentation, false light, defamation, and sexual abuse/sexual assault. Defendant contends she did not want a relationship with Plaintiff. (Prop. Am. Countercl., at 1-2, ECF No. 113). She alleges Plaintiff lured her into Manhattan on December 23, 2017 under the guise of creating a scholarship fund for single women to attend matchmaking events, at which time he drugged and raped her. (*Id.* at 1-2). She also alleges that, while drugged, Plaintiff took explicit photos of her, and then subsequently coerced her into an abusive sexual relationship by threatening to disseminate the photographs. (*Id.* at 3). Defendant alleges that Plaintiff declared certain Hebrew phrases to her that rendered them married under Jewish law, and that a Jewish "Get" is now required for them to divorce. (*Id.* at 4).

Defendant contends the abusive relationship continued until she ended it in October 2018. (*Id.* at 4). Defendant claims that, after the break-up, Plaintiff created fake emails, text messages and internet postings as part of a campaign to ruin her reputation and portray her as a stalker to numerous unidentified individuals. (*Id.* at 5-6). Defendant claims she was shocked when she was served with a TRO in July 2021, several years after the relationship ended. (*Id.* at 7). She feels Plaintiff framed her for violating the TRO by making it appear that she reached out to him on Twitter, resulting in her arrest, when in fact the notice came from Twitter. (*Id.*). Defendant accuses Plaintiff of using the domestic violence proceeding to serve subpoenas, without leave of court,[2] to gain an advantage in this litigation, and notes he was sanctioned for this conduct. (*Id.*).[3] Defendant

---

[2] Discovery in domestic violent matters is permitted only with leave of Court upon good cause shown. *See Crespo v. Crespo*, 408 N.J. Super. 25 (N.J. Sup. Ct. App. Div. 2009); *Depos v. Depos*, 307 N.J. Super. 396 (N.J. Sup. Ct. Law Div. 1997).

[3] Defendant attached the Court Order in her March 1, 2023 letter. (*See* ECF No. 44-5). However, she only included the conclusion from the Superior Court's decision, so the Court cannot ascertain the basis for the sanctions. *Id.* From what was attached, it appears the Superior Court granted

also claims Plaintiff accessed to her email accounts and passwords and used them to send fake emails and texts purportedly coming from Defendant. (*Id.*).

## **PROCEDURAL HISTORY**

Because undue delay and diligence are key components of determining whether to grant Defendant leave to amend, a detailed analysis of the relevant procedural history is necessary. Plaintiff's Complaint was filed on December 23, 2021. (ECF No. 1). It was dismissed for lack of prosecution on May 23, 2022. (ECF No. 5). The Order of dismissal was vacated and the case reinstated on June 21, 2022. (ECF No. 7). Defendant failed to timely answer and default was entered on July 11, 2022. Default was later vacated and Ira Heller, Esq. filed an answer and counterclaim on behalf of Defendant on October 3, 2022. (ECF No. 13).

An Order scheduling an Initial Conference pursuant to Fed. R. Civ. P. 16 was entered on October 19, 2022, setting the Initial Conference for November 10, 2022. (ECF No. 14). Prior to that date, Plaintiff filed a Motion to Dismiss Defendant's Counterclaims on October 21, 2022, but the Initial Conference nonetheless proceeded. (ECF No. 15). Defendant's counsel failed to meet and confer prior to the conference or contribute to the preparation of the joint discovery plan. (ECF No. 17). Defendant's counsel then failed to appear for the Rule 16 Conference on November 10, 2022. (ECF No. 18).

An Initial Scheduling Order was entered by then Magistrate Judge Edward Kiel on November 10, 2022, establishing a discovery schedule and scheduling a settlement conference. (*Id.*). The Order set a deadline of March 17, 2023 to amend the pleadings or add new parties. (*Id.* ¶ 7). The Order specifically required attendance at the settlement conference by "trial counsel [and]

Defendant's motion to quash the subpoena served on Chase Bank and sanctioned Plaintiff in the amount of $3,385.42. (*Id.*).

. . . persons with full settlement authority." (*Id.* ¶ 1). The Order also sanctioned defense counsel for failing to appear, prepare the joint discovery plan and obey the Court's Order. (*Id.* ¶ 2). Plaintiff's counsel was directed to submit an Affidavit of Services, and Defendant's counsel was afforded the opportunity to respond. (*Id.*). Plaintiff submitted the affidavit as directed. (ECF No. 25). Defendant did not respond.

On December 9, 2022, Plaintiff filed a motion to compel discovery because Defendant failed to serve her initial disclosures pursuant to Fed. R. Civ. P. 26 and failed to appear for her deposition. (ECF No. 20). Importantly, Plaintiff's counsel explained that he had personally sent defense counsel a copy of the Court's November 10, 2022 Scheduling Order, and had then spoken with him concerning the discovery schedule. (*Id.*). Defendant did not oppose the motion. Judge Kiel entered an Order on December 12, 2024 requiring Defendant to serve her initial disclosures by December 15, 2022 and comply with the deadlines set forth in the Scheduling Order. (ECF No. 21). The Order also reminded the parties of the upcoming settlement conference on December 21, 2022 and stated that "their collective attendance . . . is MANDATORY." (*Id.*). The day prior to the conference, defense counsel called Judge Kiel's chambers and was again advised that attendance by Defendant at the settlement conference was mandatory.

Despite these reminders, defense counsel appeared without his client at settlement conference, claiming he thought it was a status conference. (ECF No. 33, Tr. 2:19-21). This representation was undermined by the fact that defense counsel submitted a confidential settlement statement in advance of the conference, clearly indicating he knew it was a settlement conference. (ECF No. 23 at 1 n.1). During the conference, the Court addressed the fact that Defendant had not yet served her initial disclosures, as required by two prior Court Orders, or opposed the motion for sanctions. (ECF No. 33, Tr. 6:1-7, 7:8-15). Defense counsel claimed he was not receiving CM/ECF

notices because the Court had an old email address on file for him, but the Court did not find this persuasive because (i) it was defense counsel's responsibility to make sure his email address was updated with the Court as per Local Rule 10.1 and (ii) Plaintiff's counsel had sent him a copy of the notice from the Court. (*Id.* at 2:18-25; 3:1-24). Plaintiff was therefore granted leave to file yet another motion for sanctions and affidavit of services. (*Id.* at 6:19-24; 7:16-20). Defendant was again afforded an opportunity to respond.

On December 27, 2022, Plaintiff filed a motion to strike Defendant's answer, enter default, and conduct an inquest. (ECF No. 24). Plaintiff also filed an affidavit of services on December 28, 2022. (ECF No. 25). On January 4, 2023, Defendant filed an opposition to Plaintiff's affidavit of services, but did not oppose the motion to strike. (ECF No. 31). The response to the affidavit focused entirely on why the Court should not accept the affidavit of Abraham Borenstein, Esq., a lawyer representing Plaintiff in the state court TRO, who was listed as co-counsel. (*Id.*). It did not address why Defendant repeatedly failed to comply with Court Orders. (*Id.*).

On January 26, 2023, the Court conducted an in person hearing during which it (i) heard oral argument on the motion; (ii) addressed the motion to strike and outstanding discovery; and (iii) continued the settlement conference. (ECF No. 38). The Court noted that Defendant failed to timely oppose Plaintiff's pending motions to dismiss and to strike. (*Id.*, Tr. 2:20-25; 3:1-21). The Court explained that, before any opposition would be permitted, Defendant would have to first file an application seeking leave to file the opposition out of time. (*Id.* at 2:25; 3:1-5). Although unopposed, Plaintiff's Motion to Strike was ultimately denied as moot because Defendant served her initial disclosures and discovery responses (albeit without any accompanying document production). (ECF No. 32 ¶ 1). Defendant was required to appear for her deposition on January 31, 2023. (*Id.* ¶ 2). Fact discovery was extended through March 30, 2023. (*Id.* ¶ 3). No other

extensions were requested and, thus, no other deadlines were extended. A status conference was scheduled for April 5, 2023. (*Id.* ¶ 4).

On February 8, 2023, Plaintiff sought leave to file a motion to strike Defendant's answer and for sanctions for spoilation of evidence, perpetration of fraud on the court, and perjury. (ECF No. 35). On February 10, 2023, Plaintiff was granted leave to proceed under a pseudonym. (ECF No. 37). Defendant responded to Plaintiff's request on February 16, 2023. (ECF Nos. 39-40).[4] Plaintiff filed a reply on February 17, 2023, complaining Defendant did not address the failure to engage in ESI discovery. (ECF No. 42).

On March 22, 2023, the Honorable Susan Wigenton, U.S.D.J., issued an Order and Opinion on Plaintiff's Motion to Dismiss Defendant's Counterclaims. (ECF Nos. 46, 47). Judge Wigenton dismissed Count I (fraudulent misrepresentation) and Count II (defamation) *without prejudice*, except to the extent Count II was based upon statements made during litigation, which were dismissed with prejudice. (ECF No. 47 ¶¶ 1, 2). She dismissed Count III (abuse of process) *without prejudice*, insofar as the claim challenged ongoing litigation. (*Id.* ¶ 3). The portion of Count III that related to the improper use of TRO was permitted to remain. (*Id.* ¶ 4).

In rendering her Opinion, Judge Wigenton explained that Defendant's fraudulent misrepresentation claim fell short of Rule 9's heightened pleading standard because Defendant merely set forth the elements of the cause of action and then "assert[ed], in conclusory fashion,

---

[4] Two versions of this letter were filed incorrect as a "Rule 7.1(d)(5) Letter for an automatic extension of the return date . . ." one without Plaintiff's name redacted and one with it redacted. Defense counsel explained he mistakenly believed that the entire case was sealed once the Pseudonym Order was entered. When he realized this was not the case, he refiled the letter with Plaintiff's name redacted. However, in what would become a pattern of violating the pseudonym order, even the redacted version contained Plaintiff's name several times throughout the document. As a result, Plaintiff filed a Motion to Seal. (ECF No. 41). The Court then entered a text order directing Defendant to "use a pseudonym for plaintiff's name – including first, middle and last name – in all filings." (ECF No. 43).

that [Defendant] knowingly and intentionally made false statements upon which third parties relied to [Defendant's] detriment." (ECF No. 46 at 4-5). Similarly, Defendant only recited the elements of a defamation claim, without explaining the nature of the alleged defamatory statements or providing any information that would afford Plaintiff sufficient notice of the allegations against him. (*Id.* at 6). The Court noted that statements made during the course of litigation were immune from defamation. While Judge Wigenton found the allegations concerning the TRO were sufficient to state a claim for abuse of process, she explained the claim was premature to the extent it was based upon the ongoing TRO litigation. (*Id.* at 6). With this guidance, the Court afforded Defendant **thirty (30) days**, or until April 21, 2023, to amend the counterclaims that were dismissed without prejudice. (ECF No. 47). It is this proposed amendment – filed almost **one full year** after the deadline set by Judge Wigenton – that is the subject of the instant motion.

An understanding of what transpired between the date of Judge Wigenton's Order and the present is critical. A conference was held by Judge Kiel on April 5, 2023. (ECF No. 48). Neither party appeared. (*Id.*). The parties were directed to meet and confer regarding expert discovery. (*Id.*). Fact discovery was deemed complete. (*Id.* ¶ 2). Another status conference was scheduled for June 2, 2023. (*Id.* ¶ 3).

The next day, April 6, 2023, Plaintiff's counsel sent a letter explaining he "mis-calendared" the conference and asking the Court to vacate that portion of the Order deeming discovery to be complete. (ECF No. 49). Plaintiff explained Defendant had thus far only produced five emails and uncertified answers to interrogatories. (*Id.*). Defendant purportedly refused to complete her deposition and, despite claiming to have hired an ESI firm, had not produced any analysis or report from the expert. (*Id.*). The sanctions motion also remained outstanding. Defendant was directed to respond to the letter by April 17, 2023. (ECF No. 50). She failed to do so. Plaintiff filed additional

letters on April 24, 2023 and May 9, 2023, informing the Court that Defendant had still not provided ESI discovery or meaningfully participated in the matter in any way. (ECF Nos. 51-52).

In an Order dated May 24, 2023, Judge Kiel imposed sanctions in the amount of $990 to be paid by Defendant's counsel and an in the amount of $9,680 to be jointly paid by Defendant and Defendant's counsel. (ECF No. 56 ¶ 1). Judge Kiel's decision contained examples of the repeated failure of Defendant and defense counsel to attend conferences, meet deadlines and timely file submissions. (*Id.*). The Order granted Plaintiff leave to file an amended complaint by June 1, 2023 to add a claim of fraudulent concealment concerning the allegedly altered or destroyed emails, and extended the time period for Plaintiff alone to engage in additional discovery until June 30, 2023. (*Id.* ¶¶ 3-4).[5] The next in-person status conference was scheduled for June 2, 2023. (*Id.*). Plaintiff filed an Amended Complaint on June 1, 2023. (ECF No. 58).

The June 2, 2023 status conference focused largely on ESI. (ECF No. 70). Defendant was Ordered to turn over her cell phone (which she claimed was not functioning and in the possession of her expert, who had been unsuccessful in extracting any data), computer and iCloud information to Plaintiff's expert by June 16, 2023. (*Id.*, *see also* ECF No. 59). Defendant argued this violated her privacy, but Judge Kiel explained that he had repeatedly given her the opportunity to engage in ESI protocol with Plaintiff but she did nothing to retrieve ESI from her computer, her current cell phone or the iCloud other than provide her old phone to an expert who was unable to extract any information from it. (ECF No. 70). Judge Kiel set June 30, 2023 as the fact discovery end date, and scheduled another in-person conference on July 11, 2023. (*Id.*).

---

[5] The Court did not grant Defendant leave to engage in additional discovery because, at this point, she had not even served discovery requests, nor sought any relief from the Court relating to discovery.

Plaintiff filed sought leave to file an Order to Show Cause on June 8, 2023, after Defendant refused to cooperate meeting with Plaintiff's forensic expert and failed to pay the previously Ordered sanctions. (ECF No. 60). Judge Kiel directed Defendant to show cause by June 19, 2023 as to why her answer should not be stricken for failing to abide by Court Orders, pay the sanctions or cooperate in good faith with the forensic expert. (ECF No. 61).

On June 16, 2023, Defendant filed a Motion for Reconsideration of paragraph 1 of the Court's June 2, 2023 Order, which required her to turn over her devices. (ECF No. 62). The motion was withdrawn on June 20, 2023, because the parties agreed to ESI protocol to safeguard Defendant's privacy. (ECF No. 64). Defendant also filed a response to the order to show cause on June 20, 2023, one day after the Court ordered deadline. (ECF No. 65).[6] One June 21, 2023, the Court denied Defendant's request to modify the June 2, 2023 Order and directed her to promptly comply. (ECF No. 67).

Defendant then sent a letter to District Judge Michael E. Farbiarz on July 5, 2023, ostensibly to appeal Judge Kiel's June 2, 2023 Order. (ECF No. 71).[7] Plaintiff responded on July 7, 2023. (ECF No. 72).

---

[6] The filing once again violated the Pseudonym Order and the Court had to seal it. (ECF No. 68).
[7] This failed to comply with L. Civ. R. 72.1(c)(2), which provides:

> (2) Objections to Magistrate Judge's Proposed Findings, Recommendation or Report
>
> Any party may object to the Magistrate Judge's proposed findings, recommendations or report issued under this Rule within 14 days after being served with a copy thereof. Such party shall file with the Clerk and serve on all parties written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection. Such party shall file with the Clerk a transcript of the specific portions of any evidentiary proceeding to which objection is made. A District Judge shall make a de novo determination of

Defendant filed an amended answer and counterclaim on July 7, 2023, almost three months after the deadline set by Judge Wigenton and after the time period to respond to the Amended Complaint had expired. (ECF No. 73).[8] It was therefore struck as untimely on July 10, 2023 because "Defendant failed to comply with Federal Rule of Civil Procedure (Rule) 12 and did not seek an extension under Rule 6 or Local Civil Rule 6.1 to file a responsive pleading out of time." (ECF No. 76). The Order further directed that "[i]f [D] efendant seeks to file an untimely answer and counterclaim, [D]efendant shall file a formal motion complying with Rule 6." (*Id.*). On July 12, 2023, an Order was entered prohibiting Mr. Heller from filing any more documents on the court's docket due to multiple violations of the pseudonym Order and establishing a review process before filing, at his expense. (ECF No. 77).

Defendant wrote three separate letters to Judge Farbiarz appealing the July 12, 2023 Order. (ECF Nos. 79-81). Plaintiff responded. (ECF Nos. 82-83). There was so much back and forth that Judge Kiel eventually ordered the parties to refrain from filing additional letters until the next in person conference on August 10, 2023. (ECF No. 84). At that conference, Judge Kiel vacated the July 12, 2023 Order based upon Mr. Heller's firm commitment, on the record, that he would carefully review future filings to insure they complied with the pseudonym order. (ECF Nos. 85, 88). Judge Kiel addressed Defendant's untimely answer and counterclaim, reminding defense

---

those portions to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge, however, need not normally conduct a new hearing and may consider the record developed before the Magistrate Judge, making his or her own determination on the basis of that record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

[8] Incredibly, this filing, once again, had to be placed under seal because it violated the pseudonym order by mentioning Plaintiff's name several times. Plaintiff sought sanctions as a result. (ECF No. 74).

counsel: "[i]f you want to file an answer out of time, either get Mr. Szalkiewicz's consent or file a motion." (*Id.* at 12:9-18). Finally, the Court addressed Defendant's failure to pay the previously ordered sanctions, and directed Plaintiff make an application for a judgment if payment was not made. (*Id.* at 13:16-18).

Plaintiff filed a motion for default judgment on August 25, 2023, which was administratively terminated without prejudice as premature. (ECF Nos. 87, 89). Defendant's counsel was subsequently Ordered to pay an additional $450 to Plaintiff as a result of the previous orders where Plaintiff's counsel had to review and redact Mr. Heller's filings. (ECF No. 90 ¶ 1).

Plaintiff filed a request for default on September 18, 2023. (ECF No. 91). Defendant filed a motion for extension of time to file an answer on September 19, 2023. (ECF No. 92). Plaintiff opposed the motion on October 3, 2023. (ECF No. 94).

Judge Kiel held another status conference on October 12, 2023 wherein he addressed Defendant's motion. (ECF No. 100). He explained that, while Judge Wigenton permitted Defendant to amend the complaint (within 30 days) with regard to those counterclaims that were dismissed without prejudice, she did not authorize Defendant to add new counterclaims. (*Id.*). To the extent Defendant wanted to amend the existing counterclaims beyond the deadline set by Judge Wigenton, she had to file a motion to extend her time to file. (*Id.*). To the extent Defendant wanted to add brand new counterclaims (false light and sexual assault), she needed to file a motion to amend. (*Id.* at 3-4). On the record, Judge Kiel therefore administratively terminated the motion, directed Defendant to file only her answer by October 20, 2023, and instructed her to file a separate motion for leave to file any amended counterclaims in accordance with his instructions. (*Id.* at 5-7). However, no formal order was issued.

No Answer was filed by Defendant by October 20, 2023. Instead, Defendant filed a "Motion to Accept Objections" before Judge Farbiarz on October 20, 2023, appealing Judge Kiel's prior Orders. (ECF No. 96).[9] While this filing did not identify Plaintiff's name, it contained a number of personal references about Plaintiff that could result in him being easily identified. (ECF No. 97). Plaintiff filed a letter on October 23, 2023 once again accusing Mr. Heller of violating the pseudonym order. (ECF No. 97).[10]

Plaintiff again moved for entry of default on October 26, 2023. (ECF No. 101). Defendant attempted to file an answer on October 27, 2023, a week after the deadline set by Judge Kiel. (ECF No. 102). Judge Kiel conducted yet another conference on February 29, 2024, struck the Answer, and issued an order formally denying Defendant's motion for an extension of time without prejudice to re-file it in accordance with the Court's instructions. (ECF Nos. 107, 109). He asked Mr. Heller to file the anticipated motion "sooner than later" and then set a return date of April 1, 2024, giving Defendant until **March 18, 2024** to file the motion. (ECF No. 109, Tr. 10:2-12:7). Judge Kiel then cautioned defense counsel "[i]f you don't file that motion in time, sir, it's – it's going to be difficult to imagine that that would ever be granted in the future. I just want to put that out there for you, Mr. Heller." *Id*. at Tr. 13:15-19.

Again, Defendant failed to timely file the motion.

On April 1, 2024 – after the final deadline to amend had already passed – this case was reassigned to Magistrate Judge Allen. She afforded Defendant until April 12, 2024 to file the motion. (ECF No. 111). Defendant finally filed the motion in accordance with this deadline. (ECF

---

[9] This application was denied by Judge Farbiarz on April 10, 2024 on the grounds it did not clearly identify the orders to which Defendant was objecting. (ECF No. 112).

[10] In addition to the improper redactions, Defendant also included the full docket number of the New York State Law case, and only put a "line" through the Plaintiff's name.

No. 113). Plaintiff filed an opposition on April 22, 2024. (ECF No. 116). Defendant requested and was granted permission to file a Reply. (ECF No. 118). It should be noted that, while this Motion was pending, Defendant, once again submitted a letter on October 31, 2024 that violated the pseudonym order. (ECF No. 123).

### Defendant's Proposed Amended Counterclaim

Defendant's proposed Second Amended counterclaim seeks to supplement Count I (fraudulent misrepresentation) in accordance with Judge Wigenton's instructions; add Count II (false light); revise and supplement Count III (defamation) as per Judge Wigenton's Order; and add Count IV (sexual abuse and sexual assault). (Prop. Am. Countercl.). She omits former Count V (abuse of process). The proposed Amended Counterclaim is a narrative missive of run-on paragraphs that fails to comply with even the most basic pleading requirements that require pleadings to be "simple, concise and direct" and for the claims to be stated in numbered paragraphs. Fed. R. Civ. P. 8(d) and 10(b). Plaintiff also failed to provide a redline showing the changes from the original counterclaim, making it difficult for the Court to identify what is new.

With regard to the fraudulent misrepresentation claim, Plaintiff attempts to revise her claim to include more detail including that Plaintiff (i) lured Defendant to a New York City hotel under false pretenses of a business proposition to drug her and have sex with her; (ii) Plaintiff uttered certain phrases to her to falsely lead Defendant to believe they were married so he could further assault her; (iii) made intentionally false statements to Defendant's friends, clients, and professional associates to ruin her reputation; and (iv) filed a false police report that Defendant violated the TRO (*Id.* at 8-10).[11]

---

[11] Because Defendant failed to follow Rule 10's requirements of numbered paragraphs the Court will cite to the page number listed in Defendant's proposed amended answer and counterclaim.

With respect to the claim for defamation, Defendant states that Plaintiff has been on a campaign to ruin Defendants professional reputation since January 2019 to present. (*Id.* at 14). She accuses Plaintiff of making knowingly false filings in three different legal venues. (*Id.*). Defendant then references examples from Counts I and II for the efforts to defame Defendant. (*Id.*).

Defendant adds an entirely new counterclaim for false light. (*Id.* at 11). This count repeats, for the most part, many of the allegations under fraudulent misrepresentation. (*Id.* at 11-12) Specifically, Defendant claims Plaintiff made knowingly false statements to her friends, community and professional contacts that she engaged in immoral sexual acts and shared fake text messages and emails with them. (*Id.* at 12). She alleges Plaintiff repeated impugned her character to dissuade professional contacts from hiring her. (*Id.*).

Finally, Defendant adds a Count for Sexual Abuse and Sexual Assault. (*Id.* at 15). Defendant claims Plaintiff sexually assaulted her on December 17, 2017 at a New York City hotel under the guise of a business transaction. (*Id.*). She alleges she was drugged, raped and photographed in compromising positions while unconscious. (*Id.* at 16). Defendant claims Plaintiff then threatened her with the photographs to coerce her into an ongoing abusive relationship. (*Id.*).

Defendant advances several arguments in support of her motion. First, she argues her counterclaims should be permitted in response to Plaintiff's Amended Complaint, which she contends significantly increased the initial allegations. (Memorandum in Support of Defendant's Motion ("Def. Memo") at 11, ECF No. 113). She contends Plaintiff was freely granted leave to amend and she should be afforded the same treatment. (*Id.* at 3-4). Defendant maintains she diligently attempted to file a proper answer and counterclaim, and should not be penalized for any mis-steps because she was emotionally overwhelmed by Plaintiff's vexatious litigation in 3 separate litigations and her attorney is a solo-practitioner whom she has not been able to pay. (*Id.*

at 4). Although Defendant acknowledges the amendment will extend the litigation, she nevertheless argues that there will be no undue delay in the litigation and any extension is a "mere inconvenience." (*Id.* at 5). Finally, Defendant asserts that "abundant facts…have come to light since this matter's inception" that warrant the amendment. (*Id.* at 5).

## LEGAL ANALYSIS

### I.    Governing Standards for Motion for Leave to Amend Pleadings

"The threshold issue in resolving a motion to amend" is to determine whether it is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure. *Holmes v. Christie*, No. 16-cv-1341 (ES) (MAH), 2023 WL 8016055, at *2 (D.N.J. Nov. 17, 2023) (internal citations omitted). "[O]nce the pretrial scheduling order's deadline for filing motions to amend the pleadings has passed, a party must, under Rule 16(b), demonstrate good cause for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading." *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 280 (E.D. Pa. 2010) (internal quotations and citations omitted); *see also Premier Comp. Sols., LLC v. UPMC*, 970 F. 3d 316, 319 (3d. Cir. 2020); *Wag Acquisition LLC v. Gattyan Grp. S.A.R.L.*, No. 14-cv-2832 (KM) (ES), 2020 WL 5105194, at *2 (D.N.J. Aug. 31, 2020); *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468-69 (D.N.J. 1990).

Here, there is no dispute that Defendant filed the instant motion after March 17, 2023 deadline imposed in the November 10, 2022 Initial Scheduling Order. (ECF No. 18 ¶ 7). She also filed her motion well after the April 21, 2023 set by Judge Wigenton. (ECF No. 47). Thus, the court must first assess the application under the heightened requirements of Fed. R. Civ. P. 16.

Under Fed. R. Civ. P. 16(b)(4), once a Scheduling Order has been entered, it may be modified "only for good cause and with the judge's consent." Whether "good cause" exists

depends on a party's diligence. *Premier Comp.*, 970 F. 3d at 319. "Good cause requires that a party demonstrate that an existing schedule cannot be met despite the diligence of the party seeking the extension." *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. 15-cv-7025 (RBK) (JS), 2018 WL 2464499, at *3 (D.N.J. May 31, 2018) (quoting Fed. R. Civ. P. 16, Advisory Committee Note on subdivision (b)); *see also Harbor Laundry Sales, Inc. v. Mayflower Textile Servs., Co.*, No. 09-cv-6259 (NLH), 2011 WL 6303258, at *3 (D.N.J. Dec. 16, 2011) ("[T]he moving party must show that, despite its diligence, the deadlines set forth in the scheduling order could not reasonably be met.") (citing *GlobespanVirata, Inc. v. Texas Instruments Inc.*, No. 03-cv-2854 (GEB), 2005 WL 1638136, at *3 (D.N.J. July 12, 2005)).

If a moving party meets its burden under Fed. R. Civ. P. 16, the court must then assess the application under the more liberal standard of Fed. R. Civ. P. 15(a). The Third Circuit has adopted a "liberal" approach to amendments of pleadings. *DLJ Mortg. Cap., Inc. v. Sheridan*, 975 F.3d 358, 369 (3d. Cir. 2020). A court may deny a motion to amend only where there is (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; (4) repeated failures to cure deficiencies; or (5) futility of amendment. *Grayson v. Mayview State Hosp.*, 293 F. 3d 103, 108 (3d. Cir. 1984)). These factors "are not exhaustive, allowing a court to ground its decision, within reason, on consideration of additional equities, such as judicial economy/burden on the court and the prejudice denying leave to amend would cause to the plaintiff." *Mullin v. Balicki*, 875 F. 3d. 140, 149-50 (3d. Cir. 2017). However, the most important factor is prejudice to the non-moving party. *Id.* at 150.

## II.    Defendant Has Not Demonstrated Good Cause Under Fed. R. Civ. P. 16.

Defendant's motion fails in the first instance because she cannot establish the necessary diligence to satisfy the good cause standard under Fed. R. Civ. P. 16. The question of diligence turns on why Defendant waited so long to file her application. Defendant summarily asserts that

she "diligently attempted" to file a proper answer and counterclaim. (Def. Memo, at 4). However, she does not articulate what steps she engaged in to comply with Court deadlines, explain why she failed to meet multiple deadlines or explain why she could not have asserted the two new counts until now. Defendant argues simply that she was "outgunned" by Plaintiff, and that she and her counsel, a solo-practitioner, were overwhelmed defending her in three separate litigations. (*Id.*).

The initial scheduling order in this matter, entered on November 10, 2022, set a deadline of March 17, 2023. (ECF No. 18 ¶ 7). Defendant fails to explain why she her new claims of false light and sexual abuse and sexual assault could not have been added prior to this deadline. Defendant does not allege they are based upon newly discovered evidence and a review of the proposed second amended counterclaim demonstrates the facts upon which they were based are the same as those set forth in the original counterclaim. There is no justification for failing to add these claims by the court-ordered deadline.

There is also no explanation for why Defendant failed to meet the April 23, 2023 deadline set by Judge Wigenton with regard to amending her previously asserted counterclaims (defamation and false representation). (ECF No. 47). A summary assertion that defense counsel was "outmanned," without so much as a letter requesting an extension, does not justify the more than one year delay in filing. This is particularly true given the multiple status conferences and court appearances that transpired in the interim. Indeed, defense counsel missed the April 5, 2023 status conference after Judge Wigenton issued her Order. (ECF No. 48).[12] Had he attended, he could have requested an extension of time.

---

[12] Plaintiff's counsel missed this conference as well but sent a letter explaining it was mis-calendared. Defense counsel did not send a similar letter explaining his absence.

Defendant attempted to file an amended answer and counterclaim on July 7, 2023 – more than three months after the court-imposed deadline. (ECF No. 73). Not only was this filing late, but Defendant failed to seek an extension of time to file this pleading out of time and expanded the counterclaim to add two new claims beyond what was contemplated by Judge Wigenton's order without leave of court to amend. (*Id.*). The pleading was therefore struck, and Plaintiff was directed to file a motion. (*Id.*).

Defendant waited another two months after receiving the Court's order, until September 18, 2023, to file a motion for an extension of time to answer and that too was riddled with issues. (ECF No. 91). Defense counsel was given explicit instructions from Judge Kiel on the process Defendant needed to follow to have her amended counterclaim considered: (i) file an amended answer to the amended complaint (without any counterclaim) by October 20, 2023; (ii) file a motion for an extension of time to amend the existing counts (false representation and defamation) in the counterclaim beyond the deadline set by Judge Wigenton; and (iii) file a motion to amend to add new claims that complied with Fed R. Civ. P. 15 and 16. (ECF No. 100). Yet again, Defendant blew a deadline, failing to file the answer by the October 20, 2023 deadline and instead filing it a week late on October 27, 2023. (ECF No. 102).

At the February 29, 2024 court conference, Judge Kiel gave Defendant yet another chance to file an amended answer and counterclaim in accordance with his instructions. (ECF Nos. 107, 109). He set a deadline of March 18, 2024 to file the motion. He specifically warned Defendant that if the motion was not filed on time "it's going to be difficult to imagine that would ever be granted in the future." (ECF No. 109, Tr. 13:15-19). Incredibly, yet again, Defendant blew the deadline.

While Judge Allen subsequently afforded Defendant until April 12, 2024 to file his motion, and he finally complied with this deadline, she did not opine on whether the motion would be granted in light of Defendants' repeated, unexplained failures to comply with one court deadline after another. Indeed, as described above, the record is also replete with examples of Defendant and her counsel missing court conferences, repeatedly failing to meet deadlines, failing to comply with basic discovery requirements, and violating court orders.

The Court is not compelled by Defendant's argument that she should be granted the same courtesy to amend as Plaintiff. Plaintiff was afforded the opportunity to amend after significant sanctions were granted against Defendant and her counsel for repeated failures to attend conferences, meet deadlines or timely file submissions. (ECF No. 56). One of the issues addressed during that conference was that Defendant had been almost wholly responsive to discovery requests and had altered or destroyed emails and texts. (*Id.*). Among the remedies afforded to Plaintiff as part of the motion for sanctions was the right to amend the complaint to add counts that encompassed this conduct. (*Id.*). Further, Plaintiff was given a deadline of June 1, 2023 to file the amended complaint and, unlike Defendant, timely complied with that deadline.

Nor is the Court persuaded by Defendant's argument that she should be permitted to amend her counterclaim simply because Plaintiff's amended complaint significantly increased the initial allegation. Defendant was served with the Amended Complaint on June 1, 2023. She makes no effort to explain why she delayed almost a full year to address the newly pled allegations through her proposed second amended counterclaim. She also fails to articulate what new information was contained in the amended complaint of which she was previously unaware that warrants the addition of new counterclaims.

20

Under this set of facts, the Court cannot find that Defendant acted with the requisite diligence that would allow her to amend under Fed. R. Civ. P. 16. *See e.g. E. Mins. & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d. Cir. 2000) (affirming district court's order denying leave to amend, finding that the district court "acted well within its discretion" in denying the amendment when it was filed six months after the court-ordered deadline); *McWreath v. Range Res.-Appalachia, LLC*, 645 Fed. Appx. 190, 196 (3d. Cir. 2016) (affirming denial of leave to amend where the parties waiting fourteen months after the court-ordered deadline to amend their complaint); *Harrison Beverage Co.*, 133 F.R.D. at 469 (holding a party's explanation for delay in bringing a motion to amend was unsatisfactory where they claimed they were in the process of settlement discussions, and all of the newly asserted affirmative defenses did not newly arise from information gained during discovery); *Dimensional Comm'ns, Inc. v. OZ Optics, LTD.*, 148 Fed. App. 82, 85 (3d. Cir. 2005) (affirming order of a magistrate judge that denied a party leave to amend because the defendant "was in possession of the facts underlying its proposed counterclaim" five-and-a-half months before the amendment deadline); *Strategic Prods. & Servs., LLC v. Integrated Media Techs.*, No. 18-cv-694, at *3 (KSH) (CLW), 2020 WL 5810561 (D.N.J. Sept. 30, 2020) (affirming denial of motion to amend where movant failed to convincingly demonstrate why it did not seek leave to amend earlier even though it had information in its possession months prior that formed the basis for the amendment).

### III.    Defendant's Amendment Fails Under Fed. R. Civ. P. 15.

Given the lack of a showing of good cause under Fed. R. Civ. P. 16 by Defendant, the court's analysis could end here. *See Blue Gentian, LLC v. Tristar Prods., Inc.*, No. 13-cv-1758 (EP) (MAH), 2024 WL 4719560, at *6 (D.N.J. Nov. 8, 2024) (internal citations omitted). However, the court further analyzes Defendant's application under the more liberal standard of Fed. R. Civ. P.

15. As mentioned above, in determining whether to amend, the court must assess five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; (4) repeated failures to cure deficiencies; or (5) futility of amendment.

### A. Undue Delay

"The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court[.]" *Adams v. Gould, Inc.*, 739 F. 2d 858, 868 (3d. Cir. 1984) (citations omitted); *see also Cureton v. NCAA*, 252 F.3d 267, 273 (3d. Cir. 2001). Undue delay is one "that is protracted and unjustified," and "can indicate a lack of diligence sufficient to justify discretional denial of leave." *Mullin*, 875 F.3d at 151. "Though there is no period in which delay becomes undue, "[c]ourts in this circuit have denied motions to amend based solely on undue delay when a long delay was unexplained." *Khetani v. Plainsboro Twp.*, No. 23-cv-534 (GC) (JTQ), 2024 WL 3861043, at *13 (D.N.J. Aug. 19, 2024) (citations omitted). The Third Circuit has "refused to overturn denials of motions for leave to amend where the moving party offered no cogent reason for the delay in seeking the amendment." *CMR D.N. Corp. & Marina Towers Ltd. v. City of Phila.*, 703 F.3d 612, 629 (3d. Cir. 2013) (citing *Bjorgung v. Whitehall Resort*, 550 F.3d 263, 267 (3d. Cir. 2008)). "A district court may exercise its discretion to deny leave to amend when the movant delays competition of discovery." *Spartan Concrete Prods., LLC v. Argos USVI Corp.*, 929 F. 3d 107, 115-16 (3d. Cir. 2019) (citing *Oran v. Stafford*, 226 F.3d. 275, 291 (3d. Cir. 2000)).

For the reasons discussed at length above in denying leave under Fed. R. Civ. P. 16, the court finds there was undue delay by Defendant in seeking to amend. Defendant fails to present *one* cogent reason why she repeatedly delayed filing the instant motion. While Defendant states "she diligently attempted to file a proposed answer and counterclaim," the record is replete with

blown deadlines, missed status conferences, and one excuse after another as to why leave was not properly sought sooner. The most egregious of these violations is that Defendant failed to meet the final March 18, 2024 filing deadline set by Judge Kiel after she had already received multiple extensions and Judge Kiel warned her counsel that if it was not timely filed this time it would not granted. (ECF No. 109 at Tr. 13:15-19). This was after Defendant and defense counsel had already been significantly sanctioned by this court for similar violations. To blow yet another deadline is simply inexcusable.

Importantly, Defendant cites to no evidence that was recently discovered that would justify the delay in filing this motion. Indeed, a review of the proposed amended counterclaim demonstrates that the new claims are entirely based upon facts within Defendant's knowledge since day one of this litigation. Indeed, Defendant's initial counterclaim recounted all of the allegations concerning the alleged sexual assault in New York City and the use of the photographs to coerce her into a sexual relationship. As is plainly evident from Defendants proposed counterclaim, the allegations underlying the false light claim date back to January 2019 – years before the lawsuit was even filed. (Prop. Am. Countercl. at 11). The more detailed allegations in support of the defamation and false misrepresentation claim similarly date back to 2019. (*Id.*). There is no assertion that Defendant was unaware of these claims until only recently and, therefore, no excuse for the undue delay in filing.

### B. Bad Faith

The next factor is bad faith or dilatory motive. Without question, both parties in this matter allege that the other has acted in bad faith, allegedly filing frivolous TROs, sending fake electronic messages, manufacturing evidence and besmirching the other's reputation. However, these allegations form the basis for the claims asserted, to be decided by the ultimate trier of fact, and

do not go to the conduct underlying the instant application. With regard to whether Defendant acted in bad faith in pursuing this amendment, the only argument advanced is the delay in failing to time file and Defendant's lack of diligence throughout this litigation. However, "[a]lthough delay itself can be evidence of bad faith justifying the denial of a motion to amend, there generally must also be some extrinsic evidence to indicate that a litigant acted in bad faith before a motion to amend will be denied on this ground." *Diallo v. Alo Enter. Corp.*, No. 12-cv-3762 (AET) (TJB), 2013 WL 3772827, at *3 (D.N.J. Jul. 17, 2013) (citing *Adams*, 739 F.2d at 868). Bad faith focuses on the motives of the moving party for not amending their pleading sooner. *Zelma v. Choice Energy, LLC*, No. 19-cv-17535 (CCC) (MF), 2020 WL 5201341, at *2 (D.N.J. Sept. 1, 2020). Simply failing to add a claim a party had prior knowledge of does not, alone, amount to bad faith. *Leased Optical Depts. v. Opti–Ctr., Inc.*, 120 F.R.D. 476 (D.N.J. 1988). On the record before it, the Court does not find that – other than her failure to act with diligence in asserting known claims – Defendant has acted in bad faith in pursuing her counterclaims.

### C.  Undue Prejudice

The next, and most important, factor that must be assessed when evaluating a request to amend under Fed. R. Civ. P. 15 is whether the amendment will cause undue prejudice to the other party or unduly burden the court. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d. Cir. 1993) ("[P]rejudice to the non-moving party is the touchstone for the denial of an amendment.") (quoting *Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)); *Cureton*, 252 F.3d at 273 (stating, in deciding a motion for leave to amend, the court should "focus on the hardship to the [non-moving party] if the amendment were permitted") (citing *Adams*, 739 F.2d at 868). In evaluating prejudice, the court should consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new

24

theories." *Cureton*, 252 F.3d at 273; *see also Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d. 587, 614 (D.N.J. 2010) ("Prejudice may involve requiring the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delaying the resolution of the dispute."); *Joy v. Perez*, No. 10-cv-01636 (DMC) (JAD), 2011 WL 221700 at *2 (D.N.J. Jan. 21, 2011) ("Unfair prejudice is usually found when there has been a significant unjustified delay in moving to amend that creates an unfair disadvantage for the defendant.")

Plaintiff correctly points out that he will be prejudiced if the amendment is permitted. The original deadline for fact discovery in this matter was March 30, 2023. (ECF No. 32). Fact discovery was declared closed by Judge Kiel two years ago, on April 5, 2023. (ECF No. 48). It was re-opened once for Plaintiff only because Defendant wholly failed to comply with her discovery obligations. (ECF No. 56). Even that deadline closed on June 30, 2023. (*Id.*). Judge Wigenton's Order contemplated an amendment by April 30, 2023, which would have allowed for related discovery to be completed within the discovery deadlines. (ECF No. 47). Now, more than one year later, Defendant seeks to add significant and substantive claims of sexual assault and sexual abuse and false light, which are different in kind than her previously asserted claims, and would undoubtedly necessitate months of additional and complicated discovery. This is particularly problematic on the heels of Defendant's utter refusal to meaningfully participate in the discovery process in the first instance. Without a doubt, such problems would once again arise, resulting in only further delay. *See Major Tours, Inc.*, 720 F. Supp. 2d. at 614 (denying leave to amend because it would require reopening fact discovery, which would have extended "this already marathon case," and the movant offered no reason for delay).

Plaintiff seeks vindication of his rights with the filing of the instant complaint. He alleges the consequences of this action remain ongoing. This matter has been pending since October 2022,

almost three years. Justice delayed is justice denied. Without question, both parties, and the Court, will be harmed if resolution is further delayed as a result of a late filing of a counterclaim.

### D.  Repeated Failures to Cure Deficiencies

There is no question that Defendant has repeatedly failed to cure the deficiencies in her answer and counterclaim despite being presented served opportunities to do so. *See Cal. Pub. Emps' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 165 (3d. Cir. 2004) (affirming district court's denial of leave to amend where plaintiff, for the second time, failed to remedy the pleading deficiencies in their complaint despite "clear guidance" given by the district court); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 383 (D.N.J. 2007) (denying leave to amend where plaintiffs "had three full opportunities to state a claim and failed to do so, in spite of . . . [the court] providing [p]laintiffs with a detailed roadmap in its previous opinion").

As detailed herein, she missed deadlines of March 17, 2023 (ECF No. 18), April 21, 2023 (ECF No. 47), June 19, 2023 (ECF No. 61), October 20, 2023 (ECF No. 100), and March 18, 2024 (ECF No. 109). She failed to cure the deficiencies in her untimely pleading despite being provide a road map of what needed to be done provided by Judge Kiel:

> THE COURT: Let me -- or to set the stage, what I'm guided by is Judge Wigenton's decision on March 22nd, 2023, and in that order, she permitted the defendant to file a [sic] amended counterclaim -- I'm sorry -- permitted the defendant to file a -- to amend the counterclaims that were dismissed without prejudice. Count 1 was dismissed without prejudice; that was for… Fraudulent misrepresentation. Count 2 was dismissed; that was for defamation; Count 2 was also dismissed as a claims for defamation based on statements made during litigation. And Count 3 was dismissed, which is a count for abuse of process. And those were the counterclaims that Judge Wigenton permitted to be amended. What I get from the motion that is now before me and what the attachment is that there are entirely different counterclaims being asserted. One is for false light. And the other is sexual abuse and sexual assault. If you're going to file an entirely different counterclaim, you can't do that as a matter of right under Judge Wigenton's order, Mr. Heller.

26

You would have to file an -- you would have to file a motion to amend, Mr. Heller. Right?

MR. HELLER: Yes, understood, Judge.

THE COURT: Yeah, so this is not the proper way to do it. If you're going to entirely change or add new claims, you are -- if you were to just amend as directed by Judge Wigenton, then I could see you properly filing a motion to extend time to file your answer and counterclaim. But you're doing -- what you're doing is entirely different. And so you're going to have to file a motion to amend under the proper rule, and then give Mr. Szalkiewicz an opportunity to respond. I hope that is clear, Mr. Heller.

MR. HELLER: Yes. Yes, very clear.

(ECF No. 100, Tr. 2:21-25, 3:1-25, 4:1-3). Judge Kiel provided similar direction at the February 29, 2024 conference. (ECF No. 109).

Despite being afforded every opportunity to cure the deficiencies with her motion and pleadings, Defendant wholly failed to do so. This factor thus militates against allowing the amendment.

### E. Futility

While futility is another potential basis for denying a motion to amend, the court does not reach the issue here as it has identified several independent bases for denying the application, including lack of good cause, lack of diligence, undue delay and undue prejudice. *See IQVIA Inc. v. Veeva Systems, Inc.*, No. 17-cv-1777 (JXN) (JSA), 2022 WL 111045, at *4 (D.N.J. Jan. 12, 2022) (holding that the court need not reach the issue of futility because the delay in seeking the amendment served as an independent basis for denying the motion); *Omodunbi v. Gordin & Berger, P.C.*, No. 17-cv-7553 (ES) (JSA), 2022 WL 1115276, at *8 n.6 (D.N.J. Apr. 14, 2022) (same); *Blue Gentian*, 2024 WL 4719560, at *8 n.11 (holding that, because the court denied leave to amend based on unfair prejudice and undue delay, it need not reach the issue of futility); *Fermin v. Toyota*

*Material Handling, U.S.A., Inc.*, No. 10-cv-3755 (JLL) (MAH), 2012 WL 1393074, at *7 n.4 (D.N.J. Apr. 23, 2012) (where movant failed to satisfy the good cause requirement the court need not address futility).

## **CONCLUSION**

In sum, the Court finds that Defendant has presented no basis for granting leave to amend at this stage of the litigation. Accordingly, Defendant's Motion is **DENIED**.