UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| John Doe.<br><br>        Plaintiff,<br><br>   v.<br><br>Baila Sebrow<br><br>        Defendant. | Case No. 2:21-cv-20706 |

REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS
AGAINST DEFENDANT BAILA SEBROW

 

Daniel Szalkiewicz, Esq.
Veridian Legal P.C.
23 West 73rd Street, Suite 102
New York, NY 10023
(212) 706-1007
daniel@lawdss.com
*Attorneys for Plaintiff*

1

# **TABLE OF CONTENTS**

**Preliminary Statement** .................................................................................................. **4**

**I.    Plaintiff has Valid Legal Claims against Sebrow; Data on Defendant's Devices and Accounts Would Make her Responsible for the Harassment more Likely** ............................. **4**

**II.   Striking Defendant's Answer is an Appropriate Sanction for the Conduct at Issue.. 6**

   **A.   The Responsibility for Discovery Violations Lay with Defendant as well as her Former Counsel**................................................................................................................. **6**

   **B.   Plaintiff has been Severely Prejudiced by Defendant's Refusal to Engage in Discovery**.......................................................................................................................... **7**

   **C.   Defendant has a Long History of Dilatory and Obstructionist Behavior** .................... **8**

   **D.   Defendant's Conduct is Willful and in Bad Faith** ...................................................... **9**

   **E.   Alternative Sanctions Would be Ineffective**.................................................................. **9**

   **F.   Plaintiff's Claims are Meritorious**............................................................................... **10**

**III.  Conclusion** .................................................................................................................. **10**

# TABLE OF AUTHORITIES

Cases

Adams v. Trs. of the N.J. Brewery Employees' Pension Tr. Fund, 29 F.3d 863, 873 (3d Cir. 1994) .................................................................................................................. 6, 8

Imfk Realty II, LLC v. Atl. Prop. Dev. LLC, Civil Action No. 20-6989 (MAS) (DEA), 2022 U.S. Dist. LEXIS 164320, at *5 (D.N.J. Sep. 12, 2022).................................................................. 7

Wortman v. Brown, Civ. A. 05-1411 (SRC), 2006 U.S. Dist. LEXIS 21222, at *8 (D.N.J. Apr. 18, 2006) .......................................................................................................... 7, 8, 10

**Preliminary Statement**

The conduct of Defendant Baila Sebrow ("Sebrow" or "Defendant") falls directly into the factors set forth in Poulis.  First, she orchestrated an elaborate and brutal campaign against plaintiff John Doe ("Doe" or "Plaintiff") which went on for years; second, Plaintiff still does not have possession of her devices or accounts – items which Defendant claims Plaintiff manipulated to make it seem like she was harassing him, resulting in prejudice to him; third, Defendant and her former attorney's dilatoriness was extensive and well documented; fourth, given the repeated disclosures of Plaintiff's true name and the continued refusal to engage in ESI discovery, there can be little doubt this conduct was anything but willful and in bad faith; fifth, alternative sanctions would be pointless as this Court has already sanctioned both Defendant and her former counsel to no avail; and sixth, Plaintiff has meritorious claims.

While it is important to note that Defendant's incoming counsel has made no offer to produce Defendant's devices or accounts, even if he did, Plaintiff would still be prejudiced due to the years which have passed, resulting in irreparable data loss.  The end result of Defendant's refusal to cooperate is Defendant's motivation for refusing to produce; she will be able to introduce fabricated messages and falsely claim that Plaintiff had hacked into her devices and was sending himself and his family harassing messages while Plaintiff will be deprived of anything which would aid him in disproving such claims.

If ever there was a case which warranted the striking of an answer, it would be this one.

I. **Plaintiff has Valid Legal Claims against Sebrow; Data on Defendant's Devices and Accounts Would Make her Responsible for the Harassment more Likely**

Defendant appears to wish to turn their opposition to Plaintiff's sanction motion into a re-argument of their Motion for Judgment on the Pleadings.  Plaintiff respectfully refers to her

4

Amended Complaint and papers submitted in opposition to Defendant's Motion for Judgment on the Pleadings as to the merits of his claims against Defendant Sebrow. Briefly, while Defendant is correct in stating that her harassment began more than two years prior to Plaintiff bringing this action, it continued for such a long period of time that, at a minimum, Plaintiff's cause of action for Intentional Infliction of Emotional Distress – which go to the heart of the damage that Defendant committed – survives. Additionally, as argued in opposition to Defendant's Motion for Judgment on the Pleadings, Plaintiff also properly pleaded causes of action for tortious interference with his employment relationship.

The data on Defendant's devices and/or accounts is relevant to Plaintiff's claim that she engaged in a years-long cyberharassment campaign against him which included, at a minimum, sending him vile and harassing text messages and e-mails; anonymously sending Plaintiff and his family members bizarre and intimidating messages; initiating repeated phone calls to Plaintiff for no reason other than to harass him; falsely claiming she was pregnant; causing multiple social media accounts and websites to be created to harm him socially and professionally; and sending e-mails to Plaintiff's work e-mail accusing him of professional improprieties and criminal acts.

Despite the existence of third-party provided information confirming Defendant paid for and was using a SpoofCard account to anonymously harass Plaintiff and his family and of several witnesses who confirm Defendant's responsibility for the creation of the social media accounts and websites, Defendant continues to assert that Plaintiff is doing this to himself. Defendant's Answer provides two affirmative defenses supporting this: that the damages sustained by Plaintiff were due to his own negligent conduct, that his claims are barred by the doctrine of unclean hand, and that his claims are barred because "his damages were the result of his own conduct and/or the conduct of other non-parties to this litigation." More so, Defendant

5

has already made these claims in Superior Court, more specifically that Plaintiff somehow gained access to her devices and accounts and used that access to send himself and others disgusting text messages. Defendant is further alleged to have introduced a falsified e-mail in the Superior Court proceeding to make it appear as though Plaintiff has extorting her.

If Plaintiff were promptly provided access to Defendant's accounts and/or devices, he would likely have been able to disprove Defendant's claims of unauthorized access; he also would have been able to demonstrate that the allegedly falsified e-mail was never received by Defendant Sebrow. Instead, Defendant refused to cooperate with ESI discovery and will be able to make whatever claims she wishes to make about her devices and accounts and Plaintiff will be put at an enormous disadvantage in disproving those claims.

## II. Striking Defendant's Answer is an Appropriate Sanction for the Conduct at Issue

Though Defendant cites the six-pronged Poulis factors in her Legal Standard section, she addresses only a few, skipping or breezing over Defendant's extensive history of dilatoriness in this action, that the conduct was undertaken willfully and/or in bad faith, and the likelihood that alternative, lesser sanctions would be ineffective.

### A. The Responsibility for Discovery Violations Lay with Defendant as well as her Former Counsel

Defendant argues that a "represented person's personal responsibility for not adhering with a court order is of significant importance" and that, here, Defendant's attorney's failure to tailor Plaintiff's demands provides her with an excuse for refusal to cooperate with discovery. As the court held in Adams and Michota, "this is not the sympathetic situation of an innocent client suffering the sanction of dismissal due to dilatory counsel who it hired to represent it" Adams v. Trs. of the N.J. Brewery Employees' Pension Tr. Fund, 29 F.3d 863, 873 (3d Cir. 1994). In Adams, the Third Circuit held personally responsible a pension fund, despite the fact

6

that doing so would cause harm to fully innocent employers who participated in the fund. Id. The court concluded "the effect of dismissal on third parties cannot be dispositive." Id. In Wortman, the plaintiff was representing himself and so "his choices alone are responsible" for the opposing party's "inability to obtain discovery." Wortman v. Brown, Civ. A. 05-1411 (SRC), 2006 U.S. Dist. LEXIS 21222, at *8 (D.N.J. Apr. 18, 2006). In IFMK Realty, the court also found the party "bears some personal responsibility for his counsel's handling of this case" Imfk Realty II, LLC v. Atl. Prop. Dev. LLC, Civil Action No. 20-6989 (MAS) (DEA), 2022 U.S. Dist. LEXIS 164320, at *5 (D.N.J. Sep. 12, 2022). Defendant's attorneys offer no reason why Defendant is not personally responsible for her refusal to cooperate.

In her deposition on February 2, 2023, Defendant demonstrated her role with her and her counsel's ongoing scheme to refuse to cooperate with ESI in this case when she was asked whether she had hired a forensic expert and claimed "I didn't hire anybody" only to admit later "Yes, I did hire somebody" and then confirm she had hired them to "perform expert services in this case" and that they had looked at material on her phone. **Exhibit 1**.

More so, Defendant herself was present at multiple conferences in which a federal court judge advised both her and her attorney that ESI discovery on her devices and accounts would be taking place (D.E. 70, 38).

Here, it is plainly apparent that Defendant's refusal to cooperate was her own personal choice, and not strictly the fault of her attorney.

B. **Plaintiff has been Severely Prejudiced by Defendant's Refusal to Engage in Discovery**

As indicated in the underlying motion, Defendant's refusal to engage in any meaningful discovery has resulted in permanent data loss and unnecessary costs incurred by Plaintiff

7

communicating with opposing counsel, seeking court orders for Defendant's compliance, and coordinating with forensic experts for Defendant to produce her device, only for Defendant not to show. "Examples of prejudice include 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'" Adams, supra.

The court in Curtis T. Bedwell & Sons, Inc. found that discovery abuses "severely prejudiced" the other party "by depriving them of important information and by forcing appellees to expend costs in obtaining court orders to force Bedwell to comply with discovery requests." Bedwell, 693. Even more on point, the plaintiff in Bedwell argued it "had replaced its counsel after becoming aware of the abuses" and "point[ed] out that new counsel" had complied with orders and requests. Id. Still, the court of appeals aligned with lower courts in terms of resulting prejudice to the opposing party being deprived of the information. The court in Wortman held that defendants were prejudiced due to needing to "seek judicial intervention several times, as well as take additional steps by attempting to communicate with Plaintiff beyond what would normally be required…[and] have been forced to seek the Court's intervention multiple times." Wortman, supra.

## C. Defendant has a Long History of Dilatory and Obstructionist Behavior

While Defendant's former attorney certainly earned a reputation for dilatory behavior in this case, Defendant herself has engaged in similarly dilatory and obstructionist conduct. Defendant failed to appear at a settlement conference on December 21, 2022. **DE 147**, p. 5. Both Defendant and her counsel were reprimanded by Judge Kiel for repeatedly being late for court appearances (D.E. 70, p. 3-4). In her deposition she initially denied having retained a forensic expert to analyze her phone only to later admit she had. **Exhibit 1**. While Plaintiff hesitates to

8

judge Defendant's incoming counsel too harshly at this early stage of his representation, it cannot be left unsaid that he was nearly an hour and a half late to the September 4, 2025 settlement conference and, once again, Defendant Sebrow failed to show altogether.

### D. Defendant's Conduct is Willful and in Bad Faith

Defendant has already been deemed "generally incredible" and a judge has found that her testimony and conduct "strains credulity" and that her "testimony vacillated and was both internally and externally inconsistent" (**DE 150-1**, p. 14). Judge Sanders' decision annihilated Defendant's credibility in a way that it is clear her motivation for her claims is founded in bad faith. Judge Saunders, for instance, wrote that Sebrow's:

> facial expressions on direct and her reactions to various evidence causes the court to question her veracity. Her body language and reactions were such as to render silent any ring of truth that could be associated with the words contained in her testimony. Simply put, B.S.'s testimony lacked objective indicates associated with candor and honesty by failing to demonstrate a modicum of understanding as to the severity and solemnity of the proceedings. **DE 150-1**,, p. 15.

Judge Saunders concluded that "it is more likely than not that B.S. did, in fact, author all of the disputed communications, including the Spoofcard calls, made all of the related telephone calls to [Doe], and was responsible for the various internet postings." **DE 150-1**, p. 17. Finally, Judge Saunders' conclusion that "this court is convinced that B.S. represents a continuing and ongoing danger to [Doe's] person and property" only supports Plaintiff's contention that Defendant's conduct is willful and in bad faith. **DE 150-1**, p. 53.

### E. Alternative Sanctions Would be Ineffective

In <u>Wortman</u>, the court concluded "that lesser measures would be ineffective given Plaintiff's blatant failure to comply with any of the Orders issued by this Court or by [another

9

judge]." Wortman, supra.  The court in Wortman further cited to Curtis T. Bedwell and Sons, Inc., a case in which "dismissal was appropriate sanction in a case where lesser penalties did not deter future abuses" Wortman, citing Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co., 843 F.2d 683, 695 (3d Cir. 1988).  Here, Defendant was ordered to comply with discovery.  When she did not comply, she was sanctioned in that she was prevented from the ability to tailor the ESI production.  She still has not complied.  Additionally, Defendant's counsel was, for a time, barred from making filings without Plaintiff's attorney's review and approval due to his continued introduction of Plaintiff's true name on the docket.  As soon as those safeguards were removed, Defendant's counsel resumed uploading Plaintiff's true name.  Finally, Defendant and her attorney were additionally sanctioned monetarily; still, Defendant's conduct has remained unchanged.  With the exception of the order requiring Plaintiff's attorney to review Defendant's filings for Plaintiff's true name (which was effective even if it was a time-consuming nuisance for Plaintiff's counsel), creative alternative remedies have had no real impact on Defendant's behavior in this case.

### F. Plaintiff's Claims are Meritorious

As indicated above, Plaintiff respectfully refers this Court to his Amended Complaint as well as his opposition to Defendant's Motion for Judgment on the pleadings for a complete analysis as to why Plaintiff has meritorious claims.

### III. Conclusion

The unfortunate reality for all involved parties is that Defendant has been repeatedly ordered to cooperate in discovery and has continuously refused to do so, causing irreparable harm to Plaintiff's case and defense which cannot be mitigated by lesser sanctions.

10

September 29, 2025

              /s/Daniel Szalkiewicz
              Daniel S. Szalkiewicz, Esq.