**KEMENY, RAMP & RENAUD, LLC**
*Alexander J. Kemeny, Esq. (Attorney I.D. No.: 039842009)*
7-G Auer Court
Williamsburg Commons
East Brunswick, New Jersey 08816
Tel: (732) 853-1725 | Fax: (732) 853-1730
Email: akemeny@kemenylaw.com
Website: www.KemenyLaw.com
*Attorneys for Defendant, Betty Sebrow, improperly pled as Baila Sebrow*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>    v.<br><br>BAILA SEBROW,<br><br>        Defendant. | <u>Civil Action No.</u><br>2:21-cv-20706 (MEF) (SDA)<br><br>**DECLARATION OF<br>DEFENDANT, BETTY SEBROW** |

I, **Betty Sebrow** (improperly pled and commonly known as "Baila" Sebrow), declare as follows:

1.      I am the Defendant in this action. I make this declaration based upon my personal knowledge.

2.      I have received and reviewed the Court's February 11, 2026 Order (Doc. 182) directing me to turn over certain devices and to provide access to my iCloud account by February 27, 2026.

3.      I also understand that the Court's Order of February 26, 2026 (Doc. 182) directs that I provide the cellular telephone and the computer I was utilizing in June 2023 to Plaintiff's expert.

## A. The Court's Expansion of What ESI Must Be Made Available for Discovery

4.      Plaintiff filed his original Complaint (Doc. 1) on December 23, 2021. Unsurprisingly, it made no allegations against me regarding any electronic communications or other conduct I had engaged in after December 23, 2021, (the date of filing) since those dates had not yet occurred.

5.      Plaintiff later filed an Amended Complaint (Doc. 58) on June 1, 2023.

6.      The Amended Complaint (Doc. 58) does not appear to raise any claims regarding electronic communications that I allegedly made in 2021, 2022 or 2023. As a result, ESI from that time period appeared to me not to be relevant to the claims being asserted in this case.

7.      Furthermore, prior to the entry of that Order, Plaintiff's counsel had represented to Judge Kiel on June 2, 2023, that Plaintiff was only seeking ESI for the period 2018 through 2021, **not** 2022 or 2023. That representation appears in the Transcript of Hearing (Doc. 70) at page 12, lines 16 to 20.

8.      Prior to the entry of the Court's February 26, 2026 Order (Doc. 182), I was not aware that Plaintiff would be seeking, or that the Court would be ordering, discovery of ESI from 2022 or 2023.

9.      I address below the devices and iCloud storage referenced in the Court's Order.

**B. The "Old" Cellular Telephone (the phone used immediately prior to the phone I used in June 2023)**

10.      I had an iPhone that I acquired in or around 2017 and used until approximately the end of 2019 (the "older iPhone").

11.      At the time this lawsuit commenced, the older iPhone was not functional.

12.      After Plaintiff instituted legal proceedings against me, the older iPhone was left with my prior counsel, Ira Heller, Esq.

13.      On or about July 30, 2025, I traveled to Mr. Heller's office, at his request, to retrieve my complete case file because he was relocating his practice. Mr. Heller provided me with several boxes containing my file materials and handed me an envelope containing the older iPhone.

14.      Mr. Heller assisted me in loading the boxes and the envelope into the trunk of an Uber vehicle that transported me home.

15.     When I arrived home, the Uber driver helped remove the boxes from the trunk. After bringing everything inside, I emptied the boxes and reviewed their contents. The boxes contained hundreds of pages of documents from my file; however, the envelope containing the older iPhone was not present.

16.     I carefully searched through all of the boxes multiple times to determine whether the envelope may have become caught among the papers. I did not locate the envelope or the older iPhone.

17.     Later that evening, I contacted the Uber driver to advise that a phone may have inadvertently been left in his vehicle and asked whether it had been found. I did not receive a response.

18.     Shortly after returning home, I attended a meeting. As an additional precaution, I contacted one of the organizers to ask whether a phone may have fallen out of my pocketbook during that meeting. I was informed that no phone had been found.

### C. The Cellular Telephone I Used in June 2023

19.     I had another iPhone that I used from approximately the end of 2019 through approximately the end of 2024 (the "June 2023 iPhone").

20.    In or around December 2024, the June 2023 iPhone began malfunctioning and required replacement. I traded it in at that time and obtained a functioning newer model. I no longer possess the June 2023 iPhone.

## D. The Computer I Used in June 2023

21.    For many years, I used older, second-hand computers that had been given to me. These devices were unreliable and typically lasted only a few months, and in some cases only weeks.

22.    In recent years, I have not regularly used a computer and instead relied primarily on my phone for necessary tasks.

23.    The computer I was utilizing in or around June 2023 broke some time ago and was discarded. I do not have that computer.

## E. My iCloud Account

24.    I did not begin using iCloud until approximately 2021.

25.    I understand that the Court's February 11, 2026 Order (Doc. 182) directed that I provide "access to [my] iCloud account." I am unwilling to provide access to my iCloud account.

26.    The request for access to my iCloud account raises significant privacy concerns. My iCloud account contains highly personal and sensitive information,

including information concerning third parties who rely on me for matchmaking

services. Many of these individuals share highly personal and sensitive information

with me in the hope that I will be able to find them a compatible spouse.

27.    My iCloud account also contains communications that I believe are

attorney-client privileged, including communications that may reference Plaintiff

by name.

28.    I am concerned that if any third party, whether Plaintiff, Plaintiff's

counsel, or any expert or examiner retained by Plaintiff, obtains access to my

iCloud account, the information in the account could be copied, disseminated, or

otherwise disclosed in a way that cannot be reversed. I believe that risk cannot be

eliminated even if access were subject to a protective protocol, a protective order,

or Court control.

29.    Since the commencement of litigation, including the Domestic

Violence action that Plaintiff instituted against me, there has been a pattern of

broad requests for personal data that extend beyond what is reasonably necessary. I

believe Plaintiff has used much of this information to indirectly harass me or, at a

minimum, proceed with a fishing expedition for information without concern for

me or the people who he has contacted.

30.    While the domestic violence matter was pending, Judge Kiel granted

Plaintiff access to my phone records dating back to about January 2016. These

records predate my husband's passing. My husband died on May 29, 2017. The Verizon account was registered under my husband, David Sebrow, who was not a party to this case. The records included my husband's business contacts and other sensitive information unrelated to this litigation.

31.     I believe Plaintiff used those phone records to identify people I communicated with on a regular basis and then contacted them directly and indirectly. One of my friends advised me that he had been contacted by an attorney regarding this case and that the attorney had advised him that he had records of the dates and hours of the times we spoke by phone and that he advised my friend that obstruction of justice that could be punishable by prison – which my friend appeared to understand as a veiled threat. Another friend advised me that he was contacted by an attorney whose number was masked on the caller ID and referred to himself as "Coach" and the attorney's last name.

32.     During the trial in Family Court, Plaintiff walked around with a thick binder that included phone number information, which I perceived as an intentional attempt to intimidate and frighten me.

33.     Similarly, Plaintiff's counsel obtained bank records by subpoena in the domestic violence matter despite my counsel having filed a motion to quash. An order entering sanctions monetary sanctions against Plaintiff was entered for obtaining those financial records in violation of the Court Rules and a relevant

portion of that Superior Court Order has already been uploaded to the Docket in this matter as Document 44-5. (Doc. 44-5)  Those improperly obtained records contained sensitive and confidential information, which I believe Plaintiff used to contact additional people as a means of intimidation or, at best, as a means to conduct a broad inquiry without regard to how I or the people contacted may be affected.

34.    Other than attorney-client privileged communications pertaining to this matter, I do not believe my iCloud account contains any relevant communications. However, it does contain extensive personal information, including communications with family, friends, professional contacts, and confidential sources.

35.    I am immensely concerned that if any third party, whether Plaintiff, Plaintiff's counsel, or any expert or examiner retained by Plaintiff, obtains access to my iCloud account, the information in the account could be copied, disseminated, or otherwise disclosed in a way that cannot be reversed. I believe that risk cannot be eliminated even if access were subject to a protective protocol, a protective order, or Court control.

36.    For those reasons, I am unwilling to provide my iCloud login credentials or otherwise provide access to my iCloud account, including access facilitated by an expert, neutral, special master, or any other third party.

## Declaration

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 5, 2026          By: _____

                                    Betty Sebrow