**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOHN DOE,<br>          *Plaintiff,*<br><br>     v.<br><br>BAILA SEBROW,<br><br>          *Defendant.* | No. 21-cv-20706 (MEF)(SDA)<br><br><br>**OPINION AND ORDER** |

### Table of Contents

**I.   Background**

    **A.   The Allegations**

    **B.   Procedural History**

    **C.   The Motion**

**II.  The Contested Claims**

    **A.   Emotional Distress**

    **B.   Tortious Interference: Prospective Business**

    **C.   Tortious Interference: Contract**

    **D.   Fraudulent Concealment**

        **1.   Perjury**

        **2.   Harassment**

        **3.   Defamation**

        **4.   A Possible Implication**

**III. The Remaining Claims**

    **A.   Libel**

    **B.   Abuse of Process**

    **C.   Punitive Damages**

**IV.  Conclusion**

\*     \*     \*

## I.    Background

### A.    The Allegations

Start with a capsule summary of the allegations, which the Court must treat as true.[1]

                        *      *      *

A man[2] and a woman[3] had a romantic relationship.  See First Amended Complaint ("Complaint") (ECF 58) ¶¶ 1, 22-29.

After it ended, the woman filed police reports about the man. See id. ¶¶ 158-60.  They falsely accused him of committing serious crimes.  See id.

The woman also sent off emails and text messages, and made some phone calls.  See id. ¶¶ 6, 32-33, 36-46, 49, 51-54, 56-66, 68-69, 71-76, 78-85, 89-93, 95-97, 99-114.  At first, these went directly to the man.  See id. ¶ 5.  But messages were later sent to, among others, the man's family and women he intended to date.  See id. ¶¶ 5-6, 114.  Some messages were also posted to social media accounts.  See id. ¶¶ 4, 8, 125-33, 146-48.

The gist of many of the messages: the man had badly wronged the woman (and others), and she was going to tell community members and the general public about what he had purportedly done.  See, e.g., id. ¶¶ 32, 40, 42, 51-53, 60-61, 69, 71, 74-75, 80, 82-84, 92.

### B.    Procedural History

In light of the above, the man sued.  See id. ¶ 11.

---

[1]  Because this is a motion for judgment on the pleadings.  See DiCarlo v. St. Mary Hosp., 530 F.3d 255, 262-63 (3d Cir. 2008). Whether the allegations here are in fact true --- that would be an issue for later in the case.

[2]  "John Doe," but that is not his true name.  The Court, per then-Magistrate Judge Kiel, granted the man leave to go forward with this case anonymously.  See Feb. 10, 2023 Order (ECF 37).

[3]  Baila Sebrow.  This is the name the Defendant has been sued in, so the Court uses it.  But note that the Defendant has said that this is not an accurate rendering of her name.

From here, the man is called "the Plaintiff" and the woman is called "the Defendant."

### C.    The Motion

The Defendant now moves for judgment on the pleadings as to each of the Plaintiff's ten claims.  See Notice of Motion for a Judgment on the Pleadings, Pursuant to Fed. R. Civ. P. 12(c) (ECF 167) at 1; Memorandum of Law in Support of Defendant's Motion for a Judgment on the Pleadings ("Defendant's Brief") (ECF 167-1) at 4-22.

The Plaintiff opposes the motion.  See Brief in Opposition to Defendant's Motion for a Judgment on the Pleadings ("Plaintiff's Opposition") (ECF 173).

But in doing so, he addresses only four of the ten claims.  See id. at 4; see also Defendant's Reply Brief to Plaintiff's Opposition to Defendant's Motion for a Judgement on the Pleadings ("Defendant's Reply") (ECF 176) at 1.

The Court analyzes the motion as to those four claims in Part II.  And then as to the remaining six claims in Part III.

## II.    The Contested Claims

As noted, the Plaintiff has taken on the Defendant's arguments as to four of the ten claims.  See Plaintiff's Opposition at 4; Defendant's Reply at 1.

Work through those four here.

### A.    Emotional Distress

First, the claim for intentional infliction of emotional distress.  See Complaint ¶¶ 176-185; see also Defendant's Brief at 9-12; Plaintiff's Opposition at 6-13; Defendant's Reply at 3-9.

Under New Jersey law,[4] that sort of claim can stick only if there is a showing of "severe" distress.  See Buckley v. Trenton

---

[4]  The parties' legal papers assume that New Jersey law controls.  See Defendant's Brief at 1-2, 4-5, 7-14, 16-22; Plaintiff's Opposition at 6, 16-18; Defendant's Reply at 1-2, 4-5, 9, 11-15.  So it does.  See Wiggins v. Netflix, Inc., 2026 WL 114377, at *1 n.4 (D.N.J. Jan. 14, 2026).  There may be outer limits to the idea that choice of law can be established by what the parties'

Saving Fund Soc'y, 111 N.J. 355, 366 (1988); see also Taylor v. Metzger, 152 N.J. 490, 509, 514 (1998); Tarr v. Ciasulli, 181 N.J. 70, 77 (2004); Leang v. Jersey City Bd. of Educ., 198 N.J. 577, 587 (2009).

"Severe emotional distress means any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Taylor, 152 N.J. at 515 (cleaned up); see also Turner v. Wong, 363 N.J. Super. 186, 200 (App. Div. 2003) ("The emotional distress must be sufficiently substantial to result in either physical illness or serious psychological sequelae."); Postiglione v. Barry, 2018 WL 3031265, at *2 (N.J. Super. Ct. App. Div. June 19, 2018) (same).

But the Plaintiff has made no allegations along those lines.

There is nothing in the complaint, for example, as to getting "medical or psychological treatment." DeAngelis v. Hill, 180 N.J. 1, 20 (2004).

Rather, the Plaintiff alleges "numerous sleepless nights tortured by feelings of humiliation and embarrassment." Complaint ¶ 153. And he alleges that the Defendant's messages (emails, texts, etc.) "have caused immense friction with [the] Plaintiff and members of his family, including his children, who discovered the false statements about their father." Id. ¶ 150.

But that is not enough to clear the bar.

The law here is set down by the New Jersey Supreme Court. See Wainwright v. Goode, 464 U.S. 78, 84 (1983) ("the views of the state's highest court with respect to state law are binding on the federal courts").

And in Buckley, the case where it first recognized the tort of intentional infliction of emotional distress, the New Jersey Supreme Court held that allegations closely similar to the Plaintiff's here are "insufficient as a matter of law to support

---

briefs assume. See Chapman v. Salesforce, Inc., 2026 WL 74192, at *1 n.4 (D.N.J. Jan. 9, 2026). But there is no possible issue here. During the relevant time period, the Plaintiff allegedly lived in New Jersey. See Complaint ¶ 12. And the Defendant allegedly "contact[ed] multiple people in the State of New Jersey." Id. ¶ 17.

4

a finding that the mental distress was . . . severe." <u>Buckley</u>, 111 N.J. at 368.

The allegations in <u>Buckley</u> included both inability to sleep and family embarrassment. <u>See</u> <u>id</u>.

But the New Jersey Supreme Court held that this was too little to go on. "[N]othing more than aggravation, embarrassment, . . . and loss of sleep" fails to "prove[] emotional distress sufficiently severe." <u>Id</u>. at 368-69; <u>see</u> <u>also</u> <u>Innes</u> v. <u>Marzano-Lesnevich</u>, 435 N.J. Super. 198, 237 (App. Div. 2014) ("Complaints such as lack of sleep . . . have been frequently deemed insufficient as a matter of law."); <u>DeAngelis</u>, 180 N.J. at 20-21.

The Plaintiff's intentional infliction of emotional distress claim runs aground on <u>Buckley</u>. It must be dismissed.

## B.    <u>Tortious Interference: Prospective Business</u>

Next is the Plaintiff's claim for tortious interference with a prospective business relationship. <u>See</u> Complaint ¶¶ 210-15; <u>see</u> <u>also</u> Defendant's Brief at 16-17; Plaintiff's Opposition at 15-16; Defendant's Reply at 11-13.

To make this out, the Plaintiff must adequately plead "loss." <u>See</u> <u>Nostrame</u> v. <u>Santiago</u>, 213 N.J. 109, 122 (2013); <u>Printing Mart-Morristown</u> v. <u>Sharp Elecs. Corp.</u>, 116 N.J. 739, 751 (1989).

But here, there are no meaningful loss allegations.

No allegations, say, of a drop in revenue or earnings. Of a particular client walking away or of a concrete decline in new-client numbers. Nothing as to business-getting meetings that the Plaintiff was shut out of. Pulled-back invites to important industry conferences. Strong client leads that suddenly went cold. Or referrals that were expected to come through but did not materialize. Indeed, there is no allegation that prospective clients even knew what the Defendant was allegedly saying about the Plaintiff.

Some or all of this might potentially have moved the needle. But none of it is in the complaint.

Instead, the Plaintiff has plead on information and belief the "los[s] [of] at least one client," Complaint ¶ 150 --- and nothing else.

This is too little.

The Plaintiff is in the service industry,[5] and in the service industry business often takes the form of work for clients.  An allegation of having "los[t] at least one client" is in essence an allegation that there has been some lost business.

But a stand-alone allegation of "'lost business' as a result of [the] defendant's conduct"[6] --- that does not pass muster.  It is too generic and too conclusory.  It is not backed up by any factual allegations.  Nothing, for example, as to who the client was, when the client was lost, or how it can be said that a link runs from the Plaintiff's alleged conduct to the client loss. See Mikhail, 2024 WL 3683050, at *8; Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 79 (App. Div. 2004) (affirming a trial court's dismissal of a tortious interference claim where the "plaintiffs failed to identify even a single client with whom defendants had interfered").

Left off by itself, as it is, the Plaintiff's "los[t] at least one client" allegation amounts to little more than an assertion that there has been loss --- a restatement of the tort's loss element.

But to survive a Rule 12 motion, what is needed is not a listing out of the elements, but adequate factual support for each one. The Plaintiff has not provided that.  See generally Bright v. Westmoreland County, 380 F.3d 729, 735 (3d Cir. 2004); Badalamenti v. Resideo Techs., Inc., 755 F. Supp. 3d 534, 547 n.16 (D.N.J. 2024); Rajpurohit v. Becton, Dickinson, & Co., 2024 WL 1477652, at *7 n.15 (D.N.J. Apr. 5, 2024).

This claim must be dismissed.

### C.  **Tortious Interference: Contract**

The Plaintiff also claims tortious interference with contract. See Complaint ¶¶ 195-209; see also Defendant's Brief at 13-16; Plaintiff's Opposition at 13-15; Defendant's Reply at 9-11.

---

[5]  He is a financial advisor.  See Complaint ¶ 203.

[6]  Mikhail ex rel. Quality Auto Painting Ctr. of Roselle, Inc. v. N.J. Mfrs. Ins. Co., 2024 WL 3683050, at *8 (N.J. Super. Ct. App. Div. Aug. 7, 2024).

And for a claim of tortious interference with contract, a plaintiff must again plead "loss."  See Printing Mart-Morristown, 116 N.J. at 751; Nostrame, 213 N.J. at 122 (cleaned up); Barkley Risk Sols., LLC v. Indus. Re-Int'l, Inc., 2017 WL 4159170, at *5 (N.J. Super Ct. App. Div. Sept. 20, 2017).

*   *   *

The contract invoked by the Plaintiff is his employment contract.  See id. ¶¶ 197-98, 204.

But the complaint says nothing about the substance of the employment contract.  The complaint does not allege, for example, that the contract was for X years of work at Y salary at location Z.

So there is no way to directly see how the contract might have been impacted in a way that amounts to "loss" --- because there are no allegations as to what was actually in the contract.[7]

Rather, the Plaintiff tries to affirmatively make out the loss element on this claim in four ways.

First, with the argument that the loss of "at least one client," Complaint ¶ 150, "jeopardiz[ed his] continued employment." Plaintiff's Opposition at 13.  But that is too generic to work, for reasons laid out in Part II.B.[8]

Second, the Plaintiff alleges that because of the Defendant's actions he was required to meet with "a compliance team." Complaint ¶ 94.  But having to abide by basic workplace obligations, by going to a single meeting --- that cannot be chalked up as an actionable "loss."

Third is the Plaintiff's allegation that because of the Defendant's actions he suffered from "employment stress."  Id. ¶ 200.  But becoming anxious and suffering a loss related to prospective business --- these are simply not the same thing.

---

[7]  And there are no allegations in the complaint that concern even the subject areas of typical employment contracts.  There are no allegations, for example, about job loss or salary reduction.

[8]  And in any event, it is not clear that the "loss" box can be checked by a risk of loss that, apparently, did not materialize.

<u>Fourth</u> and finally, the Plaintiff alleges that his reputation in the workplace was harmed --- and that this counts as tortious interference with his employment contract.  <u>See</u> <u>id</u>. ¶¶ 200, 207.

This fourth and last part of the Plaintiff's claim is hard to assess.

It is based on a rarely-made argument.  Remedying reputational harm when that harm does not cause economic loss --- that is typically the work of a different tort, of a claim for defamation.[9]

Moreover, neither party has meaningfully addressed this part of the claim in their papers.

No one has tried to explain how to steer through some of the possible crosscurrents in New Jersey law.  <u>Compare</u> <u>State Farm Fire & Cas. Co.</u> v. <u>Hole</u>, 2025 WL 880718, at *6 (N.J. Sup. Ct. App. Div. Mar. 21, 2025) ("purported economic and reputational damages are the type of injuries one would expect to result from a tortious interference claim"), <u>with</u> <u>Norwood Easthill Assocs.</u> v. <u>Norwood Easthill Watch</u>, 222 N.J. Super. 378, 385 (App. Div. 1988) (emphasizing that a plaintiff pressing a tortious interference with a contract claim must show "pecuniary loss") (cleaned up).

Or the impact here of the principle articulated in <u>Werwinski</u> v. <u>Ford Motor Co.</u>, that federal courts should "select the path that limits liability" in some situations involving open questions of state law.  286 F.3d 661, 681 (3d Cir. 2002).

Rather than plunge ahead without solid input from the parties, the Court will pause here.  It will mainly enter judgment for the Defendant on the tortious interference with contract claim.  But the Court will keep open, for now, one sliver of things ---

---

[9]  <u>See</u> <u>Nuwave Inv. Corp.</u> v. <u>Hyman Beck & Co.</u>, 221 N.J. 495, 499 (2015) (explaining that in a defamation action, a plaintiff can recover for "harm caused by impairment to reputation and standing in the community") (cleaned up); <u>Dairy Stores, Inc.</u> v. <u>Sentinel Publ'g Co.</u>, 104 N.J. 125, 133-34 (1986) ("A defamation action . . . affords a remedy for damage to one's reputation."); <u>see</u> <u>generally</u> <u>Masson</u> v. <u>New Yorker Mag., Inc.</u>, 501 U.S. 496, 515-16 (1991) ("since the . . . 16th century. . . . the tort action for defamation has existed to redress injury to the plaintiff's reputation").

8

the fourth part of the claim, the part of the claim that rests solely on alleged reputational harm.

### D.    **Fraudulent Concealment**

Move now to the Plaintiff's fraudulent concealment claim.  See Complaint ¶¶ 222-31; see also Defendant's Brief at 18-20; Plaintiff's Opposition at 16-18; Defendant's Reply at 13-15.

This claim rests on allegations that the Defendant "destroyed" certain text messages and emails she had previously sent to the Plaintiff.  See Complaint ¶¶ 155-57.

To state a fraudulent concealment claim, a plaintiff must establish, among other things, that he was "damaged in the underlying action by having to rely on an evidential record that did not contain the evidence [the] defendant concealed." Rosenblit v. Zimmerman, 166 N.J. 391, 407 (2001); see also Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 118 (2008); Farrow v. U.S. Specialty Ins. Co., 755 F. Supp. 3d 550, 553 n.7 (D.N.J. 2024).

The Plaintiff alleges he was "damaged," Rosenblit, 166 N.J. at 407, because the "destroyed" material "would show that [the Defendant] committed perjury, created [an anonymous text messaging] account, and engaged in harassing, defamatory conduct towards [the] Plaintiff."  Id. ¶¶ 229-30.

The just-quoted paragraphs of the complaint refer to three of the Plaintiff's other claims: stand-alone claims, advanced in other parts of the complaint, for (1) perjury, see id. ¶¶ 186-94;[10] (2) harassment, see id. ¶¶ 161-63;[11] and (3) defamation, see id. ¶¶ 219-21.  See Defendant's Reply at 14.[12]

The core idea is that, but for the Defendant's evidence destruction, the Plaintiff would have been able to put a stronger foot forward on those three claims.

But these three underlying claims cannot work --- categorically, for reasons that have nothing to do with the content or substance of the Plaintiff's allegations.

---

[10]   See also Defendant's Brief at 12-13.

[11]   See also Defendant's Brief at 4.

[12]   See also Defendant's Brief at 18.

So how can it matter whether evidence that might have supported these claims was destroyed?  And if evidence could not have made any bottom-line difference, how can allegedly destroying it cause the "damage" that is needed for a fraudulent conveyance claim?

*    *    *

To start seeing all of this, tick through the three underlying claims now, see Part II.D.1 to Part II.D.3, and then circle back in Part II.D.4 to the fraudulent concealment claim itself.

### 1.    Perjury

The perjury claim first.

It is pressed under New Jersey's perjury statute.  See Complaint ¶¶ 186-94 (citing N.J. Stat. § 2C:28-1).

But there can be no such claim.  Private plaintiffs cannot bring suit under New Jersey's perjury law.  See, e.g., Kietrys v. Cregar, 43 A.2d 810, 813 (N.J. Sup. Ct. 1945) ("Perjury, of itself, will not give rise to a civil action for damages."); Ali v. Person, 904 F. Supp. 375, 377 n.1 (D.N.J. 1995) ("There is no private right of action under . . . the New Jersey perjury statute[].");  Scalercio-Isenberg v. Select Portfolio Servicing, Inc., 2024 WL 378652, at *14 (D.N.J. Jan. 31, 2024) (same); see generally Kantor v. Kessler, 40 A.2d 607, 607-08 (N.J. 1945) (warning that permitting private civil claims for "false testimony" would risk "intimidat[ing]" witnesses who might be "subjected to the expense and annoyance of being sued by any party to the action to whom their testimony might not be agreeable").[13]

---

[13]  As noted, the Plaintiff invokes "perjury" in his fraudulent concealment count.  See Complaint ¶ 230.  Elsewhere in the complaint, there is a quick reference to New Jersey's false swearing statute, N.J. Stat. § 2C:28-2.  See id. ¶ 193.  Perjury and false swearing are "separate crimes," with slightly different elements.  See State v. Mullen, 67 N.J. 134, 137 (1975); see also State v. Parmigiani, 65 N.J. 154, 157 (1974).  But the differences do not matter here.  "Under New Jersey law, there is no private cause of action for . . . false swearing," Oxfurth v. Siemens A.G., 142 F.R.D. 424, 427 n.4 (D.N.J. Sept. 6, 1991), just as there is not one for perjury.

## 2.    Harassment

Next, the Plaintiff cites New Jersey's criminal harassment statute.  See Complaint ¶ 162 (citing N.J. Stat. § 2C:33-4).

But same basic point.  There can be no claim here under that law.  Private parties cannot use that statute to bring a civil claim.[14]  See, e.g., Lin v. Chase Card Servs., 427 F. App'x 118, 121 (3d Cir. 2011) ("Neither the New Jersey Supreme Court nor the State's Legislature has created a private cause of action under N.J.S.A. 2C:33-4, and we will not do so here."); Hodge v. McGrath, 2014 WL 6909499, at *1 (N.J. Super. Ct. App. Div. Dec. 10, 2014) ("New Jersey law has not recognized harassment as a free-standing civil cause of action for damages."); Sexton v. N.J. Dep't of Corr., 2024 WL 4615763, at *17 (D.N.J. Oct. 30, 2024) ("Under New Jersey law, civil harassment is not a cause of action."); see also, e.g., Livingstone v. Hugo Boss Store, Atl. City, N.J., 2021 WL 3910149, at *9 (D.N.J. Sept. 1, 2021); Clark v. Cox, 2018 WL 259770, at *3 (D.N.J. Jan. 2, 2018); Stampone v. Walker, 2017 WL 517791, at *9 (D.N.J. Feb. 8, 2017); see generally In re State Comm'n of Investigation, 108 N.J. 35, 41 (1987) (noting the New Jersey Supreme Court's general hesitance when it comes to "allow[ing] private plaintiffs to sue . . . to enforce the state penal laws").

And the Plaintiff's two efforts to change the picture do not work.

First, the Plaintiff implies that the federal criminal wire-fraud statute, 18 U.S.C. § 1343, supplies a cause of action that can be used for pressing a New Jersey criminal harassment claim. See Complaint ¶ 162.

But the federal statute does not generate a right of action that private parties can use to enforce the statute's own terms. See, e.g., Obianyo v. Tennessee, 518 F. App'x 71, 72 (3d Cir. 2013); Wisdom v. First Midwest Bank, 167 F.3d 402, 408 (8th Cir. 1999).[15]

---

[14]  At least to recover money damages.  See, e.g., Hodge v. McGrath, 2014 WL 6909499, at *1 (N.J. Super. Ct. App. Div. Dec. 10, 2014).  Here, the Plaintiff's harassment claim is focused on just that.  See Complaint ¶ 163.

[15]  Same as to he federal mail fraud statute.  See, e.g., Zhang v. Dorrance Publ'g Co., 2025 WL 2925293, at *2 (3d Cir. Oct. 15,

11

So why imagine that the federal wire-fraud statute might supply a private-party cause of action to enforce <u>another</u> statute, and a state one at that?  <u>Cf</u>. <u>Werwinski</u>, 286 F.3d at 680.

And same point as to the Plaintiff's <u>second</u> effort, his reference to New York's anti-harassment criminal laws.  <u>See</u> Complaint ¶ 162 (citing N.Y. Penal Law § 240.21-32).

New York's harassment statutes do not allow for even a <u>New York</u> civil harassment claim to be brought by a private plaintiff. <u>See Goldstein</u> v. <u>Tabb</u>, 575 N.Y.S.2d 902, 904 (App. Div. 1991); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Graham</u> v. <u>UMG Recordings, Inc.</u>, 806 F. Supp. 3d 454, 476 (S.D.N.Y. 2025); <u>Trec</u> v. <u>Cazares</u>, 128 N.Y.S.3d 251, 255 (App. Div. 2020); <u>Blanc</u> v. <u>Capital One Bank</u>, 2015 WL 3919409, at *5 n.3 (S.D.N.Y. June 24, 2015); <u>Ameduri</u> v. <u>Village of Frankfort</u>, 10 F. Supp. 3d 320, 348 (N.D.N.Y. 2014); <u>Adeniran</u> v. <u>State</u>, 965 N.Y.S.2d 163, 165 (App. Div. 2013).

So the New York harassment laws surely cannot supply a cause of action that cannot be put to use by the Plaintiff here --- to open the courtroom door to his civil claim under <u>New Jersey</u>'s harassment statute.

### 3.    <u>Defamation</u>

Finally, the Plaintiff presses a defamation claim.  <u>See</u> Complaint ¶¶ 219-221.

But a claim that is time-barred on the face of a complaint can be dismissed.[16]  And that knocks the Plaintiff's defamation claim out of the box.  <u>See</u> Defendant's Brief at 7-9.

*    *    *

Under New Jersey law, defamation actions must be brought "within 1 year . . . after the publication of the alleged [defamation]."

---

2025); <u>Wilson</u> v. <u>Delta Airlines</u>, 731 F. App'x 90, 91 (3d Cir. 2018); <u>Shahin</u> v. <u>Del. Fed. Credit Union</u>, 602 F. App'x 50, 53 n.3 (3d Cir. 2015); <u>Thompson</u> v. <u>Michels</u>, 574 F. App'x 196, 197 (3d Cir. 2014); <u>see</u> <u>also</u> <u>Wisdom</u>, 167 F.3d at 408.

[16]  <u>See Wisniewski</u> v. <u>Fisher</u>, 857 F.3d 152, 157 (3d Cir. 2017). <u>Wisniewski</u> involved a motion to dismiss for failure to state a claim.  Here, the Defendant has moved for a judgment on the pleadings.  But the same standard governs these motions.  <u>See</u> <u>Turbe</u> v. <u>Gov't of V.I.</u>, 938 F.2d 427, 428 (3d Cir. 1991).

12

N.J. Stat. § 2A:14-3; see Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 250 (2018); Smith v. Datla, 451 N.J. Super. 82, 93 (App. Div. 2017).

The Plaintiff filed this case in December 2021.  See Complaint and Demand for Jury Duty (ECF 1) at 52.

But no defamation allegedly took place in the one year before December 2021.

Defamation is concerned with defamatory statements.  See DeAngelis, 180 N.J. at 12-13.  But the only alleged statement in the one-year run-up to December 2021 was a text message, see Complaint ¶ 113 --- and that one cannot count.  Why not?  Because the December 2021 message was allegedly sent from the Defendant to the Plaintiff.  See id.  There is no allegation that it went to anyone else.  And to count, an allegedly defamatory statement must go "to a third party."  DeAngelis, 180 N.J. at 13; see generally N.J. Stat. § 2A:14-3 (defamation actions must be brought "within 1 year . . . after . .. publication") (emphasis added).[17]

The Plaintiff's defamation claim is time-barred.  It comes too late.

### 4.    A Possible Implication

Where things stand.

The Plaintiff alleges that, but for the Defendant's fraudulent concealment --- her alleged "dest[uction]" of certain texts and emails, see Complaint ¶¶ 155-57 --- he would have been able to do better with his claims that the Defendant "committed perjury . . . and engaged in harassing, defamatory conduct."  Id. ¶ 230.

But these three underlying claims cannot get off the ground.  There is no cause of action for the perjury claim or for the harassment claim.  See Part II.D.1-2.  And the defamation claim, as plead, is time-barred.  See Part II.D.3.

---

[17]  The complaint alludes to other statements that seemingly went to third parties.  But no time frame is suggested as to these.  See Complaint ¶¶ 114, 129-32.  There is, therefore, no allegation in the complaint that they went out during the limitations period.

Under these circumstances, can a fraudulent concealment claim go forward?  How can it be said that the alleged evidence destruction caused real-world harm if the underlying claims were not viable anyway --- regardless of whether the destroyed evidence was there or not?  See generally Rosenblit, 166 N.J. at 407 (to put together a fraudulent concealment claim, a plaintiff must establish that he was "damaged in the underlying action by having to rely on an evidential record that did not contain the evidence [the] defendant concealed").

*    *    *

To see these questions in sharper relief, compare this case to the more familiar sort of fraudulent concealment claim, using an example.

Say a woman picks up her car after getting the brakes repaired at the local garage.  On the drive home, she pumps the brakes but nothing happens.  The car keeps going forward, hits a pole, and is wrecked.  The car is towed back to the garage and worked on there again.  The woman now aims to sue.  She thinks the mechanic did not properly fix the brakes on the first go-round.  But when she goes back to the garage to pick up her car, she learns that new brakes have been ordered and installed --- and that the old brakes have been sent off to the junkyard and destroyed.

All of this would make for a bread-and-butter fraudulent concealment claim.

The woman would argue that she had a meaningful underlying claim --- a negligence claim, say, against the garage.  And she would argue that that claim was weakened by the garage's destruction of the evidence of its own negligence --- destruction of the old, badly-repaired brakes, the ones that have now been junked.  After all, the woman's argument would go, the old brakes can no longer be inspected by her and her expert and that hurts any possible negligence claim.  The destruction of the brakes might well have made a real-world, bottom-line difference to the negligence claim --- and that difference is the "damage" that can allow a fraudulent conveyance claim to get going.  Rosenblit, 166 N.J. at 407.

Contrast all of that that with this case.

14

Here, how does it matter that the Plaintiff allegedly "destroyed," Complaint ¶¶ 155-57, evidence of perjury and harassment if those underlying claims cannot go forward anyway?

These sorts of claims can never be brought, because there is no cause of action.  These claims are categorically out of bounds.  See Part II.D.1-2.  They cannot get started, no matter the evidence.  So it would seem that having more emails or more text messages cannot make any possible difference --- and therefore cannot cause any "damage[]."

And in a similar vein, why does it matter if the Defendant destroyed defamation evidence if the underlying defamation claim is time-barred anyway?  See Part II.D.3.  Where is the "damage[]" in losing out on a nominally stronger claim --- but one that is still time-barred anyway?[18]

In the brakes/garage case, the underlying claim could not go forward as strongly because of evidence destruction.  That is damage --- and fraudulent conveyance steps up to remedy it.

But in this case, the underlying claim could not go forward regardless of evidence destruction.  So where is the damage?  And without it, how can there be a fraudulent conveyance remedy?

*　*　*

There are, in short, dispositive threshold problems with the Plaintiff's underlying perjury, harassment, and defamation claims.[19]

---

[18]  The Plaintiff has not suggested that he has a good-faith basis to believe that, but for evidence destruction, the out-of-time defamation claim would be timely.  Indeed, he has plead that the allegedly "destroyed" texts and emails were ones the Defendant sent to him.  See Complaint ¶¶ 155-57.  But those are not actionable for the reasons explained in Part II.D.3.  And presumably the Plaintiff has those materials anyway.

[19]  As to two of the claims, there is no cause of action.  See Part II.D.1, II.D.2.  And the existence of a cause of action/right of action is generally a threshold question.  See In re Revlimid & Thalomid Purchaser Antitrust Litig., 2026 WL 765641, at *4-6 (D.N.J. Mar. 18, 2026).  As to one of the claims, there is a time bar.  See Part II.D.3.  And timeliness questions are often treated at the threshold, too.  See, e.g., Bozzo v. Nanasy, 159 F.4th 1111, 1116 (6th Cir. 2025); Lafferty

15

Can a fraudulent conveyance claim go forward under New Jersey law in that circumstance?  If the underlying claims are off the table no matter the evidence[20] --- can a plaintiff press a New Jersey fraudulent concealment claim based on missing evidence?

These are the main questions for now.  But the Plaintiff's briefing does not speak to them.  See Plaintiff's Opposition at 16-18.  Neither does the Defendant's.  See Defendant's Brief at 18-20; Defendant's Reply at 13-15.

"The analysis undertaken to this point can be finished out by the Court.  But the wiser course is to get the benefit of the parties' views."  Nationstar Mortgage LLC v. DuBois, 808 F. Supp. 3d 679, 684 (D.N.J. 2025).

More on the process for that in an order that will issue later today.  Before that, though, some last loose ends, taken up just below.

## III.  The Remaining Claims

Recall that the Defendant moved for judgment on the pleadings as to all of the Plaintiff's ten claims, but he responded only as to four of the ten.  See Part I.C.  Those four were the subject of Part II.

This Part briefly takes up the remaining six claims.

*     *     *

"A plaintiff who makes a claim . . . but fails to raise the issue in response to a defendant's motion . . . has effectively abandoned his claim."  Walsh v. Nev. Dep't of Hum. Res., 471 F.3d 1033, 1037 (9th Cir. 2006); see McClelland v. Katy Indep. Sch. Dist., 63 F.4th 996, 1010 & n.70 (5th Cir. 2023); see also Sullivan v. Wisler, 2026 WL 643738, at *3 (D.N.J. Mar. 9, 2026).

Because the Plaintiff has not addressed the six remaining claims, they are abandoned.  The Defendant is entitled to judgment on them.

---

v. St. Riel, 495 F.3d 72, 77-78 (3d Cir. 2007); United States v. Broughton, 689 F.3d 1260, 1272 (11th Cir. 2012); Castro v. Collecto, Inc., 634 F.3d 779, 783 (5th Cir. 2011).

[20]  Here, because there is no cause of action, and because of a limitations-period problem.

16

\*   \*   \*

In addition to the this, three of those six claims fail on the merits anyway, as discussed above.  See Part II.D.1 to Part II.D.3 (discussing the free-standing perjury, harassment, and defamation claims).  And the last of three claims also fail on the merits, for reasons set out here.

### A.   Libel

The Plaintiff has pressed a claim for libel per se.  See Complaint ¶¶ 164-75; see also Defendant's Brief at 7-9.

Such claims are covered by the same one-year limitations period as the defamation claim.  See N.J. Stat. § 2A:14-3; Nuwave Inv. Corp. v. Hyman Beck & Co., 221 N.J. 495, 500 (2015).

So for the same reason that the defamation claim is time-barred, see Part II.D.3, the libel claim is, too.

### B.   Abuse of Process

Now move to the Plaintiff's claim for abuse of process.  See Complaint ¶¶ 232-34; see also Defendant's Brief at 20-22.

The Plaintiff alleges that "[b]y filing false police reports regarding [the] Plaintiff," the Defendant "engaged in abuse of process."  Complaint ¶ 233.

Under New Jersey law, an action for abuse of process only "lies for the improper . . . use of process after it has been issued." Ash v. Cohn, 194 A. 174, 176 (N.J. 1937) (emphasis added);[21] see also Tedards v. Auty, 232 N.J.  Super. 541, 550 (App. Div. 1989) ("[P]rocess is not abused unless after its issuance the defendant . . . commit[s] 'further acts' whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff.") (emphasis added).

But here, there are no allegations that the process in question, the police reports,[22] were put to any use "after" they were

---

[21]   Ash is an older case, but New Jersey's Supreme Court continues to treat it as a leading decision in this area.  See LoBiondo v. Schwartz, 199 N.J. 62, 89-90 (2009).

[22]   The Court assumes here that completing a police report counts as "process" for this purpose.  Some courts have held that it does not.  See, e.g., Taylor v. Clark Cnty. Sch. Dist., 2019 WL

17

filled out.  Indeed, the Plaintiff affirmatively alleges that no action was taken by the police in response to the reports.  See Complaint ¶ 160 ("Both [police] reports were false and actions were not taken by the police.").

So the abuse of process claim must fail.

### C.    Punitive Damages

Finally, come to the Plaintiff's seventh count, which speaks to his asserted "entitle[ment] to" a punitive damages award "to punish [the] Defendant for her wrongful conduct."  Complaint ¶ 217; see also Defendant's Brief at 17.

But under New Jersey law, "a claim for punitive damages may lie only where there is a valid underlying cause of action."  Smith v. Whitaker, 160 N.J. 221, 235 (1999); see also Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 45 (1984) (same); Maksin Mgmt. Corp. v. Roy A. Rapp, Inc., 2008 WL 3165465, at *10 (N.J. Super. Ct. App. Div. Aug. 8, 2008) (same).[23]

So as to the claims on which the Defendant is entitled to judgment, punitive damages are not available.

### IV.   Conclusion

The Defendant is entitled to judgment on the following claims: the harassment claim (Count One); the libel claim (Count Two); the intentional infliction of emotional distress claim (Count

---

2453648, at *3 (D. Nev. July 11, 2019) (collecting cases for proposition that many jurisdictions "agree[] that the filing of a police report --- on its own --- does not constitute the use of the legal process"); Fuller v. Loc. Union No. 106 of United Bhd. of Carpenters & Joiners of Am., 567 N.W.2d 419, 422 (Iowa 1997) ("the mere report to police of possible criminal activity does not constitute legal process").

[23]  Federal law goes the same way.  "[A] demand for punitive damages does not stand alone."  In re Collins, 233 F.3d 809, 811 (3d Cir. 2000); see also, e.g., Cagno v. Ivery, 2022 WL 17887231, at *10 (D.N.J. Dec. 23, 2022) (observing that it is "well-settled that punitive damages are not a distinct cause of action"); Zelma v. Wonder Grp. Inc., 2025 WL 2976546, at *9 (D.N.J. Oct. 22, 2025) (concluding that punitive damages are not "an independent cause of action").

Three); the perjury/false swearing claim (Count Four); the tortious interference with prospective business claim (Count Six); the defamation claim (Count Eight); and the abuse of process claim (Count Ten).

In addition, the Defendant is entitled to judgment on the tortious interference with contract claim (Count Five), except to the limited extent that claim rests on a reputational harm theory, unconnected to any alleged economic loss.

For every claim as to which the Defendant is entitled to judgment, the Defendant is also entitled to judgment on the associated punitive damages claim (Count Seven).

As to what is left, an order as to next steps will issue today.

IT IS on this 10th day of April, 2026, **SO ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

19